UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW JONES, individually, | § | |
| and on behalf of all others | § | |
| similarly situated, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 4:15-cv-00051 |
| | § | |
| | § | |
| CRETIC ENERGY SERVICES, LLC, | § | Collective Action |
| | § | Pursuant to 29 U.S.C. § 216(b) |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF CONDITIONAL CERTIFICATION AND NOTICE**

**Michael A. Josephson**
Fed. Id 27157
State Bar No. 24014780
**Jessica M. Bresler**
Fed. Id. 2459648
State Bar No. 24090008
**Lindsay R. Itkin**
Fed Id. 1458866
State Bar No. 24068647
**Andrew Dunlap**
Fed Id. 1093163
State Bar No. 24078444
**FIBICH, LEEBRON, COPELAND,
BRIGGS & JOSEPHSON**
1150 Bissonnet St.
Houston, Texas 77005
Tel: (713) 751-0025
Fax: (713) 751-0030
mjosephson@fibichlaw.com
jbresler@fibichlaw.com
litkin@fibichlaw.com
adunlap@fibichlaw.com

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

**TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENT................................................................................. 1-2

II.   Cretic's Supervisors Are Similarly Situated to Its Operations ......................................... 2-5

      A.    Cretic's Supervisors and Operators Work the Same Hours on Each Job...………..2

      B.    Cretic's Supervisors and Operators Perform Similar Blue Collar Work...………..3

      C.    Cretic's Supervisors and Operators Are Both Misclassified as Exempt
            and Paid a Salary and Sometimes a Bonus……………………………………….. 4-5

III.  There Is No Conflict of Interest Between Cretic's Supervisors
      and Operators……………………………………………………………………………...5-6

IV.  CRETIC'S CLASS IS NOT IMPERMISSIBLY BROAD.………………………………………... 7

V.   Jones Agrees to modify Certain Notice Documents…………………………………………7

      A.    Jones' Agrees that Notice Will Specify the Opt-Ins to
            Contact Counsel of Choice…………………………………………………………… 7

      B.    Jones' Notice Should Be Returned to Counsel………………………………7-8

      C.    Jones' Notice Properly Requests Email Addresses and Phone Numbers……… 8-9

      D.    Jones Properly Requests Notice To Be Posted at the Worksite………………….. 9

      E.    Jones' Request for Reminder Notice and Follow-up Call Is Proper………… . 9-10

      F.    Jones Should Not Be Required to Specify that Opt-Ins
            May Be Required to Pay Costs……………………………………………… 10-11

      G.    Jones Agrees to Include Cretic's Proposed Position in the Notice……………… 11

      H.    Jones Agrees to Remove Language Its Order
            Regarding Cretic's Communications…………………………………………….. 11

1. **SUMMARY OF ARGUMENT**

Andrew Jones seeks to conditionally certify a collective action covering the supervisors and operators (also hands) who work as a team on Cretic's coil tubing crews.[1] The members of the coil tubing crew are similarly situated because they: (1) work together, side-by-side, from start-to-finish, on every single one of Cretic's jobs in the oilfield; (2) are all uniformly classified as exempt; and (3) are all paid a salary plus sometimes bonus basis, resulting in the identical manner in violation of the overtime requirements of the FLSA. Further, although a supervisor may direct the work of a four-to-five-man crew on a particular job, all supervisors and operators who work on Cretic's coil tubing crews ultimately report to multiple higher-ups, including at least four business unit managers, regional managers, and a district manager. And a "working supervisor whose primary duty is performing nonexempt work on the production line [such as service supervisors here] does not become exempt merely because the nonexempt production line employee occasionally has some responsibility for directing the work of other nonexempt production line employees[.]" 29 C.F.R. § 541.106(c). A blue collar worker "is not an exempt executive even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor." *Id.* So while a field service supervisor might direct the work of the coil tubing in the crew (since none of the white collar supervisors are in the field), this doesn't buy Cretic an out. All of the members of the coil tubing crew are fundamentally blue collar oilfield workers who are entitled to overtime.

There is no conflict of interest between Cretic's service supervisors and operators. Cretic's service supervisors have no economic incentive to underreport their operators' hours on the job. Importantly, since Cretic classifies both supervisors and operators as exempt, Cretic does not even track its coil tubing crewmembers' hours. Cretic's class is not impermissibly broad. Indeed, Cretic understood exactly the class

---

[1] Discovery has not been completed and Plaintiff just received Cretic's roughly 2,000 pages of production on August 12, 2015, but Plaintiff believes this class definition also technically includes "hands" as that job title is used internally at Cretic. Thus, for purposes of this Reply, Plaintiff's use of the term "operator" includes the Cretic-given job title of both operators and hands.

1

that Jones seeks to certify—it's the workers on its coil tubing crews. Finally, Jones' proposed notice to potential class members is proper and should not be limited.

**2.  CRETIC'S SUPERVISORS ARE SIMILARLY SITUATED TO ITS OPERATORS**

The members of Cretic's coil tubing crews are similarly situated because both work the exact same hours from start-to-finish, perform the same type of manual labor in the oilfield, are paid a salary plus a bonus, and are uniformly misclassified as exempt. . Cretic nonetheless suggests there are "vast differences in performance duties" of its operators and supervisors in attempting to present them as not similarly situated. *See* ECF No. 22 at 9. Cretic's misleading arguments fail.

   A.  <u>Cretic's Supervisors and Operators Work the Same Hours on Each Job</u>

Cretic admits its supervisors and operators work the same hours, side-by-side, as a crew in the oilfield. *See* ECF No. 22 at 8-9 *and then* ECF No. 21-1, 22-2, and 22-3 at ¶ 4-5. For example, Cretic confirms its coil tubing crews "typically [consist] of a Service Supervisor[2] and three or four coil tubing equipment operators," and that the crew's jobs "can take anywhere from one to several days to complete." *See* ECF No. 22-2 at ¶ 4. It is undisputed that Cretic's supervisors and operators work the same hours on each job together as a crew.[3] Specifically, the coil tubing "crew members worked the same hours for each job because [they] would travel to job sites together, work as a team to rig up, rig down, operate the coil tubing equipment until the job was complete, and leave the job together at the same time." *See* ECF No. 21-1, 22-2, and 22-3 at ¶ 4. In sum, Cretic's coil tubing crews work together from start-to-finish on each of Cretic's jobs making them similarly situated with respect to hours worked.

---

[2] At this early stage in the case, before discovery is complete, it is unclear what discrete job titles Cretic internally uses to describe its various levels of employees who work on its coil tubing crews. Job titles, however, are not determinative of whether an employee is exempt. *See* 29 C.F.R. § 541.2 (An employee's actual job duties and compensation, not the job title, determine whether the employee is exempt.).

[3] *See* Exhibit 1, Declaration of Ronald Woodall.

B. <u>Cretic's Supervisors and Operators Perform Similar Blue Collar Work</u>

Likewise, the two job descriptions[4] that Cretic attaches to its Response further confirm[5] that its supervisors and operators are similarly situated because they perform the same type of manual, technical, and blue collar work in the oilfield. Both job descriptions are almost identical with respect to the technical requirements[6] necessary to use and operate Cretic's equipment in the oilfield. Both positions call for "proficient knowledge of surface equipment and tools," "proficiency in the ability to diagnose and troubleshoot equipment in the field," and "proficiency in diagnosing downhole complications and troubleshooting surface equipment." *See* ECF No. 22-3 and 22-4. Cretic's operators and supervisors must both be "[p]roficient in fluid pump, nitrogen pump and Coil Tubing operations, safety, maintenance, etc." *Id.* Both jobs require manual labor[7], or "tasks involv[ing] the ability to exert physical effort . . . which may involve lifting, carrying, pushing and/or pulling of objects and materials of varying weight . . . [for] extended period of time." *See* ECF No. 22-3 and 22-4. In sum, supervisors and operators both do blue collar work in the oilfield, "with exposure to environmental conditions, such as but not limited to; dirt, dust, pollon, odors, wetness, humidity, rain, fumes, temperature and noise extremes, machinery, vibrations, electric currents, traffic hazards, animals/wildlife, toxic/poisonus agents, violence, disease, or pathogenic

---

[4] Since discovery is not complete, Plaintiff does not know if the job description attached as Exhibit C to Cretic's Response (ECF No. 22-3) titled "*Equipment Operators II and III*" is the job description that pertains to all operators, or just those operators who have worked with Cretic long enough to obtain a level "II" or "III" designation. Likewise, Plaintiff does now know if the job description attached as Exhibit D to Cretic's Response (ECF No. 22-4) titled "*Sr. Service Supervisor*" is the job description that pertains to all service supervisors, or just those supervisors who have worked with Cretic long enough to obtain a "senior" designation in his title. Since one of the requirements for being a "*Sr. Service Supervisor*" is a "[m]inimum 3 years as a Coil Tubing Field Supervisor," Plaintiff assumes that the job description Cretic uses to support its Response pertains to only those few supervisors who may have worked for Cretic the longest period of time. Plaintiff would likewise point out that Cretic uses the term "*Service Supervisor*" throughout its Response and in the Declaration of Chad Trimble. *See* ECF No. 22 and 22-2, *passim*.

[5] Cretic does not dispute that "operator[s] like Jones" largely performed manual and technical blue collar labor. *See* ECF No. 22 at 10, fn. 3. Cretic instead attempts to argue that its supervisors did not perform this same type of blue collar work. *But see* Exhibit 1, Declaration of Ronald Woodall, evidencing that supervisors also perform blue collar work in the oilfield.

[6] According to the job descriptions, supervisors and operators have almost identical requirements under "Primary Accountabilities and Deliverables" in the "Technical" subheading.

[7] Likewise, supervisors and operators have almost identical requirements under "Working Conditions" in the "Physical Ability and Demand" subheading. This manual labor is further described as "medium work—lifting 50 pounds maximum with frequent lifting and/or carrying of objects weighing up to 25 pounds."

substances." *Id.* Supervisors and operators are similarly situated because their job duties both largely consist of technical and manual blue collar labor in the oilfield.

      C.      <u>Cretic's Supervisors and Operators Are Both Misclassified as Exempt and Paid a Salary and Sometimes a Bonus</u>

Lastly, supervisors and operators are similarly situated because, as pointed out by Cretic, they are both uniformly classified as exempt and paid a salary and sometimes a bonus. *See* ECF No. 22 at ¶ 9. Cretic acknowledges that, "as Jones correctly notes in his Motion," "[t]he merits of [Cretic's] exemption decisions are not before the Court at this time." *Id.* Indeed, such a determination is reserved for the second decertification stage in FLSA collective action cases. *See* ECF No. 21 at 8-10 and cases cited therein.

Regardless, Cretic proceeds to argue that its supervisors are not similarly situated to its operators because its supervisors are exempt under the executive exemption, while its operators are exempt under the Motor Carrier Act. *Id.* Because there is no case law supporting a denial of conditional certification based on a distinction such as this in FLSA cases, Cretic improperly relies on two distinguishable cases where plaintiff's motion for conditional certification was denied because plaintiff sought certification of both exempt and non-exempt employees. *See Romero v. HB Automotive Group, Inc.*, No. 11 Civ. 386(CM), 2012 WL 1514810, at *11 (S.D.N.Y. May 1, 2012); see also *Hunter v. Spring Corp.*, 346 F.Supp.2d 113, 119 (D.D.C. 2004). Thus, Cretic's reliance on *Romero* and *Hunter* is misplaced, because Cretic concedes that supervisors and operators are both uniformly misclassified as exempt. *See* ECF No. 22 at 9, ECF No. 22-3 ("Status" is "Exempt"), and ECF No. 22-4 ("Status" is "Exempt"). Cretic's reliance on *Yaklin, et al v. W-H Energy Services, Inc.* is likewise improper because in that case, plaintiff submitted evidence that the supervisor's job duties were different than those of the service technicians. *See* Civ. Act. No. C-07-422, 2008 WL 1989795, at *3 (S.D. Tex. May 2, 2008). Here, Jones' evidence instead demonstrates that all members of Cretic's coil tubing crews, whether supervisor or operator, work the same hours, side-by-side on each job, perform the same manual and technical blue collar job duties, and are uniformly misclassified

as exempt and paid a salary plus a bonus. Thus, Cretic's supervisors and operators who were part of its coil tubing crews are similarly situated and notice should properly go out for both positions.

Further, Cretic's exemption shell game does not prevent conditional certification. Judge Rosenthal carefully explains that defendant's assertion that certain employee positions included within an FLSA class are subject to different exemption inquiries does not prevent conditional certification. *Prater v. Commerce Equities Mgmt. Co.*, No. CIV.A. H-07-2349, 2007 WL 4146714, at *7 (S.D. Tex. Nov. 19, 2007) (having considered defendant's argument that conditional certification was improper because salaried employees were exempt while other leasing agents were not, Judge Rosenthal certified two classes of both hourly leasing agents and salaried "leasing managers" in the same case because there was a minimal showing that the two classes of apartment office employees were similarly situated in terms of position and payment). Indeed, if that were the case, conditional certification would never be granted. What matters at this lenient stage is demonstrating sufficient similarity to warrant notice. *Id.* Because Plaintiffs show that Cretic's coil tubing crews are similarly situated, conditional certification is appropriate with respect to all members of the coil tubing team.

**3.    THERE IS NO CONFLICT OF INTEREST BETWEEN CRETIC'S SUPERVISORS AND OPERATORS**

Cretic realizes Jones properly seeks certification of all the workers on Cretic's coil tubing crews. But Cretic nonetheless hopes to limit the class to just its operators (somehow). So it cites *White v. Osmose, Inc.*, to argue Jones, an operator, cannot represent the entire coil tubing crew because the service supervisors included in the proposed class definition have an inherent conflict of interest in representing the operators who work on the same crew. *See* 204 F. Supp.2d 1309, 1311 (M.D. Ala. 2002); *but see Garcia v. Moorehead Commc'ns, Inc.*, No. 1:12-cv-208-JD, 2013 WL 4479234, at *4 (N.D. Ind. Aug. 19, 2013) (finding technicians and field service managers (FSMs) similarly situated; distinguishing *White* because FSMs had no economic incentive to encourage technicians to under-report hours; stating that although FSMs had additional supervisory roles, those duties did not relate to what the Technician was paid); *Aguilar v. Complete Landsculpture, Inc.*, No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (finding

5

that foreman with hiring and firing authority were similarly situated to laborers where all employees were compensated under the same pay scheme); and *Pacheco v. Aldeeb*, Cv. No. 5:14-CV-121-DAE, 2015 WL 1509570, at *6 (W.D. Tex. Mar. 31, 2015) (slip op.) (the fact that some Plaintiffs served in a managerial capacity, standing alone, does not preclude them from representing employees who worked for Defendants in a non-managerial capacity). Unlike in *White*, here there is no inherent conflict of interest between Cretic's supervisors and operators because Cretic's supervisors have no economic incentive to be involved in Cretic's FLSA violations.

In *White*, a maintenance foreman, individually and on behalf of others similarly situated, brought an action against his former employer alleging FLSA violations. *Id.* The proposed class included foremen and crewmen. *Id.* The foremen's job duties included supervising his particular crewman, <u>handling the payroll</u> for the crewmen (who were paid hourly), and <u>importantly</u>, the foreman received an additional bonus for being more "efficient," so that they had an <u>economic incentive</u> to underreport their crewmen's hours. *Id.* at 1314. For example, the foreman was told by his supervisors "to report fewer hours for his crew than were actually worked, in order to 'get their numbers up.'" *Id.* Further, the *White* Court was ultimately "persuaded" to find a conflict of interest because the foremen could be personally liable for maintaining the proper number of crew members on a job. *Id.* at 1314 (citing *Herman v. RDR Sec. Servs.*, 172 F. 3d 132 (2d Cir. 1999) for the proposition that the foremen in *White* may be personally liable as "employers" under 29 U.S.C. § 203(d) in applying the "economic reality" test).

Unlike in *White*, there are no facts in this case suggesting that the <u>payroll records</u> of Cretic's coil tubing crewmembers (paid a salary) are inaccurate or otherwise manipulated by Cretic's supervisors. <u>Importantly</u>, *White* is distinguishable because Cretic's service supervisors have <u>no economic incentive</u> to underreport their operators' hours. This is especially true because no hours were tracked at all—service supervisors and operators were both uniformly misclassified as exempt and paid a salary plus a bonus. Lastly, there is no indication that Cretic's service supervisors who may join this case are in any way responsible for the FLSA violations at issue or otherwise may be personally liable for Cretic's operators as

"employers" under 29 U.S.C. § 203(d). Like in *Garcia*, *Aguilar*, and *Pacheco*, there is no conflict of interest between Cretic's similarly situated members of the coil tubing crew.

### 4. CRETIC'S CLASS IS NOT IMPERMISSIBLY BROAD.

As discussed above in detail, Jones seeks certification of both Cretic's supervisors and operators who worked on Cretic's coil tubing crews. Thus, notice in this case should not be limited to only Cretic's operators—notice should go out to Cretic's coil tubing crew members. Cretic next argues that the proper time limitation is three years before the date the notice is approved by this Court (as opposed to three years from the filing of this lawsuit). Jones agrees that the proper time limitation for notice is three years from the date the Court approves notice in this case, whatever date that may be.[8]

### 5. JONES AGREES TO MODIFY CERTAIN NOTICE DOCUMENTS

Cretic does not dispute the propriety of notice going out to its operators—Cretic even attaches its own proposed notice for its operators. As discussed herein, notice is proper for both Cretic's supervisors and operators who worked on coil tubing crews and were paid a salary and additional compensation and who worked for Cretic for any period of time three years prior to the date that this Court approves notice. Multiple courts in this and other jurisdictions approve of Jones' proposed notice forms. *See* ECF No. 21, at 12-13. Because Jones agrees to some limitations that Cretic seeks, Jones attaches Plaintiff's Second Proposed Notice and Consent Form, Email Notice, Postcard Reminder, and Telephone Script.[9]

#### A. Jones' Agrees that Notice Will Specify the Opt-Ins to Contact Counsel of Choice

Jones agrees to include in any notice that may be issued in this case a phrase that the class members are free to choose counsel of choice.[10]

#### B. Jones' Notice Should Be Returned to Counsel

---

[8] Since that date is unknown, Jones left blank the deadline to join the case in his proposed notice and consent forms. *See* ECF 21-7, *passim*.
[9] *See* Exhibit 2, 3, 4, and 5 respectively.
[10] *See* Exhibit 2, 3, 4, and 5 specifying that opt-in plaintiff(s) may use his counsel of choice.

7

Requiring that each opt-in plaintiff who joins this case return his form to this Court creates an undue burden on the Court's Clerk and Staff. Jones' counsel is prepared for and practiced in handling notice forms of this nature in FLSA cases. Shifting this burden onto the Court is inefficient. Jones thus requests that the notice and consent forms be returned to Jones' counsel as originally proposed.[11]

      C.      <u>Jones' Notice Properly Requests Email Addresses and Phone Numbers</u>

Jones' request to obtain email addresses and phone numbers for the class is proper, efficient, not any more burdensome to Cretic than producing home addresses (which Cretic agrees to do), and serves the broad remedial purposes of the FLSA. Numerous courts find that email notice is appropriate in FLSA collective actions. *See* ECF No. 21 at 12-13 and cases cited therein; *see also Rodriguez v. Stage 3 Separation, LLC*, 5:14-cv-603-RP, at fn. 1 (W.D. Tex. Mar. 16, 2015) (ECF No. 57) (Order granting conditional certification stating "[t]he Court notes that in 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. Many people use their email addresses as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email").

Cretic relies on one case for supporting its proposition that email notice is improper. *See In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, 2013 WL 2180014 (S.D. Tex. May 17, 2013) [*herein Wells Fargo (III)*]. Importantly, the *Wells Fargo (III)* Court specifically stated that "the provision of email addresses will likely not facilitate notice <u>in this case</u>." (emphasis added). *Id.* at *2 *Wells Fargo (III)* is distinguishable because that case did not involve oilfield personnel "who work in remote locations far away from home for long periods of time." *See* ECF No. 21-1, 22-2, and 22-3 at ¶ 9. Cretic does not dispute that "[t]he coil tubing jobs can take anywhere from under a day to complete to several days to complete." ECF No. 22-2 ¶ 4. Thus, Cretic's supervisors and operators are away from home for long periods of time. Email

---

[11] *See* Exhibit 2, 3, 4, and 5.

8

is the most practical means of communicating notice to this class. Further, to the degree this Court entertains Cretic's concerns that email notice "increases the risk of distorting the court-approved notice, since it is easily altered and forwarded to unintended recipients" Jones' notice and consent forms are encrypted and/or sent as a PDF. They are thus and are no more easily manipulated than by a person using regular mail with access to a scanner. *See Wells Fargo (III)*, 2013 WL 2180014, at *2.

Cretic does not explain why it is opposed to producing phone numbers for those individuals who fall within the class. Thus, Jones maintains that his counsel should be allowed to follow-up with those class members who did not return a consent 30 days from the date notice is mailed via telephone to ensure receipt of the notice. Jones agrees to limit the attached telephone script.[12]

    D.    <u>Jones Properly Requests Notice To Be Posted at the Worksite</u>

Posting a notice at the worksite is not invasive nor is it burdensome. While Cretic objects to the posting of notice at its worksites, such a practice has been routinely approved in other cases. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010). Further, because in this case the class members "work in remote locations far away from home for long periods of time," such posting is reasonable and effects the broad remedial purposes of the FLSA. *See* ECF No. 21-1, 22-2, and 22-3 at ¶ 9. Cretic does not dispute that its coil tubing crewmembers jobs' take up to several days to complete. ECF No. 22-2 ¶ 4. Thus, the class members are away from home for many days at a time, and may not otherwise receive notice other than a physical posting while working for Cretic at its various worksites. The broad remedial purposes of the FLSA would be satisfied by posting notice of this action at Cretic's worksites during the 60-day notice period as specified in Jones' motion for conditional certification. *See* ECF No. 21 at 11.

    E.    <u>Jones' Request for a Reminder Notice and Follow-up Call Is Proper</u>

---

[12] *See* Exhibit 5.

As previously discussed, Cretic's supervisors and operators work in remote locations far away from their homes for long periods of time. Cretic does not dispute this. Thus, sending the proposed Reminder Postcard[13] via mail and email to class members who have not returned their consents 30 days from the date notice is mailed is not unnecessary or burdensome to Cretic. Likewise, placing a telephone call to the class members who have not returned their consents 30 days from the date notice is mailed and using the agreed telephone script[14] is not unnecessary or burdensome to Cretic. Any burden whatsoever from these reminder mechanisms would be carried by Jones' counsel, and reasonable reminders effectuate the broad remedial purposes of the FLSA and ensure that the class members receive notice of their rights and potential claims. *See* ECF No. 21, 12-13 and cases cited therein. Cretic's concern that phone messages give rise to the expectation that Jones' lawyers are the only lawyers that can be utilized in this case are moot, as Jones agrees to include language specifying that class members may choose their own attorney. Further, Jones clarifies that he will only send Reminder Postcards and/or place telephone calls using the telephone script to those class members who have not returned consent forms 30 days from the date notice is mailed to the class.

  F.  <u>Jones Should Not Be Required to Specify that Opt-Ins May Be Required to Pay Costs</u>

Courts in this jurisdiction routinely approve notice forms that do not include language regarding the class members' potential liability for costs in FLSA collective actions. *See* ECF No. 21 at 12-13; *see also Wells Fargo (III)*, 2013 WL 2180014, at *8 ("the Court does not believe requiring a warning about potential liability for Defendants' costs is appropriate"); *Bath v. Red Vision Systems, Inc.*, No. 13–02366, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014) (court rejected the defendants contention that the opt-in notice should contain language about court costs, finding that "a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted" because "[s]uch statements have the potential of chilling participation in the collective action."); *Dilonez v. Fox Linen*

---

[13] *See* Exhibit 4.
[14] *See* Exhibit 5.

*Service, Inc.*, 35 F.Supp.3d 247, 256, 2014 WL 3893094, at *7 (E.D.N.Y.2014) (court declined to include language about court costs and potential counterclaims. The *206 court explained that "this district often rejects such language because it imposes an in terrorem effect that is disproportionate to the actual likelihood the costs or counterclaim damages will occur."). Because including such language is unnecessary in this case and does not further the broad remedial purposes of the FLSA, Jones respectfully requests that this language remain omitted from the notice forms.[15]

G. <u>Jones Agrees to Include Cretic's Proposed Position in the Notice</u>

Jones agrees to include Cretic's proposed position in the Notice as specified in ECF No. 22-5, but modified to include supervisors and operators. Jones proposes that the language read: "Defendant denies all liability and asserts that it paid its employees [correctly under the FLSA. Defendant asserts that its employees [or supervisors and operators?] were always exempt from the FLSA under either the Motor Carrier Safety Act exemption or the Executive exemption."[16]

H. <u>Jones Agrees to Remove Language Its Order Regarding Cretic's Communications</u>

Jones agrees to remove language that Cretic is prohibited from communicating about the case from the Order.[17]

---

[15] *See* Exhibits 2, 3, 4, and 5.
[16] *See* Exhibits 2, 3, 4, and 5.
[17] *See* Exhibit 6.

Respectfully Submitted,

By:*/s/ Jessica M. Bresler*
    **Michael A. Josephson**
    Fed. Id 27157
    State Bar No. 24014780
    **Jessica M. Bresler**
    Fed. Id. 2459648
    State Bar No. 24090008
    **Lindsay R. Itkin**
    Fed Id. 1458866
    State Bar No. 24068647
    **Andrew Dunlap**
    Fed Id. 1093163
    State Bar No. 24078444
    **FIBICH, LEEBRON, COPELAND,
    BRIGGS & JOSEPHSON**
    1150 Bissonnet St.
    Houston, Texas 77005
    Tel: (713) 751-0025
    Fax: (713) 751-0030

AND

    **Richard J. (Rex) Burch**
    State Bar No. 24001807
    Fed. Id. 21615
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on August 20, 2015.

    */s/Jessica M. Bresler*
    Jessica M. Bresler