# Appendix

## Appendix

*Aguilar v. Complete Landsculpture, Inc.,* No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004)

*Bath v. Red Vision Systems, Inc*., No. 13-02366, 2014 WL 2436100 (D.N.J. May 29, 2014)

*Dilonez v. Fox Linen Service Inc.,* No. CV 13-00845(JS)(GRB), 35 F. Supp. 3d 247 (E.D.N.Y. July 25, 2014)

*Garcia v. Moorehead Communications, Inc*., No. 1:12-cv-208-JD, 2013 WL 4479234 (N.D. Ind. Aug. 19, 2013)

*Pacheco v. Aldeeb,* Cv. No. 5:14-CV-121-DAE, 2015 WL 1509570, (W.D. Tex. March 31, 2015)

*Prater v. Commerce Equities Management Company, Inc.,* No. CIV.A. H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov. 19, 2007)

*Romero v. H.B. Automotive Group, Inc.,* No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012)

*Wells Fargo Wage and Hour Employment Practices Litigation* (No. III), No. H-11-2266, 2013 WL 2180014, S.D. Tex. May 17, 2013)

*Yaklin v. W-H Energy Services, Inc.,* No. C-07-422, 2008 WL 1989795 (S.D. Tex. May 2, 2008)

2004 WL 2293842
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Librado AGUILAR and Jose Guadalupe Gonzalez
Romero, on their behalf and on behalf of those
similarly situated, Plaintiffs,
v.
COMPLETE LANDSCULPTURE, INC., et al.,
Defendants.

No. Civ.A.3:04 CV 0776 D. | Oct. 7, 2004.

**Attorneys and Law Firms**

J. Derek Braziel, Edwards & George, Dallas, TX, for
Plaintiffs.

Carlyle H. Chapman, Jr., Locke Liddell & Sapp, Dallas,
TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

FITZWATER, J.

**\*1** Plaintiffs Librado Aguilar and Jose Guadalupe
Gonzalez Romero, on their behalf and on behalf of those
similarly situated, bring this putative collective action
under 29 U.S.C. § 216(b), a provision of the Fair Labor
Standards Act ("FLSA"), to recover unpaid overtime pay.
They move for notice to potential class members and
discovery of their contact information. For the reasons
that follow, the court grants the motion in part and denies
it in part.

**I**

Plaintiffs sue defendants Complete Landsculpture, Inc.,
Complete Landsculpture Properties, LLC, Complete
Landsculpture of Texas, LP, and Chris Strempek
("Strempek") ("collectively, "Complete"), alleging that
they violated 29 U.S.C. § 207(a) by failing to pay
overtime compensation to them and other
similarly-situated Complete employees. Plaintiffs allege
that Complete circumvented payment of overtime

compensation for landscaping and general labor by
following a "block rate" payment scheme. According to
plaintiffs' second amended collective action complaint
("complaint"), Complete's "block rate" worked as
follows. A ten hour shift was a "block" or "day."
Plaintiffs worked from 7 a.m. to 5 p.m., which counted as
one "block," for which they were paid approximately
$100. Any time worked in excess of that shift was
credited toward another "block." It was thus possible for
an employee to work more than seven "blocks" or "days"
in a given week. Complete employees were effectively
paid $10 per hour ($100 ÷ 10 hours), with no overtime
compensation.2d Am. Compl. ¶¶ 12–13.Complete
employees normally worked Monday through Sunday
from approximately 7 a.m. to 6 or 7 p.m., resulting in a
work week in excess of approximately 80 hours. *Id.* at ¶
11.

Plaintiffs seek to certify an opt-in class consisting of all
current and former Complete employees who were paid
using the "block rate" scheme during the time period of
April 13, 2001 to the present. *See id.* ¶ 18.Plaintiffs now
move for permission to give § 216(b) notice to potential
class members and for discovery of their contact
information. Complete opposes the motion, contending it
must be denied because a putative class has not been
certified, not all plaintiffs are from the same potential
conditional class, plaintiffs have only presented evidence
of a potential class of landscape laborers, their notice is
uninformative and insufficient, and their request for
private employee information should be denied.

**II**

This court recently addressed a similar motion for class
notice and discovery in *Humphries v. Stream
International, Inc.,* No. 3:03–CV–1682–D (N.D.Tex. Feb.
13, 2004) (Fitzwater, J.), setting out the controlling
jurisprudence:

> District courts have discretion to
> allow a party asserting FLSA
> claims on behalf of others to notify
> potential plaintiffs that they may
> choose to opt-in to the suit.
> Although the Fifth Circuit has not
> adopted a particular standard to be
> used in determining whether to
> allow notification, the prevailing
> test among the federal courts
> consists of two stages: First, the

Aguilar v. Complete Landsculpture, Inc., Not Reported in F.Supp.2d (2004)

2004 WL 2293842

court makes an initial inquiry into whether the plaintiff has provided sufficient evidence of the existence of similarly-situated potential plaintiffs. At this stage, the court applies a lenient standard. If it determines that certification is appropriate, it usually conditionally certifies the class. Second, the court reexamines the class after notice, time for opting in, and discovery have taken place. If it finds that the class is no longer made up of similarly-situated persons, then it may decertify the class. This inquiry is usually conducted in response to defendant's motion. Although the Fifth Circuit has specifically declined to adopt a specific approach in resolving the similarly situated inquiry under § 216(b), it has found no abuse of discretion where a district court employed the prevailing federal standard. To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar.

*2 Slip op. at 3 (citations and internal quotation marks omitted).

### III

The court must first decide whether plaintiffs have provided sufficient evidence of the existence of similarly-situated potential plaintiffs and whether a class should be conditionally certified.[1]

[1] As in *Humphries,* although the plaintiffs do not explicitly ask the court to conditionally certify a class, they are necessarily doing so. *See* Ps. Br. at 8 (citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir.1995), and noting that decision to allow notice typically results in conditional certification of representative class). Moreover, in their reply brief, plaintiffs make pellucid that they seek conditional class certification, noting, *inter alia,* that a motion for

conditional class certification is frequently made under the rubric of notice to potential class members. *See* Ps. Rep. Br. at 2–3 & 2 n. 3 (citing cases).

### A

Under the prevailing two-stage procedure, "[b]ecause the court has minimal evidence, [the first] determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 (5th Cir.1995) (footnote omitted).[2]"At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." ' *Id.* at 1214 n. 8 (quoting *Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988), *aff'd in part and appeal dismissed in part,*862 F.2d 439 (3d Cir.1988), *aff'd and remanded,*493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). "To establish that employees are similarly situated, a plaintiff must show that they are similarly situated with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar." *Barnett v. Countrywide Credit Indus., Inc.,* 2002 WL 1023161, at *1 (N.D.Tex. May 21, 2002) (Lynn, J.) (internal quotation marks and brackets omitted) (quoting *Tucker v. Labor Leasing, Inc.,* 872 F.Supp. 941, 947 (M.D.Fla.1994)).

[2] At this point in *Mooney,* the panel was not adopting this principle but was instead reciting the jurisprudence of the first of two lines of cases that address class certification procedure under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621*et seq. See Mooney,* 54 F.3d at 1214. The ADEA incorporates relevant provisions of the FLSA. *Id.* at 1212.In *Mooney*"the Fifth Circuit explicitly declined to adopt a specific approach."*Barnett v. Countrywide Credit Indus., Inc.,* 2002 WL 1023161, at *1 n. 2 (N.D.Tex. May 21, 2002) (Lynn, J.).

Plaintiffs have adduced evidence that they and their coworkers performed similar job duties in the form of manual labor that consisted of planting trees and turf, installing sprinklers, cutting and placing patio stones, mowing and edging lawns, operating weed eaters and leaf blowers, trimming plants and planting flowers. *See* Aguilar Decl. ¶ 6; Almanza Decl. ¶ 6; Gomez Decl. ¶ 6.[3] Complete required these laborers to work in excess of 40

hours per week. *See* Aguilar Decl. ¶ 2; Almanza Decl. ¶ 2; Gomez Decl. ¶ 2. They were paid according to the "block rate" scheme, i.e., a fixed amount for each block of ten hours worked. *See* Aguilar Decl. ¶¶ 3–4; Almanza Decl. ¶¶ 3–4; Gomez Decl. ¶¶ 3–4. When they worked greater or fewer than ten hours, they were credited with a partial "day" based on the number of hours worked. *See* Aguilar Decl. ¶¶ 3–4; Almanza Decl. ¶¶ 3–4; Gomez Decl. ¶¶ 3–4. Under the "block rate" scheme, Complete paid the laborers the same hourly rate for all hours worked. Regardless of the number of hours worked, they never received overtime pay. *See* Aguilar Decl. ¶ 5; Almanza Decl. ¶ 5; Gomez Decl. ¶ 5. Other Complete employees have not been paid overtime compensation. *See* Aguilar Decl. ¶¶ 6–7; Almanza Decl. ¶¶ 6–7; Gomez Decl. ¶¶ 6–7.

3    The court is citing to paragraphs of declarations rather than to pages of plaintiffs' appendix because plaintiffs—and, for that matter, Complete—did not comply with N.D. Tex. Civ. R. 7.1(i)(1) and 7.2(e) in briefing this motion. Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix." Rule 7.2(e) states that "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion." The court has not ordered the motion re-briefed because it is attempting to avoid delay in deciding the motion and because in *Humphries* both parties likewise failed to comply with these rules and the court overlooked the error. *See Humphries,* slip op. at 5 n. 3. The parties to this case are admonished to comply with these rules in briefing other motions in this case. The court's willingness to disregard this error in this case and in *Humphries* is not an indication that it will excuse similar failures in other cases that present motions of this type.

Accordingly, applying, as it must, a lenient standard, the court holds that plaintiffs have made sufficiently substantial allegations of the existence of similarly-situated potential plaintiffs and that they have met the requirements for conditional certification of the class. The court therefore conditionally certifies a class consisting of "[a]ll current and former laborers employed by [Complete Landsculpture, Inc., Complete Landsculpture Properties, LLC, Complete Landsculpture of Texas, LP, and Chris Strempek] who were paid using the 'block rate' scheme during the time period of April

13, 2001 to the present." The court also authorizes plaintiffs to provide notice by mail to potential class members. *Cf. Barnett,* 2002 WL 1023161, at *2 (concluding "that mailing the notice to the potential class members ... is sufficient to provide the potential opt-in plaintiffs with notice of the suit.").

## B

### 1

**\*3** Complete opposes plaintiffs' motion on the ground that the court has not certified a putative class. This objection falls away because the court has now conditionally done so.

### 2

Complete complains that plaintiffs have not defined in their motion who is to be included in the class. In plaintiffs' complaint, however, they have explicitly defined the class, *see* 2d Am. Compl. ¶ 18, and the court has conditionally certified it based on this definition.

### 3

Complete maintains that plaintiffs have not shown that, outside of the general group of landscapers mentioned in their declarations, there are any similarly-situated employees. Plaintiffs have limited their motion to current and former laborers who were paid using the "block rate" scheme. In their reply brief, they limn their notice request to "workers performing landscaping duties who were paid under the straight time for overtime scheme." Ps. Rep. Br. at 4. Complete's argument thus lacks force.

### 4

Complete also posits that plaintiffs must decide from which of the three corporate employers they are seeking to draw the class, because they have not demonstrated that employees from different employers can be similarly

2004 WL 2293842

situated within the meaning of § 216(b). At the conditional certification stage of the case, the court disagrees.

In support of their reply brief, plaintiffs have adduced evidence that Strempek is the President and Director of Complete Landsculpture, Inc., and the registered agent for Complete Landsculpture Properties, LLC and Complete Landsculpture of Texas, LP. *See* P. Rep. Br. Exs. 1–3. Complete Landsculpture, Inc. is a member of Complete Landsculpture Properties, LLC. *See id.*Ex. 2. Complete Landsculpture Properties, LLC is the general partner of Complete Landsculpture of Texas, LP. *See id.*Ex. 3. Under the FLSA, there may be more than one employer of an employee, including joint employers. *See, e.g., Antenor v. D & S Farms,* 88 F.3d 925, 929 (11th Cir.1996). There is precedent in this district for conditionally certifying an FLSA class that consists of employees of related employers. In *Alba v. Loncar,* 2004 WL 1144052 (N.D.Tex. May 20, 2004) (Ramirez, J.), the court conditionally certified a common class of persons "employed *by one of Defendants,* at any time since June 23, 2000."*Id.* at *5 (emphasis added) (quoting order of Judge Lynn). The court can determine at a later time whether defendants are joint employers. *See id.* at *6 n. 3 ("The Court notes that, assuming the district court does not decertify the class, the district court will also make the legal determination of whether Mr. Loncar is a joint employer of the employees of Brian Loncar, P.C. d/b/a Brian Loncar & Associates.").

The foregoing reasoning also applies to defendant Strempek. The FLSA definition of employer is extremely broad and "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."*Id.* at *6 (quoting 29 U.S.C. § 203(d)). The term "includes individuals with managerial responsibilities and substantial control over the terms and conditions of the [employee's] work."*Id.* (internal quotation marks omitted) (quoting *Lee v. Coahoma County,* 937 F.2d 220, 226 (5th Cir.1991)). Plaintiffs may be able to show under the FLSA definition that Strempek is their employer, and the court can determine later whether he is. *See id.*(holding that court would at appropriate stage make legal determination of individual's status as an employer). Of course, if discovery shows that certain plaintiffs are not similarly situated due to differences in employers, the court can decertify the class or can create subclasses. *See Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 484 (E.D.N.Y.2001) ("If, at a later point in the litigation, the Court finds that a

collective action cannot accommodate the proposed individual defenses, the Court has the discretion to create subclasses or to dismantle the collective action.") (addressing collective action under Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621*et seq.*)).

## C

**\*4** Complete maintains that not all plaintiffs are from the same potential conditional class, because on each crew there are employees with three different job descriptions: foreman, lead man, and laborer. It posits that, if plaintiffs seek class certification, foremen and laborers should not be included in the same class.

According to Strempek, plaintiff Aguilar was a foreman and other listed potential plaintiffs are laborers. He avers that foremen must meet experience and skill requirements that do not apply to laborers; that they have the ability to hire and fire employees, make recommendations concerning hiring, discipline, and promotion decisions; that they have administrative responsibilities that laborers do not share; and that they are paid more. Plaintiffs reply that the distinctions in the two jobs are immaterial for purposes of this collective action, which is limited to workers who performed landscaping duties and were paid under the "block rate" scheme. They argue that the differences will not result in inaccurate damages calculations because the hours worked by each are readily ascertainable based on objective criteria and there is no conflict of interest between foremen and laborers.

The court holds that no distinction should be made between foremen and laborers at the conditional certification stage because they appear to be similarly situated in all relevant respects. To establish that plaintiffs are similarly situated employees, they must demonstrate that they are similarly situated as to their job requirements and pay provisions. The positions need to be similar, but not identical. *Barnett,* 2002 WL 1023161, at *1. "[A]n FLSA class determination is appropriate when there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].' " *Crain v. Helmerich and Payne Int'l Drilling Co.,* 1992 WL 91946, at *2 (E.D.La. Apr.16, 1992) (quoting *Heagney v. European Am. Bank,* 122 F.R.D. 125 (E.D.N.Y.1988)). "[A] court can foreclose a plaintiff's right to proceed collectively only if 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." ' *Id.* (quoting

2004 WL 2293842

*Burt v. Manville Sales Corp.,* 116 F.R.D. 276, 277 (D.Colo.1987)). The claims of the putative class members are similar in that they all complain of the same "block rate" scheme that applied to them similarly. In other words, they allege they were together the victims of a single plan infected by discrimination. *See Mooney,* 54 F.3d at 1214 n. 8. While their duties may have differed and the hourly pay rate of foremen was slightly higher, they were compensated under the same regimen. This is not a case, for example, in which the defendants contend that foremen were exempt employees or that they were paid under a different plan. Thus under plaintiffs' theory of the case, the fact that foremen and laborers had somewhat different duties and rates of pay is immaterial. *See Crain,* 1992 WL 91946, at *3 ("But what matters is that the fundamental allegation—that according to company policy the time spent in job related meetings and training was uncompensated—is common to all the [FLSA] plaintiffs and dominates each of their claims.").

**D**

**\*5** Complete also opposes plaintiffs' motion on the ground that plaintiffs have only presented evidence of a potential class of landscape laborers. The arguments presented in support of this contention are similar to those that the court has already rejected. The evidence that plaintiffs have introduced is sufficient to justify conditional class certification under the applicable lenient standard. Accordingly, the court declines to deny plaintiffs' motion on this basis.

**IV**

The court now turns to plaintiffs' proposed notice. Complete objects to it as uninformative and insufficient and offers an alternative notice form. Plaintiffs oppose one provision of Complete's proposed alternative form—that plaintiffs who join may be required to pay attorney's fees and costs if the suit is unsuccessful—but they state they are willing to work with Complete to draft a mutually acceptable notice.

The court agrees that plaintiffs' proposed notice is inadequate in several respects, but it rejects Complete's suggestion that a fee shifting warning should be included. Rather than address the defects in detail, it will attach to this memorandum opinion and order copies of the notice and consent form it approved in *Humphries* and of its

order approving the forms and the procedure for notifying potential class members by mail. The *Humphries* documents should adequately apprise counsel of the nature of forms the court is likely to approve. The court directs that counsel confer and, within 20 days of the date this memorandum opinion and order is filed, submit a proposed notice and consent form for the court's consideration.

Additionally, plaintiffs assert in their motion that many potential class plaintiffs are immigrant laborers. To ensure that the notice is adequate, the court directs that, once the court approves the notice and consent forms, plaintiffs' counsel arrange for preparation of Spanish language versions, obtain Complete's counsel's approval of those versions, and mail the English and Spanish versions simultaneously to potential class members, giving them the option to execute the Spanish version of the consent form.

**V**

Finally, Complete objects to plaintiffs' request for discovery of the names, addresses, and telephone numbers of potential class members. It maintains that, if notice is given, Complete should provide the notice rather than disclose this information to plaintiffs.

The court will follow in this case the approach it adopted in *Humphries.*There, in response to the plaintiff's request for discovery, the court required the defendant to provide plaintiff's counsel the names and last known addresses of all potential class members, because notice of the collective action was to be given by mail. *See Humphries,* slip op. at 7. The court declined to require that the defendants reveal, *inter alia,* the telephone numbers of potential class members. The court reasoned that "highly personal information about persons who may in fact have no interest in this litigation should not be disclosed on the thin basis that [plaintiff's] counsel desires it."*Id.* The court also concluded, *inter alia,* that the need for compelled disclosure of such data was outweighed by the privacy interests of potential class members, and that there was no apparent reason to conclude that sending a letter to the person's last known address would be inadequate. *Id.*

**\*6** Accordingly, the court directs that, within 30 days of the date this memorandum opinion and order is filed, Complete provide plaintiffs' counsel the names and last known addresses of all persons who fall within the conditionally certified class.

**Aguilar v. Complete Landsculpture, Inc., Not Reported in F.Supp.2d (2004)**

2004 WL 2293842

For the reasons set out, plaintiffs' August 9, 2004 motion for notice to potential class members is granted in part and denied in part.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 2293842

  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2436100
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

Cora BATH, on behalf of herself and all others
similarly situated, Plaintiff,
v.
RED VISION SYSTEMS, INC., Defendant.

Civil Action No. 2:13−02366 (SDW)(MCA). | Signed
May 29, 2014.

**Attorneys and Law Firms**

Andrew R. Frisch, Morgan & Morgan, P.A., Plantation,
FL, for Plaintiff.

Jeffery Alan Meyer, Kaufman Dolowich & Voluck, LLP,
Woodbury, NY, for Defendant.

**OPINION**

WIGENTON, District Judge.

**\*1** Before this Court is Plaintiff Cora Bath's ("Plaintiff")
Motion for Conditional Certification of Collective Action
pursuant to the Fair Labor Standards Act ("FLSA").29
U.S.C. § 201, et seq. Also before this Court is Defendant
Red Vision Systems, Inc.'s ("Defendant" or "Red
Vision") Motion to Dismiss pursuant to Federal Rule
Civil Procedure 12(b)(1). This Court has jurisdiction over
this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §
216(b). Venue is proper under 28 U.S.C. § 1391. This
Court, having considered the parties' submissions,
decides this matter without oral argument pursuant to
Federal Rule of Civil Procedure 78. For the reasons stated
below, Plaintiff's Motion for Conditional Certification of
Collection Action is **GRANTED,** and Defendant's
Motion to Dismiss is **DENIED.**

**I. FACTUAL AND PROCEDURAL BACKGROUND**
According to the Complaint, Red Vision is a Delaware
Corporation headquartered in Parsippany, New Jersey that
provides title search services and real estate data solutions
to customers across the United States. (Compl. at ¶¶
18−19.) Plaintiff worked in Red Vision's employ as a title

examiner from approximately September 2007 until 2011.
(*Id.* at ¶¶ 20−21.)In that capacity, Plaintiff earned an
hourly wage plus additional compensation based upon the
tasks she performed. (*Id.* at ¶ 22.)Plaintiff calls this
additional compensation "piece-rate." (*Id.* at ¶
22.)Plaintiff alleges that Red Vision failed to add her
piece-rate earnings with her hourly rate of pay for
purposes of calculating overtime pay. (*Id.* at ¶ 24.)She
maintains that in calculating her overtime pay, Red Vision
only considered her regular rate of pay. (*Id.* at ¶ 25.)As a
result, Bath claims that Red Vision improperly calculated
her overtime compensation when she worked more than
forty hours within a work week, in violation of the FLSA.
(*Id.* at ¶ 23.)

Furthermore, Plaintiff also alleges that Red Vision
improperly calculated the overtime pay of all other title
examiners that it employed. (*Id.* at ¶¶ 31−33.)Plaintiff
contends that Red Vision had a compensation policy
applicable to all its title examiners nationwide in which
Red Vision purposely failed to include piece-rate pay in
its calculations of overtime monies due to title examiners.
(*Id.* at ¶¶ 34−35.)Plaintiff alleges that she and all other
title examiners in Red Vision's employ performed the
same or similar job duties and were all subjected to the
same compensation policy. (*Id.* at ¶¶ 31−33.)Thus,
Plaintiff claims that she and all other title examiners
employed by Red Vision during the relevant time period
are similarly situated. (*Id.* at ¶¶ 31−33.)

Plaintiff filed the instant Complaint on April 12, 2013.
(Dkt. No. 1.) The two-count Complaint seeks (1)
monetary damages on behalf of Plaintiff and the putative
class members due to Red Vision's miscalculation of
overtime pay in violation FLSA and (2) declaratory
judgment declaring that Red Vision violated the FLSA
and issuing an injunction precluding Red Vision from
engaging in the unlawful practices in the future. (*Id.* at ¶¶
42−65.)Shortly after the Complaint's filing, Katherine
Prevatt, who is allegedly similarly situated to Plaintiff,
filed a Notice of Consent to Join the Collective Action on
April 16, 2013. (Dkt. No. 3.) On June 13, 2013, Patrick
Harran also filed a Notice of Consent to Join the
Collective Action. (Dkt. No. 5.) On October 1, 2013,
Plaintiff filed the instant Motion for Conditional
Certification of Collection Action. (Dkt. No. 14.)On the
same day, Red Vision moved to dismiss this matter for
lack of subject matter jurisdiction. (Dkt. No.
15.)Subsequent to the filing of these motions, Kathleen
Deaver, Amy Lane, and Helen Norman filed Notices of
Consent to Join the Collective Action on March 25, 2014
and April 3, 2014, respectively. (Dkt. No. 27, 28.)

2014 WL 2436100, 22 Wage & Hour Cas.2d (BNA) 1094

## II. *DISCUSSION*

### A. Red Vision's Motion to Dismiss

**\*2** Red Vision's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for want of subject matter jurisdiction is premised on its position that Plaintiff's FLSA claim is now moot due to Plaintiff's failure to accept Red's Vision offer of judgment. (Def.'s Br. 5–7.) On or about June 24, 2013, Red Vision served Plaintiff with an offer of judgment in the amount of $3,000 plus reasonable attorneys' fees and costs pursuant to Fed.R.Civ.P. 68. (*Id.* at 5.) Red Vision maintains that this sum is far greater than the value of Plaintiff's claim, which, if she ultimately prevails on her FLSA claim, Red Vision calculates to be $593.30. (*Id.*) Plaintiff failed to respond to the offer and it therefore lapsed fourteen (14) days after it was made. (*Id.*) Red Vision thus argues that since it offered Plaintiff more than she could recover at trial if she is successful on her claim, no case or controversy exists and this Court lacks subject matter jurisdiction. (*Id.* at 7.)

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass' n,* 549 F.2d 884, 891 (3d Cir.1977)). Where, as here, the defendant's motion is supported by sworn statements of facts, the district court must treat the motion as a factual attack, rather than a facial attack. *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982). "In such a case, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* It is important to note both that "the existence of disputed material facts will not preclude [a] trial court from evaluating for itself the merits of jurisdictional claims," and that "a plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen,* 549 F.2d 891. The plaintiff must not only demonstrate that a controversy existed at the time it filed suit but that it continues to exist throughout the litigation. *Lusardi v. Xerox Corp.,* 975 F.2d 964, 974 (3d Cir.1992). "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " *Gould Elecs. Inc.,* 220 F.3d at 178 (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991)).

Under Article III, Section 2 of the United States Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." U.S. Const. art. III, § 2. The Supreme Court has interpreted this limitation as "restrict[ing] the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.' " *Genesis Healthcare Corp. v. Symczyk,* —— U.S. ——, ——, 133 S.Ct. 1523, 1528, 185 L.Ed.2d 636 (2013) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). The case or controversy must not only exist at the time of the complaint's filing but must be extant throughout the duration of the litigation. *Symczyk,* 133 S.Ct. at 1528. Thus, if "the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction ." *Weiss v. Regal Collections,* 385 F.3d 337, 340 (3d Cir.2004). Third Circuit law is clear that an offer of complete relief moots a plaintiff's claim "as at that point the plaintiff retains no personal interest in the outcome of the litigation," and the Court must dismiss the claim for lack of subject matter jurisdiction. *Id.*

**\*3** Relying on *Symczyk,* Red Vision argues that its offer of judgment moots Plaintiff's claim because the offer is far greater than what Plaintiff could hope to obtain at trial. (Def.'s Br. 7.) Plaintiff counters that Red Vision's offer of judgment does not fully compensate her for actual and liquidated damages, and further argues she cannot even assess whether Red Vision's offer would provide full relief as Red Vision has refused to furnish to her all applicable weekly pay and time records. (Pl.'s Br. 4.) Plaintiff additionally rejects that Red Vision's offer would constitute full relief because Red Vision has used a legally incorrect mathematical formula in arriving at the amount she is owed. (Pl.'s Br. 4–5.)

Red Vision's reliance on *Symczyk* is misplaced. The *Symczyk* Court explicitly did not reach the issue of whether an offer of complete relief moots the plaintiff's FLSA claim, the key issue to be decided here. *Symczyk,* 133 S.Ct. at 1528–29. In *Symczyk,* as the employee had not appealed the district court's conclusion that the employer's offer of judgment mooted her FLSA claim, the Supreme Court made clear in no fewer than three separate instances that it was assuming, without deciding, that the employer's offer of judgment mooted the employee's individual FLSA claim. *Id.* at 1528–29, 1532. The High Court acknowledged the circuit split with regard to whether "an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot," but nevertheless "declin[ed] to resolve the split, because the issue [was] not properly before" the Court. *Id.* at 1528–29. Having assumed the issue without deciding it, the Court's analysis turned "to the question of whether

[the employee's] action remained justiciable based on the collective-action allegations in her complaint." *Id.* at 1529. The Court concluded that the absence of any opt-in plaintiffs combined with the offer that fully satisfied her claims deprived the employee of any personal stake in the litigation's outcome and thereby, stripped the Court of jurisdiction. *Id.* at 1529. Thus, *Symczyk* is clearly inapposite to the threshold issue presented here.

Further, Plaintiff vehemently disputes that Red Vision's offer provides her with complete relief, as opposed to the employee in *Symczyk* who conceded that point. (Pl.'s Br. 4.) Additionally, Plaintiff argues that Red Vision's damages calculation is legally incompetent as it is based on a two-week period. (Pl.'s Br. 4–5.) Plaintiff correctly points out that overtime calculations must be premised upon a weekly basis. *See* 29 C.F.R. § 778.103. Red Vision tacitly acknowledges this point and advances three methods that could be used to calculate the allegedly withheld overtime payments. (Def.'s Reply Br. 2–7.) Accordingly, based on the disputed amount of damages and dispute regarding the method of calculating it, the Court is unable to determine the amount of damages that would fully compensate Plaintiff, even if it were to accept the pay stubs and timesheets submitted with Red Vision's motion as authentic.

**\*4** Relying on *Beery v. Quest Diagnostic, Inc.,* 2013 U.S. Dist. LEXIS 95096, 2013 WL 3441792 (D.N.J. July 8, 2013), Red Vision further argues that the presence of opt-in plaintiffs Harran and Prevatt is not an impediment to granting its motion to dismiss. (Def.'s Br. 8–9.) Red Vision's reliance on *Beery* is misplaced as *Beery* is not controlling with respect to the issues presented here. In *Beery,* the court dismissed the named plaintiffs' FLSA claim in favor of arbitration based on arbitration clauses in their employment agreements. *Beery,* 2013 U.S. Dist. LEXIS at \*1, \*3, 2013 WL 3441792. After dismissing the named plaintiffs' claims, the court then determined that it did not have subject matter jurisdiction over the opt-in plaintiffs' claims, who had opted-in prior to the court's grant of conditional certification. *Id.* at \*2–\*3, \*7–\*8. Contrary to the facts presented here, the named plaintiffs' FLSA claims in *Beery* were dismissed pursuant to an arbitration clause. Additionally, the opt-in plaintiffs in *Beery* opted-in without the filing of a motion for conditional certification. *Id.* at \*2. Here, the filing of the motion for conditional certification on October 1, 2013 relates back to the filing of the Complaint on April 12, 2013. *See Weiss,* 385 F.3d at 348 (holding that absent undue delay in the filing of a class certification motion, the filing of the certification motion relates back to the filing of the complaint when there is an offer of judgment that could potentially moot the named plaintiff's claim).

Accordingly, the presence of opt-in plaintiffs, as discussed more fully *infra,* further precludes this Court from granting Red Vision's motion to dismiss. *See Bamgbose v. Delta–T Group, Inc.,* 724 F.Supp.2d 510, 517 (E.D.Pa.2010) (finding that plaintiff's *accepted* offer of judgment still did not moot the collective FLSA action where there were opt-in plaintiffs).

Finally, this Court notes that it shares the concern raised by many other courts who are troubled by the "pick-off" strategy employed by many defendants, wherein they make an offer of judgment to the named plaintiff relatively early in the litigation in hopes of mooting the plaintiff's claim and consequently, stripping the court of jurisdiction. This strategy has the potential of frustrating the purpose of the collective actions. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ( "Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions ...."); *Weiss,* 385 F.3d at 344 ("allowing the defendants here to 'pick-off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims"); *Reyes v. Carnival Corp.,* 2005 U.S. Dist. LEXIS 11948, \*9–\*10 (S.D.Fla. May 25, 2010) ("Finally, it is important to note that the defense strategy of providing an offer of judgment to the plaintiff in a FLSA collective action in order to bar the case from proceeding as to all similarly situated plaintiffs violates the very policies behind the FLSA."); *Reed v. TJX Cos.,* 2004 U.S. Dist. LEXIS 21605, \*7, 2004 WL 2415055 (N.D.Ill. Oct. 27, 2004) (noting with concern the defendant's "pickoff" strategy). Therefore, Red Vision's motion to dismiss is denied.

## B. Plaintiff's Motion for Conditional Certification of Collection Action

**\*5** In pertinent part, the FLSA states as follows:

> An action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No

employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not define the phrase "similarly situated," the Third Circuit instructs district courts to undertake a two-step process in determining whether an action may proceed as an FLSA collective action. *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 729 F.3d 239, 243 (3d Cir.2013); *White v. Rick Bus Co.,* 743 F.Supp.2d 380, 386–87 (D.N.J.2010). The first step is conditional certification, which is then followed by final certification at step two. *White,* 743 F.Supp.2d at 387.Importantly, the "plaintiff bears the burden of satisfying the similarly situated standard."*Id.* (citation omitted).

While district courts in this circuit appear to be divided as to the governing standard utilized at the conditional certification step, the Third Circuit has embraced the "modest factual showing" standard, which requires that the plaintiff show a *"modest factual nexus"* between their situation and that of the proposed class members."*Id.* at 387 (citation omitted, emphasis in original); *see Zavala v. Wal–Mart Stores Inc.,* 691 F.3d 527, 536 n. 4 (3d Cir.2012) ("We adopted the 'modest factual showing' standard, under which a 'plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'") (citation omitted)).

In support of her motion, Plaintiff submitted a declaration in which she avers that beginning in approximately May 2011, Red Vision instituted a policy wherein it paid title examiners an hourly wage plus "production pay"[1]. (Dkt. No. 14, Ex. C at ¶ 6.) The production pay was based upon the quantity of work performed. (*Id* . at ¶ 7.) She maintains that although she worked in excess of forty hours during some workweeks, the overtime payments she received were based solely upon her regular wage and did not include her production pay. (*Id.* at ¶¶ 8–10.)Plaintiff states that Red Vision continued using this payment policy throughout her tenure there, which ended in November 2011. (*Id.* at ¶ 10.)She attached two paycheck stubs dated August 5, 2011 and September 2, 2011 that she contends show that her production pay was not taken into account when calculating her overtime wages. (Dkt. No. 14, Ex. C.) Moreover, Plaintiff avers that Red Vision utilized the same payment policy for all of its title examiners; she knows this was done based upon

her personal experiences in Red Vision's employ and her conversations with other title examiners and Red Vision management. (Dkt. No. 14, Ex. C at ¶¶ 10–14.)

[1]  Plaintiff uses the term "piece-rate pay" in the Complaint but "production pay" in the declaration and briefs; both terms appear to refer to the same compensation policy.

**\*6** Similarly, former Red Vision employee Kathy Prevatt ("Prevatt") submitted a declaration substantially corroborating Plaintiff's account. Prevatt declares that she worked as a Red Vision title examiner from September 2008 until June 2012. (Dkt. No. 14, Ex. D at ¶ 3.) She states that in approximately May 2011, Red Vision began compensating all title examiners with an hourly wage plus production pay. (*Id.* at ¶ 13.)She states that in work weeks when she logged more than forty hours, her overtime payments were exclusively based on her hourly wage and did not include production pay.(*Id.* at ¶¶ 15–16.)She, too, avers that all title examiners were compensated under the allegedly unlawful policy when she departed the company in June 2012. (*Id.* at ¶ 17.)Prevatt maintains that her knowledge of Red Vision's compensation policy is based on her personal experiences at the company and her discussions with other title examiners and management. (*Id.* at ¶¶ 19–21.)Prevatt attached a paycheck stub dated May 4, 2012, which she claims evidences Red Vision's failure to include her production pay in its overtime calculation. (Dkt. No. 14, Ex. D.) Furthermore, Patrick Harran ("Harran") also submitted a declaration in support of Plaintiff's motion. He likewise avers that during his career as a title examiner at Red Vision, it instituted a compensation policy starting in May 2011 that paid title examiners an hourly wage in addition to production pay. (Dkt. No. 14, Ex. E at ¶¶ 3, 11.) Harran maintains that when he worked more than forty hours during a given work week, Red Vision exclusively included his hourly wage in the overtime calculation.(*Id.* at ¶¶ 12–14.)He states that all title examiners were subject to this compensation policy, which continued until he left the company in March 2012.(*Id.* at ¶ 15.)Harran also avers that his personal knowledge is acquired from his discussions with other title examiners and Red Vision management.(*Id.* at ¶¶ 17–18.)

Based upon Plaintiff's declaration and the declarations of Prevatt and Harran, Plaintiff has sustained her burden of demonstrating that there is a "factual nexus" between her situation and that of the putative class members. All three former Red Vision title examiners aver that Red Vision instituted a compensation policy in approximately May 2011, applicable to all title examiners, which excluded

their production pay when calculating their overtime wages. This Court also notes that three prospective plaintiff's opted in to the collective action after the instant motion had been fully briefed. (Dkt. No. 27, 28.)Consequently, this Court finds that Plaintiff and Red Visions' other title examiners are similarly situated for FLSA purposes.

In connection with the instant motion, Plaintiff submitted a proposed notice of pendency. Plaintiff's proposed notice states, in part, as follows:

> *IF YOU ARE OR WERE A TITLE EXAMINER FOR RED VISION SYSTEMS AT ANY TIME BETWEEN 2011 TO THE PRESENT WHO WORKED MORE THAN FORTY HOURS WITHIN A WORKWEEK, A COLLECTION ACTION LAWSUIT MAY AFFECT YOUR RIGHTS.*

**\*7** (Dkt. No. 14, Ex. G) (emphasis in original). In addition to having the notice mailed to potential class members, Plaintiff seeks to have the notice posted in common, non-public employee spaces at each of Red Vision's locations nationwide. (Pl.'s Br. 19–20; Pl.'s Reply Br. 11.) Plaintiff also seeks limited discovery of the names, addresses, and e-mail addresses of potential class members. (Pl.'s Br. 20–21.) Red Vision objects to the proposed notice's content and also to Plaintiff's posting and discovery demands. Specifically, Red Vision argues that the potential class period is overbroad because it discontinued the complained of compensation policy in July 2012. (Def.'s Br. 8.) Red Vision also argues that the notice must contain a statement advising the prospective plaintiffs of Red Vision's defenses, the putative plaintiffs' discovery obligations, and that they could be liable for defense costs. (*Id.* at 8–9.)Red Vision also maintains that the notice should specify that opt-in plaintiffs are not obligated to be represented by Plaintiff's counsel and that the notices should be returned to the Court, rather than Plaintiff's counsel. (*Id.* at 9.) Red Vision raises several other objections, including that the notice should not be posted at its locations and that Plaintiff's limited discovery request is overbroad and thereby violates the potential plaintiffs' privacy interests. (*Id.* at 9–10.)

The Supreme Court has held that district courts have broad discretion under FLSA to facilitate notice to potential collective action plaintiffs. *See Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Woodard v. FedEx Freight E., Inc.,* 250 F.R.D. 178, 185 n. 6 (M.D.Pa.2008) ("District courts, however, have discretion to 'facilitat[e] notice to potential plaintiffs' of the pending collective action.") (citation omitted)). The Court noted that "[b]y monitoring preparation and distribution of the notice, a court can

ensure that it is timely, accurate, and informative."*Hoffman–LaRoche,* 493 U.S. 165 at 172, 110 S.Ct. 482, 107 L.Ed.2d 480.As a threshold matter, Plaintiff does not object to narrowing the collective action class to the time period when the allegedly unlawful compensation policy was in effect, namely, May 2011 through July 2012. (Pl.'s Reply Br. 7.) Accordingly, the putative collective class is hereby limited to current and former Red Vision title examiners employed at any location nationwide that worked in excess of forty hours in any work week from May 2011 through July 2012, inclusive. Additionally, the notice should specify that opt-in plaintiffs are free to be represented by counsel of their choosing. *See Garcia v. Pancho Villa's of Huntington Village, Inc.,* 678 F.Supp.2d 89, 95 (E.D.N.Y.2010); *Delaney v. Geisha NYC, LLC,* 261 F.R.D. 55, 59 (S.D.N.Y.2009).

Red Vision's remaining objections are unfounded. Red Vision's position that the notice must include recitation of its defenses is meritless. A statement that "Red Vision denies Plaintiff's allegations and maintains that it paid its title examiners in full as required by law" is sufficient to advise the potential plaintiffs that Red Vision rejects Plaintiff's allegations. *See Delaney,* 261 F.R.D. at 59 (stating that a sentence in the notice advising that defendants denied that they violated the FLSA was sufficient). Furthermore, a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted. Such statements have the potential of chilling participation in the collective action. *Id.* at 59 ("Defendants cite no other Court that has required a notice to warn opt-in plaintiffs of potential discovery obligations and liability for Defendants' costs or required plaintiffs to sign the consent form on penalty of perjury.").

**\*8** Additionally, Plaintiff's limited discovery request is narrowly tailored to identify potential class members and is therefore appropriate. *See Hoffman–LaRoche,* 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."). Red Vision's suggestion that opt-in plaintiffs' consent to join forms should be returned to the Court instead of Plaintiff's counsel is unnecessary because the notice will specify that opt-in plaintiffs may choose their own counsel. Finally, Red Vision's objection to the notice being posted at its locations is meritless. Numerous courts have endorsed posting the notice in the employer's locations as it ensures that a large number of potential plaintiffs are notified. *Thompson v. Peak Energy Services USA, Inc.,* 2013 U.S. Dist. LEXIS 143704, No. 13–0266, \*8–9, 2013 WL 5511319 (W.D.Pa. Oct. 4,

**Bath v. Red Vision Systems, Inc., Slip Copy (2014)**

2014 WL 2436100, 22 Wage & Hour Cas.2d (BNA) 1094

2013); *Garcia,* 678 F.Supp.2d at 96 ("Moreover, while defendants object to the posting of the Notice at their business locations-and request an order prohibiting it-such a practice has been routinely approved in other cases.") As such, subject to the modifications discussed above, Plaintiff's proposed notice is approved.

**III.** *CONCLUSION*

For the reasons stated above, Plaintiff's Motion for Conditional Certification of Collective Action is

**GRANTED.**Red Vision's Motion to Dismiss, however, is **DENIED.**

**All Citations**

Slip Copy, 2014 WL 2436100, 22 Wage & Hour Cas.2d (BNA) 1094

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

35 F.Supp.3d 247
United States District Court,
E.D. New York.

Angel DILONEZ, and all other non-exempt
employees similarly situated, Aura Bueno, Carlos
A. Dilone, Norberto Bueno, Plaintiffs,
v.
FOX LINEN SERVICE INC. and George Sundel,
Defendants.

No. CV 13–00845(JS)(GRB). | Signed July 25, 2014.

**Synopsis**
**Background:** Former employees brought action against
employer and its owner, alleging they violated the Fair
Labor Standards Act (FLSA) and similar New York labor
laws by failing to pay overtime wages. Employees moved
for conditional certification of a collective action.

**Holdings:** The District Court, Gary R. Brown, United
State Magistrate Judge, held that:

[1] employees met their minimal burden for conditional
certification of a collective action;

[2] notice to prospective opt-in plaintiffs would be sent to
employees who worked for employer within the six years
prior to the filing of the complaint;

[3] notice would include references to employees' state
law claims;

[4] notice would not include references to inquiries about
immigration status;

[5] consent form for opting in would not include statement
that plaintiff worked in excess of 40 hours per week and
was not properly compensated for overtime;

[6] notice would be circulated in both English and Spanish
and published in local Spanish periodicals; and

[7] consent form would be sent to employees' counsel,
rather than to the clerk of court.

Motion granted.

**Attorneys and Law Firms**

**\*250** Peter Arcadio Romero, Andrea Rodriguez, Frank &
Associates P.C., Farmingdale, NY, for Plaintiffs.

Jeffrey N. Naness, Naness, Chaiet & Naness, LLC,
Jericho, NY, for Defendants.

*ORDER*

GARY R. BROWN, United State Magistrate Judge:

**\*\*1** Plaintiff Angel Dilonez, along with opt-in plaintiffs
Aura Bueno, Carlos Dilone, and Norberto Bueno
(collectively, "plaintiffs"), bring this action against their
former employer, Fox Linen Service, Inc. ("Fox Linen")
and owner George Sundel (collectively, "defendants").
Plaintiffs, who were employed by defendants, allege that
defendants violated the Fair Labor Standards Act
("FLSA") and similar New York labor laws by failing to
pay overtime wages to plaintiffs and other similarly
situated employees. *See generally* Complaint ("Compl."),
Feb. 15, 2013, Docket Entry ("DE") [1]. Plaintiffs filed a
motion for conditional certification of a collective action
pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), which
defendants oppose. *See generally* Motion for Conditional
Certification of a Collective Class ("Mot."), Nov. 5, 2013,
DE [19]; Opposition to Pl.'s Mot. ("Opp'n"), Dec. 2,
2013, DE [22]; Reply, Dec. 16, 2013, DE [25].

For the reasons that follow, and to the extent of and
subject to the provisions contained herein, the motion for
conditional certification is GRANTED.

**BACKGROUND**

Plaintiffs allege that they regularly worked more than
forty hours per week at Fox Linen, a laundry business
located in Port Jefferson, New York, but did not receive
overtime pay. Compl. ¶¶ 3, 29, 32; Mot. 1–2. Plaintiffs,
who primarily spoke Spanish, performed non-exempt
duties, including sorting, washing, ironing, and folding
linens. *See generally* Declaration of Angel Dilonez
("Dilonez Decl."), Dec. 16, 2013, DE [25–2]; Declaration
of Norberto Bueno ("Bueno Decl."), Dec. 16, 2013, DE
[25–3]; Declaration of Carlos Dilone ("Dilone Decl."),

Dec. 16, 2013, DE [25–4]; Declaration of Lorenzo Rodriguez ("Rodriguez Decl."), Dec. 16, 2013, DE [25–5]. Defendants paid plaintiffs and other non-exempt employees by check for the first thirty-five to forty hours worked per week, and then paid them in cash—still at their regular hourly wage—for any hours worked in excess of forty hours per week. *See* Dilonez Decl. ¶¶ 7–11; Bueno Decl. ¶¶ 7–11; Rodriguez Decl. ¶¶ 7–10; Mot. 1–3. According to plaintiffs' declarations, defendants failed to pay other non-exempt employees overtime wages, some of whom are identified in the declarations. *See* Dilonez Decl. ¶¶ 7–10; Bueno Decl. ¶¶ 7–10; A. Bueno Decl. ¶¶ 7–10; Dilone Decl. ¶¶ 7–10; Rodriguez Decl. ¶¶ 6–10.

Plaintiffs seek to conditionally certify a class comprising "[a]ll non-exempt employees of Defendants ... who performed duties, including but not limited to, separating, washing, ironing, and/or folding laundry." Mot. 2. As part of this motion, **\*251** plaintiffs request the names, addresses, telephone numbers, and dates of employment of those who may be covered by the collective action for the purpose of sending the potential plaintiffs a Notice of Pendency and a Consent to Join form. Mot. 9–11; *see also* Proposed Notice of Pendency ("Notice"), Nov. 5, 2013, DE [18–6]; Proposed Consent to Join Form ("Consent form"), Nov. 5, 2013, DE [18–7]. Additionally, plaintiffs request that the Court authorize the circulation of the Notice and Consent form in both English and Spanish and that the Notice be posted at defendants' place of business and published in local Spanish periodicals. Mot 1, 9–11.

**\*\*2** Defendants filed an opposition to this motion claiming that there is no basis for conditional certification because plaintiffs' original supporting declarations are neither dated nor notarized. *See* Opp'n 2–4. Defendants also submitted seven affidavits from current employees to show that Fox Linen employees did not work more than forty hours per week. *See generally* Defs.' Affirmations in Opp'n to Pls.' Mot. ("Defs.' Affs."), Dec. 2, 2014, DE [22–1]. Defendants further contend that even if the Court granted the motion, the class should be limited to workers with the titles of "sorters" or "washers." Opp'n 4–5.

Defendants also object to certain aspects of the proposed notification process. First, in light of the FLSA's three-year statute of limitations, defendants request that the Notice and Consent form be sent to current and former employees who worked for defendants within the last three years rather than to employees who worked within the last six years (the New York statute of limitations). Opp'n 6–8; *see also* 29 U.S.C. § 255(a) (statute of limitations of up to three years); N.Y. Labor Law § 198(3) (statute of limitations of six years). Second, defendants

want any references to New York labor law claims removed from the Notice. Opp'n 8–9. Third, defendants want the circulated Notice to inform potential plaintiffs about the potential consequences of entering the action, including discovery obligations, inquiries about immigration status, costs, and counterclaims. Opp'n 9–11; Defs.' Supplemental Letter, Dec. 3, 2013, DE [23].

Fourth, defendants want to require any opt-in plaintiffs to sign a statement affirmatively alleging that they worked more than forty hours per week and that they were not properly compensated. Opp'n 10–11. Fifth, defendants ask that the Court require the opt-in plaintiffs to mail their Consent forms directly to the Court rather than to plaintiffs' counsel. *Id.* Finally, the defendants argue that any translation of the notice or consent forms should be approved by all parties. Opp'n 10–11.

***DISCUSSION***

**I. Legal Standard**

The FLSA mandates the following:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Defendants do not claim that their employees were exempt from the FLSA overtime requirements. *See generally* Opp'n.

**II. Collective Class Action**

**A. Two–Step Certification of a Collective Action**

Under 29 U.S.C. § 216(b), plaintiffs in this action may proceed "for and in behalf **\*252** of himself or themselves and other employees similarly situated." 29 U.S.C. §

216(b). This is known as a "collective action." *See Myers v. Hertz Corp.,* 624 F.3d 537, 543 (2d Cir.2010); *Ahmed v. T.J. Maxx Corp.,* 10–CV–3609, 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013).

**\*\*3** [1] [2] A collective action under the FLSA is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action. *Puglisi v. TD Bank, N.A.,* 998 F.Supp.2d 95, 98–99, 2014 WL 702185, at *2 (E.D.N.Y.2014); *see also* Rule 23. Moreover, in a FLSA collective action, the potential class members must affirmatively "opt in" to the class. *See Genesis Healthcare Corp. v. Symczyk,* 569 U.S. ——, 133 S.Ct. 1523, 1530, 185 L.Ed.2d 636 (2013).

The Second Circuit has recognized the procedure for conditional certification, which evolved through decisions by the district courts:

> Although they are not required to do so by FLSA, district courts "have discretion, in appropriate cases, to implement [ § 216(b) ] ... by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. In determining whether to exercise this discretion in an "appropriate case[ ]," the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." In a FLSA exemption case, plaintiffs accomplish this by making some showing that "there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. The "modest factual showing" cannot be satisfied simply by "unsupported assertions," but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action

may be "decertified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers,* 624 F.3d at 554–55 (alterations and ellipses in original) (citations and footnotes omitted).

[3] Conditional certification "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare,* 133 S.Ct. at 1530 (internal quotation marks and citation omitted).

**\*253 B. Application of the First–Step Analysis**
**\*\*4** [4] The undersigned finds that plaintiffs, for the purposes of this first step, have met their minimal burden of showing that they and other non-exempt Fox Linen employees are similarly situated. *See Puglisi,* 998 F.Supp.2d at 99–101, 2014 WL 702185, at *3–4; *Jenkins v. TJX Cos. Inc.,* 853 F.Supp.2d 317, 321 (E.D.N.Y.2012).

According to the sworn statements submitted by plaintiffs, they and other Fox Linen employees typically worked more than forty hours per week and performed non-exempt work, such as sorting laundry, picking up linens, and operating machinery that separated the linens. Dilonez Decl. ¶¶ 4–12; Bueno Decl. ¶¶ 4–13; Rodriguez Decl. ¶ 4; Dilone Decl. ¶¶ 4–11. Based on discussions with other employees, plaintiffs allege that defendants' non-exempt employees were all similarly paid by check for the first thirty-five to forty hours of the workweek, and then were paid—still at their regular, non-overtime hourly rates—in cash for any hours in excess of forty hours per week. Dilonez Decl. ¶¶ 7–13; Bueno Decl. ¶¶ 7–13; Rodriguez Decl. ¶¶ 7–9. Plaintiffs, in their declarations, also identify by name some of these non-exempt employees who were subject to this payment scheme. Dilonez Decl. ¶¶ 7–13; Bueno Decl. ¶¶ 7–13; Dilone Decl. ¶¶ 7–11. These averments tend to suggest that other Fox Linen's non-exempt employees also typically worked over forty hours per week, performed non-exempt job duties, and were subject to a similar payment scheme that deprived them of overtime compensation. *See* Dilonez Decl. ¶¶ 4–13; Bueno Decl. ¶¶ 4–13; Rodriguez Decl. ¶¶ 4–9; Dilone Decl. ¶¶ 4–11. Taken together, this evidence is enough to satisfy the "modest factual showing" requirement. *See Puglisi,* 998 F.Supp.2d at 100, 2014 WL 702185, at *4.

[5] Defendants first argue that the collective action cannot be conditionally certified because none of plaintiffs' initial declarations were notarized or dated, and thus, the declarations should not be considered by the Court. Opp'n 2. First, consistent with federal law, an unsworn declaration is fully admissible on a motion, provided such declaration is signed under penalty of perjury. *See* 28 U.S.C. § 1746 (a "matter may, with like force and effect, be supported, evidenced, established, or proved by [an] unsworn declaration"); *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC,* 09–CV–2614, 2011 WL 6329194, at *4 n. 2 (E.D.N.Y. Dec. 6, 2011) ("an unsworn declaration made under the penalty of perjury has the same evidentiary weight as an affidavit"). And while the failure to date the declarations represented technical noncompliance with this section, plaintiffs, in their reply, resubmitted dated declarations, which were fully consistent with the statute. *See generally* Dilonez Decl.; Bueno Decl.; Rodriguez Decl.; Dilone Decl. By submitting the amended declarations, plaintiff cured any technical deficiency. *See Cuoco v. Hershberger,* 93–CV–2806, 1996 WL 648963, at *3 (S.D.N.Y. Nov. 6, 1996) ("The Court accepts the new [resubmitted] declarations as evidence, and proceeds now to consider the merits of defendants' motion.").

**5 Defendants also submitted seven affidavits of current Fox Linen employees who claim that they never worked more than forty hours per week and that they do not know of any employees who worked more than forty hours per week. *See generally* Defs.' Affs. B–H. Though defendants' affidavits make the conditional-certification decision a closer question, at this pre-notification juncture, the burden upon plaintiffs is "extraordinarily low, and the issues *254 need not be conclusively resolved" until after the notification process. *Puglisi,* 998 F.Supp.2d at 101, 2014 WL 702185, at *5.

Finally, defendants argue that because plaintiffs generally worked as "sorters" and "washers," the conditional certification should extend only to non-exempt employees who worked in the same job positions. Opp'n 5. Defendants' argument, at this step, is unavailing because plaintiffs' knowledge of other non-exempt employees' work schedules and wages is not limited by their job titles. Based on plaintiffs' declarations, defendants operated a common wage-and-hour scheme. Dilonez Decl. ¶¶ 4–12; Bueno Decl. ¶¶ 4–13; Rodriguez Decl. ¶ 4; Dilone Decl. ¶¶ 4–11. Defendants have provided no evidence to suggest that the alleged payment scheme was limited to only sorters and washers. *See, e.g.,* Iglesias–Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y.2007) (refusing to limit conditional certification to only "duck feeders" because plaintiffs

sufficiently showed that all class members, not just duck feeders, "were subjected to certain wage and hour practices at the defendants' workplace").

[6] Following the notification process, the Court will conduct a more searching factual inquiry as to whether the class members are "truly similarly situated." *Jenkins,* 853 F.Supp.2d at 320–21. After all, the "sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court," *Genesis Healthcare,* 133 S.Ct. at 1530, and the Court may, at the second step, decertify the class or divide it into subgroups. But such a decision will take place at the second step of the two-step certification process.

### III. Notification Procedure

[7] When crafting the notification procedure, "[c]ourts have broad discretion to ... effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.,* 11–CV4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation marks omitted).

### A. Scope of Notification

[8] Plaintiffs propose that the collective action notifications be sent to all non-exempt employees who worked for Fox Linen within the past six years because plaintiffs' state labor claims have a six-year statute of limitations. Mot. 9–10; *see also* N.Y. Labor Law § 198(3). Defendants argue that notifications should be sent to non-exempt employees that worked for Fox Linen only within the last three years because FLSA's statute of limitations is, at most, three years. Opp'n 6–8; *see also* 29 U.S.C. § 255(a) (setting a three-year statute of limitations for "willful" violations of FLSA).

**6 Courts in this district "have held that where a case involves both [New York labor law] and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely [state] claims." *Cohan v. Columbia Sussex Mgmt.,* 12–CV–3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013) (collecting cases). In light of such considerations, notification shall be sent to employees who worked for defendants within the six years prior to the filing of the complaint. *Id.*

2014 WL 3893094

**\*255 B. References to New York Labor Law Claims in Notice**

[9] The proposed Notice, in pertinent part, reads:

> Under New York law, you may have claims for overtime compensation (work performed over 40 hours) and spread-of-hours compensation (work performed in excess of 10 hours per shift).... You will be advised of any additional rights that you may have to recover under New York law in the event that a class us [sic] certified by this Court.

Notice. Defendants request that all references to state claims be removed from the Notice. Opp'n 8–9. Courts in this district have typically allowed such language in collective action notices because "information regarding potential state law claims may be relevant to potential plaintiffs with timely federal claims in deciding whether or not to opt in to the collective action." *Kemper v. Westbury Operating Corp.,* 12–CV–0895, 2012 WL 4976122, at \*4 (E.D.N.Y. Oct. 17, 2012) (internal quotation marks omitted) (collecting cases). Furthermore, "[i]nformation regarding state law claims may help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants." *Id.* Therefore, plaintiffs need not remove the Notice's language regarding New York labor law claims.

**C. Consequences of Opting In**

[10] Defendants request that the proposed Notice be amended to include language that informs potential opt-in plaintiffs of the possible consequences of opting in, such as discovery obligations, inquiries into immigration status, costs, and potential counterclaims. Opp'n 9–11; Defs.' Supplemental Letter.

Courts in the Second Circuit "routinely approve" the inclusion of "a neutral and nontechnical reference to discovery obligations" to be included in the Notice. *Velasquez v. Digital Page, Inc.,* 11–CV–3892, 2014 WL 2048425, at \*12 (E.D.N.Y. May 19, 2014) (collecting cases). This is to "insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions." *Lujan v.*

*Cabana Management, Inc.,* 10–CV–755, 2011 WL 317984, at \*11 (E.D.N.Y. Feb. 1, 2011).

Therefore, the following language, which has been widely accepted by courts in this Circuit, shall be included in the Notice: "If you join this lawsuit, you may be asked to give testimony and information about your work for [defendant], to help the Court decide whether you are owed any money." *Velasquez,* 2014 WL 2048425, at \*12 (collecting cases).

**\*\*7** In contrast, references to inquiries about immigration status are not "neutral" and "nontechnical," and may unduly discourage potential plaintiffs from opting into the collective action. *Id.; see also Bermudez v. Karoline's Int'l Restaurant Bakery Corp.,* 12–CV–6245, 2013 WL 6146083, at \*1 (E.D.N.Y. Nov. 21, 2013) ("chilling effect" of permitting immigration status discovery represents "a very real concern"); *Enriquez v. Cherry Hill Market Corp.,* 10–CV–5616, 2012 WL 440691, at \*3 (E.D.N.Y. Feb. 10, 2012) (excluding notice language that would "unduly discourage potential plaintiffs from opting in"). Notwithstanding the undersigned's opinion in *Bermudez,* which held that *Palma v. N.L.R.B.,* 723 F.3d 176 (2d Cir.2013), raised questions about the relevance of immigration status in FLSA actions, rendering such status discoverable, other courts have reached the opposite conclusion. *See, e.g.,* **\*256** *Colon v. Major Perry Street Corp.,* 987 F.Supp.2d 451 (S.D.N.Y.2013) ("Discovery into a FLSA plaintiff's immigration status is irrelevant and impermissible"); *Kim v. Kum Gang, Inc.,* 12–CV–6344, 2014 WL 2510576, at \*1 (S.D.N.Y. June 2, 2014) ("immigration status of the plaintiffs is not relevant in this case"). Thus, while "inquiries into immigration status" is, as defendants suggest, a possible consequence, it is far from certain, and therefore should not, on balance be included in the Notice.

In addition, as to defendants' proposed language regarding potential costs and counterclaims against plaintiffs, this district often rejects such language because it imposes "an *in terrorem* effect that is disproportionate to the actual likelihood the costs or counterclaim damages will occur." *Guzman v. VLM, Inc.,* 07–CV–1126, 2007 WL 2994278, at \*8 (E.D.N.Y. Oct. 11, 2007); *see also Ritz v. Mike Rory Corp.,* 12–CV–367, 2013 WL 1799974, at \*3 (E.D.N.Y. Apr. 30, 2013); *Hernandez,* 2012 WL 4369746, at \*7; *Lujan,* 2011 WL 317984, at \*11. Thus, in light of these considerations, language regarding potential costs and counterclaims shall not be included in the Notice.

**D. Defendants' Proposed Addendum to Proposed**

## Consent Form

[11] Defendants argue that the proposed Consent form is an "invitation for free money" because it "does not even require that the employee affirmatively state that they worked over 40 hours in a workweek without receiving overtime." Opp'n 10. Accordingly, defendants propose that any opt-in plaintiffs must sign a form that, in pertinent part, reads, "I hereby state I worked in excess of 40 hours per week and was not properly compensated for overtime." *See* Opp'n 10; Defs.' Aff. J. The Notice is well-written and balanced, and the Consent form is not a discovery device. The documents sufficiently inform potential opt-in plaintiffs about the nature of the action, the potential general outcomes, and the types of allegations that are being asserted. Thus, the undersigned finds that the Notice and Consent form need not include defendants' proposed addendum. *See* Notice; Consent form.

## E. Translation of Notice

**8** [12] Plaintiffs also request that the Notice and Consent form be circulated in both English and Spanish, and that the Notice be published in local Spanish periodicals. Mot. 10–11. Defendants, with little explanation, object to this request, but state that if the Court were to grant plaintiffs' request, any such translations should be approved by both parties. Opp'n 11.

Courts have routinely allowed Notices and Consent forms to be circulated in the "mother tongue of non-English speaking groups of potential plaintiffs." *Colon v. Major Perry St. Corp.,* 12–CV–3788, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013); *Lujan,* 2011 WL 317984, at *14; *Cano v. Four M Food Corp.,* 08–CV–3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 03, 2009). Such translations are particularly appropriate because all of plaintiffs' declarants primarily speak Spanish. *See generally* Dilonez Decl.; Bueno Decl.; Rodriguez Decl.; Dilone Decl. These foreign-language publications are reasonably calculated to reach the targeted audience, which includes a significant number of Spanish speakers. *See Gortat v. Capala Bros., Inc.,* 07–CV–3629, 2010 WL 1423018, at *12 (E.D.N.Y. Apr. 9, 2010). Thus, the Notice and Consent form shall be circulated in both English and Spanish, the Notice shall be published in local Spanish periodicals, and any translations must be approved by both parties. *See, e.g., Hernandez,* 2012 WL 4369746, at *10 n. 10; *Sanchez v. El Rancho Sports Bar* ***257** *Corp.,* 13–CV5119, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014).

## F. Posting of the Notice

Plaintiffs request that the Notice and Consent form be posted at defendants' place of business in conspicuous places. Mot. 10. Defendants have not objected to the Notice and Consent form being posted at their place of business. *See generally* Opp'n. Posting Notice at the place of business is common and "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Rosario v. Valentine Ave. Disc. Store, Co., Inc.,* 828 F.Supp.2d 508, 521 (E.D.N.Y.2011) (citation omitted); *see also Lujan,* 2011 WL 317984, at *14 ("Defendants shall post copies of the Notice, including any translated versions ... in a location conspicuous to all employees ...." (footnote omitted)). Thus, the Notice and Consent form shall be posted in conspicuous places at defendants' place of business.

## G. Filing of Opt-in Plaintiffs' Consent Forms

[13] The proposed Consent forms currently instruct opt-in plaintiffs to send the forms to plaintiffs' counsel if they wish to join the current collective action. *See* Notice; Consent form. Defendants request that the consent forms instruct opt-in plaintiffs to send their forms directly to the Clerk of the Court. *See* Opp'n 10.

Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to plaintiff's attorney. *Compare, e.g., Velasquez,* 2014 WL 2048425, at *14 ("The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel.") *with Mata–Primitivo v. May Tong Trading Inc.,* 13–CV–2839, 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014) ("requiring such forms to the Clerk of Court might prove intimidating to potential opt-in plaintiffs and may prevent individuals from joining the action.").

**9** Some courts have held that it is "inappropriate" to require opt-in plaintiffs to send their consent forms to plaintiff's counsel because "such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel." *Rosario,* 828 F.Supp.2d at 521; *see also Bowens v. Atl. Maintenance Corp.,* 546 F.Supp.2d 55, 84–85 (E.D.N.Y.2008); *Iriarte v. Redwood Deli and Catering, Inc.,* 07–CV–5062, 2008 WL 2622929, at *4 (E.D.N.Y. June 30, 2008). Here, the Notice plainly provides that "[y]ou have the right to retain your own counsel." Notice. Given this plain language, the chance of a reasonable reader being unfairly discouraged from seeking other counsel is *de minimis* at best. *See Mata–Primitivo,*2014 WL 2002884, at *6 ("when the notice instructs that opt-in

Dilonez v. Fox Linen Service Inc., 35 F.Supp.3d 247 (2014)

2014 WL 3893094

plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel."(internal quotation marks omitted)); *Siewmungal v. Nelson Mgmt. Grp. Ltd.,* 11–CV–5018, 2012 WL 715973, at *4 (E.D.N.Y. Mar. 03, 2012) ("Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice.").

The most compelling reason for requiring opt-in plaintiffs to submit their consent forms to the Clerk of the Court is that "sending the notice to the Clerk of Court avoids the risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as a result of the turnaround time occasioned between receipt of a consent form by Plaintiffs' **258 counsel and the need to file the form with the Court." *Brabham v. Mega Tempering & Glass Corp.,* 13–CV–54, 2013 WL 3357722, at *7 (E.D.N.Y. July 3, 2013); *see also Robles v. Liberty Rest. Supply, Corp.,* 12–CV–5021, 2013 WL 6684954, at *9 (E.D.N.Y. Dec. 18, 2013).

However, the undersigned believes that, in light of the budgetary constraints and financial limitations faced by the federal courts, the more practicable and efficient method of opting in is for the consent forms to be sent to plaintiffs' counsel. *See Ritz,*2013 WL 1799974, at *4 ("In order to minimize the burden on opt-in plaintiffs who choose representation by plaintiff's counsel, and to reduce the administrative burden on the court, I am directing that the opt-in forms be returnable to plaintiff's counsel."). Any concerns regarding the statute of limitations should be limited because plaintiffs' counsel has incentive to quickly file the consent forms with the Court. In fact, given the advent of round-the-clock electronic filing, plaintiffs' counsel may, at times, be better equipped to expeditiously file returned consent forms.

### H. Contact Information
[14] Plaintiffs request the names, addresses, phone numbers, and dates of employment of all current and former non-exempt Fox Linen employees. Mot. 11. Plaintiffs intend to use the contact information to send Notices and Consent forms to potential plaintiffs. Defendants have raised no objections to plaintiffs' request for this information. *See generally* Opp'n.

**10 Courts, when conditionally certifying a collective

action, often grant requests for potential plaintiffs' "names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment" from the defendants. *Puglisi,* 998 F.Supp.2d at 102, 2014 WL 702185, at *6. Accordingly, defendants shall produce, in an agreed-upon electronic format, the names, addresses, phone numbers, and dates of employment of all current and former non-exempt employees who worked at Fox Linen within the six years prior to the filing of the complaint. Defendants shall produce such information within 10 days of the date of this order.

### I. Opt-in Period
[15] Plaintiffs and defendants have not clearly proposed a specific opt-in window for potential plaintiffs to opt into the collective action. *See generally* Mot.; Opp'n. Accordingly, the Court concludes that sixty days is a reasonable length of time for a notification period, and other courts in this district have granted requests for similar periods. *See, e.g., Barry v. S.E.B. Serv. of N.Y., Inc.,* 11–CV–5089, 2013 WL 6150718, at *11 (E.D.N.Y. Nov. 22, 2013) ("the 60–day opt-in window that plaintiffs propose is appropriate"); *Bowens,* 546 F.Supp.2d at 85 (observing that courts "have held that a sixty (60)-day period is sufficient for the return of Consent Forms"). Thus, potential plaintiffs shall have 60 days to opt into the collective action, and the notification process shall commence within 14 days of the date of this order.

### CONCLUSION

For the foregoing reasons, to the extent of and subject to the provisions contained herein, the motion for conditional certification is GRANTED. The parties shall engage in the notification process in accordance with this order.

### All Citations

35 F.Supp.3d 247, 2014 WL 3893094

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Dilonez v. Fox Linen Service Inc., 35 F.Supp.3d 247 (2014)

2014 WL 3893094

2013 WL 4479234
Only the Westlaw citation is currently available.
United States District Court,
N.D. Indiana,
Fort Wayne Division.

Alex GARCIA and Andy Wilkerson, on behalf of
themselves and others similarly situated,
Plaintiffs,
v.
MOOREHEAD COMMUNICATIONS, INC.,
Defendant.

Cause No. 1:12–CV–208–JD. | Aug. 19, 2013.

**Attorneys and Law Firms**

Bradley L. Wilson, Ryan Patrick Sink, John H. Haskin,
John H. Haskin & Associates, Indianapolis, IN, for
Plaintiffs.

Brian R. Garrison, Edward E. Hollis, Faegre Baker
Daniels LLP, Indianapolis, IN, for Defendant.

***MEMORANDUM OPINION and ORDER***

JON E. DEGUILIO, District Judge.

**\*1** Now before the Court is Plaintiffs' Motion to Certify
Collective Action [DE 18], to which Defendant filed a
Brief in Opposition [DE 21] and Plaintiffs filed their
Reply [DE 24]. For the foregoing reasons, Plaintiffs'
Motion to Certify Collective Action [DE 18] is
CONDITIONALLY GRANTED.

# I. BACKGROUND

Plaintiffs Alex Garcia ("Garcia") and Andy Wilkerson
("Wilkerson"), on behalf of themselves and others
similarly situated (collectively "Plaintiffs"), filed their
Complaint on June 22, 2012 [DE 1]. The Complaint
alleges that Garcia's former employer and Wilkerson's
current employer, Defendant Moorehead
Communications, Inc. ("Moorehead"), violated the Fair
Labor Standards Act ("FLSA") by failing to pay Plaintiffs
overtime wages earned by them [DE 1 at 5]. Claiming

multiple defenses, Moorehead filed its Answer on August
20, 2012 [DE 16].

The relevant facts indicate that Moorehead is a retailer of
DISH Network products and services that is based in
Marion, Indiana [DE 21–1 ¶ 3]. Garcia worked as a
Satellite Installer Technician ("Technician") for
Moorehead beginning in December 2004 [DE 1 at 2; DE
19 at 2]. Garcia's primary duty as a Technician was to
install satellite and related equipment for customers of
Moorehead [DE 1 at 2; DE 19–3 at 1]. Wilkerson was
then hired by Moorehead in September 2007 and held
positions as a Technician and Field Service Manager
("FSM") [DE 19 at 2; DE 19–4 at 1]. Wilkerson
maintains that as an FSM, his primary duty was to install
satellite and related equipment for Moorehead's
customers-similar to a Technician [DE 19–4 at 1].
However, as an FSM, Wilkerson had additional duties
which included the need to train, direct, and oversee the
Technicians, as well as attend weekly meetings with
management [DE 19–4 at 1–2; DE 21–1 ¶ 8]. As an FSM,
he received an additional one hundred dollars per week
premium pay for the work. *Id.*

Both Garcia and Wilkerson maintain they and other
similarly situated Technicians and FSMs employed by
Moorehead are paid pursuant to Moorehead's common
pay policy which indicates that employees are paid on a
piecework basis [DE 1 at 2–3; DE 16 at 3–5; DE 19–4 at
2; DE 19–5 at 1; DE 19–6 at 1], and are not paid for all
hours worked beyond forty hours per week [DE 1 at 4–5;
DE 16 at 5]. Plaintiffs also assert that travel time is an
integral part of their job and on occasion Plaintiffs
traveled to work sites only to have the job cancelled, for
which they were not subsequently compensated for their
time [DE 1 at 3–5; DE 16 at 6]. Thus, Plaintiffs allege that
Moorehead's policy of paying on a piecework basis
without including overtime pay is contrary to the
commands of the FLSA[1] [DE 1].*See*29 U.S.C. § 201 *et
seq.*

[1]    When an employee is paid on a piece-rate basis:
       [t]he regular hourly rate of pay is computed by
       adding together total earnings for the workweek
       from piece rates and all other sources (such as
       production bonuses) and any sums paid for
       waiting time or other hours worked (except
       statutory exclusions). This sum is then divided by
       the number of hours worked in the week for which
       such compensation was paid, to yield the
       pieceworker's "regular rate" for that week. For
       overtime work the pieceworker is entitled to be
       paid, in addition to the total weekly earnings at
       this regular rate for all hours worked, a sum

Garcia v. Moorehead Communications, Inc., Slip Copy (2013)

2013 WL 4479234

equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week.
29 C.F.R. § 778.111(a).

In response, Moorehead admits that for purposes of the FLSA Plaintiffs are "employees" of Moorehead and Moorehead is an "employer," it acknowledges that Moorehead employed other Technicians and FSMs during the relevant time period who were similarly paid on a piecework basis, and Moorehead concedes that while Plaintiffs were paid on a piecework basis they were not paid overtime compensation for all hours worked beyond forty hours per week [DE 16 at 2–5].

*2 In support of their FLSA claim, Garcia and Wilkerson have submitted their own declarations and the declarations of two other employees who work as Technicians and FSMs for Moorehead [DE 19–3; DE 19–4; DE 19–5; DE 19–6]. According to the declarations, all of these employees work over forty hours a week, are paid by Moorehead on a piecework basis, and have not been compensated with overtime pay for hours worked beyond forty per week, including time spent traveling to work sites. Id. Garcia and Wilkerson affirm that they have personally observed and talked with other Technicians and FSMs who have experienced the same circumstances [DE 19–3 at 2–3; DE 19–4 at 2–4]. Garcia and Wilkerson indicate that they have complained multiple times about not receiving overtime pay [DE 19–3 at 3–4; DE 19–4 at 5].

Based on this information, Plaintiffs request that the Court conditionally certify their claim as a collective action [DE 18, 19], and seek an order directing Moorehead to produce a list of current and former Technicians and FSMs for the proceeding three years, including their names, job titles, home address, email addresses, telephone numbers, and dates of employment [DE 19 at 2].

In response, Moorehead contends that: (1) Plaintiffs' proposed class definition is overly broad; (2) Plaintiffs failed to provide sufficient evidence to warrant conditional certification; (3) resolving Plaintiffs' allegations would require individualized inquiries by the Court and therefore certification is improper; and (4) should the Court grant conditional certification the mailing addresses of putative collective action members should suffice [DE 21]. The Court considers each of these arguments below.

## II. DISCUSSION

The FLSA requires employers to pay overtime of at least one and one-half times an employee's regular rate of pay. 29 U.S.C. § 207(a)(1). Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid overtime compensation on "behalf of himself ... and other employees similarly situated."29 U.S.C. § 216(b). This is known as a "collective action." Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir.2004). However, no current or former aggrieved employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."29 U.S.C. § 216(b).

Collective actions brought under the FLSA are fundamentally different than class actions under Federal Rule of Civil Procedure 23. See Biddings v. Lake County, No. 2:09–cv–38–PRC, 2009 WL 2175584, at *2 (N.D.Ind. July 15, 2009). Plaintiffs in a collective action must "opt-in" to the action to be bound by a judgment while plaintiffs in a Rule 23 class action must "opt-out." See id.(citing King v. Gen. Elec. Co., 960 F.2d 617, 621 (7th Cir.1992); Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir.1982)). Because of the "opt-in" requirement, a representative plaintiff in a collective action must be able to inform other individuals who may have similar claims that they may join his lawsuit. See Biddings, 2009 WL 2175584, at *2 (citing Austin v. CUNA Mut. Ins. Soc'y, 232 F.R.D. 601, 605 (W.D.Wis.2006)).

*3 Section 216(b) does not explicitly provide for court-ordered notice. 29 U.S.C. § 216(b). However, in appropriate cases, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. Hoffmann–LaRoche, Inc. v. Sperling, 493 U.S. 165, 169–70, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). In fact, "trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, [and therefore] it lies within the discretion of the court to begin its involvement early, at the point of the initial notice, rather than at some later time."Id. at 171.Such court-authorized notice serves the broad, remedial purpose of the FLSA and is in line with the court's interest in managing its docket, so long as the court takes care to avoid the appearance of judicial endorsement of the merits of the action.Id. at 172–74.

Not only is the FLSA without instructions as to when courts should exercise their discretion and authorize notice to potential plaintiffs, it also does not define the term "similarly situated." Biddings, 2009 WL 2175584, at *2. Nevertheless, a majority of federal courts have

adopted a two-step approach whereby the first step requires a plaintiff to make a modest factual showing that he and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law-in other words, plaintiff is to demonstrate a factual nexus that binds potential members of a collective action together. *Id.; see Mielke v. Laidlaw Transit, Inc.,* 313 F.Supp.2d 759, 762 (N.D.Ill.2004); *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042, 1045 (N.D.Ill.2003); *see also Mares v. Caesars Entm't, Inc.,* No. 4:06–cv–60–JDT–WGH, 2007 WL 118877, at *2–3 (S.D.Ind. Jan.10, 2007); *Sipas v. Sammy's Fishbox, Inc.,* No. 05 Civ. 10319(PAC), 2006 WL 1084556, at *2 (S.D.N.Y. Apr.24, 2006); *Kreher v. City of Atlanta,* No. 1:04–CV–2651–WSD, 2006 WL 739572, at *2 (N.D.Ga. Mar.20, 2006). The second step of the analysis occurs at the close of discovery when the defendant can move to dismiss the "opt-in" plaintiffs in light of the record developed during discovery. *Biddings,* 2009 WL 2175584, at *3.

## A. The proposed collective class definition is not overly broad

A proposed FLSA collective class can be overly broad. *See e.g., Moss v. Putnam Cnty. Hosp.* No. 2:10–cv–00028–JMS–WGH, 2010 WL 2985301, at *2 (S.D.Ind. July 21, 2010) (limiting the proposed collective class to include only those plaintiffs compensated under the relevant overtime policy). Yet it is important to keep in mind that certification of a collective class is less demanding than certification of a class action under Rule 23, and does not require, "that the named representative's claims have the same essential characteristics as a class at large to achieve the initial certification."*Swarthout v. Ryla Teleservices, Inc.,* No. 4:11–CV–21–RLM, 2011 WL 6152347, at *5 (N.D.Ind. Dec.12, 2011) (citing *Brickel v. Bradford–Scott Data Corp.,* No. 1:09–cv–58–JVB, 2010 WL 145348, at *1 (N.D.Ind. Jan.11, 2010)). Plaintiffs need only provide the minimal showing that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA in order to justify notice at this stage of the proceedings. *See Boyd v. Jupiter Aluminum Corp.* No. 2:05–CV–227–PPS–APR, 2006 WL 1518987, at * 5 (N.D.Ind. May 31, 2006).

**\*4** Moorehead argues Plaintiffs' proposed class is overly broad because it includes (1) trainees who were actually paid overtime; (2) employees who worked after Moorehead revised its pay structure on August 25, 2012 (just two months after this lawsuit was filed); and (3) both

FSMs and Technicians [DE 21 at 5–7]. In response, Plaintiffs clarified that they were not seeking to include in their collective action any trainees, nor were Plaintiffs including Technicians and FSMs beyond August 25, 2012 [DE 24 at 2–3]. Given Plaintiffs' concessions, the Court need only consider the remaining contested issue, that is, whether the collective class may include both Technicians and FSMs.

In support of its position, Moorehead relies on two cases, *Ellerd* and *White,* wherein the district courts did not allow for certification of the proposed classes because they included both supervisors and their supervisees [DE 21 at 7].*See Ellerd v. Cnty. of Los Angeles,* No. CV 08–4289 CAS (FFMx), 2009 WL 982077, at *5 (C.D.Cal. Apr.9, 2009) (refusing to certify proposed class of social workers and their supervisors because an inherent conflict existed between the parties where the social workers would have to prove that their supervisors violated federal law by telling the social workers not to record their overtime); *White v. Osmose, Inc. .,* 204 F.Supp.2d 1309, 1314–1315 (M.D.Ala.2002) (refusing to certify proposed class because foremen and crewmen had dissimilar job duties and there was an inherent conflict between them because foremen were responsible for reporting the correct number of hours worked by crewmen and foremen received bonuses for efficiency). Given the obvious factual differences in *Ellerd* and *White,* the Court finds Moorehead's argument unpersuasive.

Unlike *Ellerd* and *White,* there is no indication at this point that the success of the Technicians' claims will rest on their ability to prove that FSMs acted illegally. In other words, based on the Plaintiffs' declarations and submissions made in support of certification, FSMs were not responsible for the number of hours worked by Technicians, for approving or reporting the number of hours worked by the Technicians, or for pressuring Technicians to under-report the hours actually worked. Further, FSMs had no incentive to encourage Technicians to under-report their hours, since Moorehead was not paying overtime rates to either Technicians or FSMs. Plaintiffs have affirmed that FSMs are not at risk of being held individually liable for violations of the FLSA [DE 24 at 5], but instead, allege that FSMs and Technicians are equal victims of Moorehead's pay policies and procedures which did not include payment for overtime. Not only is there no apparent competing interest between Technicians and FSMs, but both Technicians and FSMs performed similar duties involving the installation of satellite and related equipment. And although the FSMs have additional supervisory roles, these duties do not relate to the reporting, approval, or payment of Technician overtime hours. Because *Ellerd* and *White* are readily

2013 WL 4479234

distinguishable from the present case and no apparent conflict exists between FSMs and Technicians, the Court finds that the proposed class is not overly broad. Accordingly, the proposed collective class is appropriately defined to include Technicians and FSMs who worked within the statute of limitations until August 25, 2012, excluding any trainees.

**B. There is sufficient evidence to warrant conditional certification**

**\*5** Though lenient, the "modest factual showing" standard is not a mere formality. *Biddings*, 2009 WL 2175584, at *3 (citing *Flores*, 289 F.Supp.2d at 1045–46) (evidence of defendant's payment practice concerning two out of fifty employees *without more* did not provide modest factual showing that the employer had a common policy or plan to violate the FLSA) (emphasis added). Unless the defendant admits that other similarly situated employees exist, a plaintiff cannot rely on allegations alone to make the required "modest factual showing." *Id.* (citation omitted). The requisite showing may be accomplished by providing an affidavit, declaration, or other support beyond mere allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy. *Id.*

In *Biddings*, the plaintiff maintained that the county's policy requiring correctional officers to attend unpaid roll call meetings fifteen minutes before their shift violated the Fair Labor Standards Act. *Biddings*, 2009 WL 2175584 at *3. In support of this claim, the plaintiff submitted declarations of only himself and one other party. *Id.* The plaintiff relied on the Defendant's "roll call" policy and statements made by other correctional officers to validate his claim that overtime was not paid to other correctional officers for the extra time that they worked. *Id.*

The court in *Biddings* held that the plaintiff had made a modest factual showing, and that the statements of two correctional officers were sufficient to conditionally certify the collective action. *Id.* Further, the court addressed the potential hearsay issue. In a lengthy footnote, the *Biddings* Court noted:

Although comments made by other Corrections Officers may be considered hearsay, courts are split on whether it is appropriate to consider inadmissible evidence at this stage of the proceedings. *Howard v. Securitas Security Services, USA Inc.,* No. 08 C 2746, 2009 WL 140126 *3 (N.D.Ill. Jan.20, 2009).* However, several courts in this Circuit have held that a representative plaintiff at the initial certification stage

may rely on hearsay. *See id.* (finding that plaintiffs need not set forth evidence that would be admissible at trial in support of a preliminary § 216(b) motion); *Molina v. First Line Solutions,* 566 F.Supp.2d 770, 789 n. 20 (N.D.Ill.2007) (noting that testimony that is hearsay may be considered in deciding whether to permit a collective action); *Coan v. Nightingale Home Healthcare, Inc.,* No. 1:05–CV–0101–DFH–TAB, 2005 WL 1799454 *1 n. 1 (S.D.Ind. June 29, 2005)* (providing that "[a]t this preliminary stage and for these preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial"). Accordingly, the Court concludes that even if these statements constitute hearsay, they are of proper use at this stage of the proceedings.

*Id.* at n. 3. Thus, because the conditional certification stage occurs early in the case, the evidence need not be admissible at trial in order for the plaintiff to meet the low threshold requirement, and the Court need not reach the merits of the FLSA claims at this time. *Id.; see Wiyakaska v. Ross Gage, Inc.,* No. 1:10–cv–01664–LJM–DKL, 2011 WL 4537010, *3 (S.D.Ind. Sept.28, 2011)* (listing cases and noting circuit split among district courts as to whether hearsay statements may be considered at the certification stage of the FLSA collective action); *see also Fox v. Martin Transp. Sys., Inc.,* No. 1:08–CV–305–RLM, 2009 WL 3416021, at *1 (N.D.Ind. Oct.19, 2009); *Fravel v. County of Lake,* No. 2:07–CV–253–APR, 2008 WL 204744, *2 (N.D.Ind. July 7, 2008).*

**\*6** Therefore, while portions of Garcia and Wilkerson's declarations provide hearsay evidence (purported declarations by other Technicians and FSMs offered for their truth), the Court will consider the hearsay statements with due caution as to their persuasiveness given their hearsay nature. Notably, the Court will also consider the portions of the Plaintiffs' declarations which concern observations or conclusions made on personal knowledge which would not constitute hearsay. In fact, these non-hearsay declarations alone are sufficient to support the Court's findings that similarly situated employees were subject to Moorehead's common plan to violate the FLSA and that conditionally certifying the class is appropriate in this case, as indicated below.

At this stage, Garcia and Wilkerson have provided more than just conclusory allegations, or "unreliable declarations" as Moorehead would characterize it [DE 21 at 8]. Instead, Garcia and Wilkerson have attached not only their own declarations, but they have provided two additional declarations from Technicians/FSMs, Wayne Douglas ("Douglas") and Robert Coffelt ("Coffelt"). All of these declarations allege the same or similar facts based on the personal knowledge of the declarants:

Garcia, Wilkerson, Douglas, and Coffelt are all Technicians or FSMs who performed similar work for Moorehead and were paid on a piecework basis without being paid overtime for work performed over forty hours per week, including time spent traveling for jobs and attending cancelled jobs. While these assertions, based on personal knowledge, are sufficient to make out the modest factual showing that Plaintiffs were victims of a common policy or plan of Moorehead that violated the law, there is more.

Moorehead's own admissions and submissions further substantiate the record. Jason Miller ("Miller"), Moorehead's Satellite Installation Manager, confirmed that both FSMs and Technicians visit customer homes to install and service DISH Network satellite systems and related equipment [DE 21–1 at ¶¶ 4, 7]. Miller also affirmed that both Technicians and FSMs report to him, travel to different work sites in company vehicles to perform services, and are compensated on a piece-rate basis (at least prior to August 25, 2012) [DE 21–1 at ¶¶ 9, 14, 17]. After August 25, 2012, Moorehead revised the pay structure from a piece-rate to an hourly rate, plus commission, efficiency, and productivity bonuses, as well as overtime compensation for hours worked over forty in a work week [DE 21–1 at ¶ 19]. Finally, Moorehead admits in its Answer to the Complaint that Garcia and Wilkerson are "employees" of Moorehead under the FLSA, Moorehead is an "employer" under the meaning of the FLSA, Moorehead has employed other Technicians and FSMs during the applicable period, and Moorehead did not pay Garcia, Wilkerson, and other Technicians and FSMs overtime for hours worked beyond forty hours per week [DE 16 at ¶¶ 6, 7, 19, 20, 40, 41].

**\*7** Clearly, Moorehead's admissions, along with the Plaintiffs' declarations, provide more than enough evidence sufficient to make the requisite factual showing for purposes of conditional certification that Garcia, Wilkerson, and similarly situated Technicians and FSMs were subject to Moorehead's common policy or plan to violate the FLSA-or more specifically, that Moorehead Technicians and FSMs were not paid overtime for hours actually worked above forty hours a week, on account of Moorehead's pre-August 25, 2012 piecework payment policy. Accordingly, given that the proposed collective action concerns similarly situated individuals and common issues of fact and law, and given the Court's interest in judicial efficiency and avoiding inconsistent results in related matters, the Court finds that a factual showing sufficient to satisfy step one has been met by Plaintiffs.

**C. The argument relative to individualized inquiries is premature**

The second step of the analysis occurs at the close of discovery when the defendant can move to dismiss certain opt-in plaintiffs or move to decertify the class in light of the record developed during discovery. *Biddings,* 2009 WL 2175584, at *3 (citing *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1243 n. 2 (11th Cir.2003); *Hunter v. Sprint Corp.,* 346 F.Supp.2d 113, 117 (D.D.C.2004); *Flores,* 289 F.Supp.2d at 1045). At step two, the court must determine whether the plaintiffs who have opted into the lawsuit are, in fact, similarly situated to the representative plaintiff.*Id.* If the court finds that any of them are not similarly situated to the representative plaintiff, they are dismissed from the lawsuit without prejudice. *Id.* (citation omitted).

For now, the Court need not proceed past the first step. Garcia and Wilkerson have made the requisite "modest factual showing" that they and other FSMs and Technicians were alleged victims of a common policy or plan that violated the FLSA. When a plaintiff makes a modest factual showing, notice and an opportunity to "opt-in" can be sent to those employees who are *similarly situated to the named plaintiff. Biddings,* 2009 WL 2175584, at *3 (citations omitted).

To the extent Moorehead argues that individual inquiries would be required to determine damages, this argument is without merit at the present moment. To make this argument now, before discovery has been conducted, "puts the cart before the horse."*Boyd,* 2006 WL 1518987, at *5 (holding that plaintiffs need only make enough of a showing to justify notice at this point and that arguments surrounding individual inquiries can be decided after facts have been fleshed out in discovery). Moreover, conditional class certification should not be barred because individual issues relative to calculating damages may arise. *See e.g., In re Fedex Ground Package System, Inc.,* No. 3:05–MD–527–RLM (MDL–1700), 2006 WL 3755311 (N.D.Ind. Dec.14, 2006) ("it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate") (citation omitted). In this case, there are certainly common issues which predominate liability. Both Technicians and FSMs have worked pursuant to the same pay policy instituted by Moorehead, which did not include overtime pay for all hours worked over forty per week. Both FSMs and Technicians had substantially similar job duties and reported to the same manager, Mr. Jason Miller [DE 21–1 at ¶¶ 4, 7]. With more than a modest factual showing having been met by Plaintiffs, the action may proceed through discovery as a

Garcia v. Moorehead Communications, Inc., Slip Copy (2013)

2013 WL 4479234

collective action.

**D. Defendant needs to produce a list of current and former Technicians and FSMs**

**\*8** Once conditional certification is granted, the plaintiff may seek an order from the court directing the defendant to furnish the plaintiffs with the identifying information of potential class members. *Woods,* 686 F.2d at 580. In addition, certain facts and circumstances dictate, for the purpose of necessity, that the court intervene in the notice process and expedite discovery of potential plaintiffs. *See Hoffman–La Roche,* 493 U.S. at 170 (discussing that the benefits of the judicial system depend on the "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.").

In the instant case, the running of the statute of limitations places potential opt-in plaintiffs at risk of forever extinguishing any claims they might have against Moorehead. *See* 29 U.S.C. § 255(a) (indicating that a cause of action under the FLSA may be commenced within two years after it accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued). While the statute of limitations is tolled for Garcia and Wilkerson by the filing of their claim, potential plaintiffs are not afforded such a right. Therefore, it is necessary under these circumstances that within ten days of this Order Moorehead produce a list of names and addresses of all former and current Technicians and FSMs who worked for Moorehead any time from three years prior to the date of this Order, up to August 25, 2012, when Moorehead changed its pay policy.

Finally, the Court recognizes Plaintiffs have withdrawn their request for telephone numbers and e-mail addresses of perspective members of the collective class [DE 24 at 9], which was met with opposition by Defendant [DE 21 at 12–14]. Therefore, Moorehead need not furnish Plaintiff with the telephone numbers and e-mail addresses of the prospective members, but it shall provide the individual's full name, employee number, home address, job titles, and dates of employment.

**E. Proposed Collective Action Notice and Consent Form**

Once a collective action is conditionally approved, "the court has managerial responsibility to oversee the joinder of additional parties to assure that the task is

accomplished in an efficient and proper way." *Hoffmann–La Roche,* 493 U.S. at 170–71. In approving a notice to potential plaintiffs, the court must be careful not to create an apparent judicial sponsorship of the notice. *Id.* at 174; *Biddings,* 2009 WL 2175584, at *4.

Plaintiffs have fourteen days from the date of this Order to file their motion to approve the collective action notice and opt-in consent form. Counsel of record are required to confer before this deadline in order to prepare, to the extent possible, an agreeable notice and opt-in consent form, so that any issues can be streamlined and notice can promptly be provided to the potential class members. The Court would also encourage counsel to review and consider the forms approved by the undersigned in a previous FLSA collective action in case 4:10–cv–92 *Plantenga v. Wabash Valley Alliance, Inc.,* docket entries 24–1 and 24–2, as approved by court order located at docket entry 22. Moorehead will have ten days to object to or supplement Plaintiffs' notice and consent form, to which Plaintiffs will then have five days to file any reply.

### III. CONCLUSION

**\*9** For the reasons stated herein, Plaintiffs' Motion to Certify Collective Action [DE 18] is CONDITIONALLY GRANTED, and the Court provisionally deems the FLSA claims as a collective action, and defines the conditionally approved collective class as follows:

> **Present and former Satellite Installer Technicians and Field Service Managers employed by Moorehead Communications, Inc. for any period of time from August 19, 2010 to August 25, 2012, and who have not been paid overtime wages for all time spent working beyond 40 hours per week.**

Garcia and Wilkerson shall conditionally serve as the class representatives of the conditionally certified collective class, and be represented by current counsel of record.

**The Court ORDERS the Defendant, Moorehead Communications, Inc., to provide Plaintiffs' counsel with a list in electronic format and within ten (10) days of this Order, which contains the names of all former and current Satellite Installer Technicians and Field Service Managers, who have worked during the time frame specified immediately above.** The list shall include the individual's full name, employee number, home address, job titles, and dates of employment. The

Garcia v. Moorehead Communications, Inc., Slip Copy (2013)

2013 WL 4479234

information provided by Moorehead is to be given to
Plaintiffs' counsel only, and may only be used as needed
for this litigation.

**The Court further ORDERS Plaintiffs to file, after
conferring with defense counsel, any supporting brief,
the notice of collective action, and the opt-in consent
form, within fourteen (14) days from the date of this
Order. Moorehead will have ten (10) days to object or
supplement Plaintiffs' filings (to the extent necessary)
and Plaintiffs will then have five (5) days to file any**

**reply.**

SO ORDERED.

**All Citations**

Slip Copy, 2013 WL 4479234

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Pacheco v. Aldeeb, Slip Copy (2015)

2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

2015 WL 1509570
United States District Court,
W.D. Texas,
San Antonio Division.

Brenda PACHECO, Maximiliano Lopez, and Carol
Buchanan, on behalf of themselves and a class of
those similarly situated, Plaintiffs,
v.
Wessam ALDEEB; Ersan Aldeeb; Saadia Rachik;
Palms Administrative Services, Llc; La Cantera
Subway, Inc.; North Star Marble Slab Inc.; Great
American Cookies−N−Cream, Llc; Pyramids
Exchange, Llc; Legacy Marble Slab, Inc.; Westover
Marble Slab, Inc.; Legacy Subway, Inc.; Ingram
Park Marble Slab, Llc; and North Star Swirly, Llc,
Defendants.

Cv. No. 5:14−CV−121−DAE. | Signed March 31,
2015.

**Attorneys and Law Firms**

Sarah E. Donaldson, Texas Riogrande Legal Aid, Inc.,
Philip Jonathan Moss, Equal Justice Center, San Antonio,
TX, for Plaintiffs.

Haroon Rafati, The Rafati Law Firm, PLLC, Katy, TX,
for Defendants.

*ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION*

DAVID ALAN EZRA, Senior District Judge.

**\*1** Before the Court is a Motion for Conditional Class
Certification and Notice to Potential Class Members filed
by Plaintiffs Brenda Pacheco, Maximiliano Lopez, and
Carol Buchanan (collectively, "Plaintiffs"), on behalf of
themselves and all others similarly situated. (Dkt.# 29.)
On March 30, 2015, the Court held a hearing on the
Motion. Philip J. Moss and Sarah Donaldson, Esqs.,
represented Plaintiffs, and Haroon Rafati, Esq.,
represented Defendants Wessam Aldeeb; Ersan Aldeeb;
Saadia Rachik; Palms Administrative Services, LLC; La
Cantera Subway, Inc.; North Star Marble Slab Inc.; Great
American Cookies−N−Cream, LLC; Pyramids Exchange,
LLC; Legacy Marble Slab, Inc.; Westover Marble Slab,
Inc.; Legacy Subway, Inc.; Ingram Park Marble Slab,

LLC; and North Star Swirly, LLC (collectively,
"Defendants"). After careful consideration of the
supporting and opposing memoranda and the parties'
arguments at the hearing, the Court, for the reasons that
follow, **GRANTS IN PART** Plaintiff's Motion for
Conditional Certification and Notice to Potential Class
Members.

*BACKGROUND*

This case arises out of Plaintiffs' employment by
Defendants as food service workers. Defendants operate
fast food franchise establishments in the San Antonio
area, including Subway, Marble Slab Creamery, and
Great American Cookies franchises. ("Am. Compl.," Dkt.
# 2 at 1.) Plaintiff Brenda Pacheco ("Pacheco") worked as
an area manager for Defendants from approximately 2007
to 2009 and from 2009 to 2013. ("Pacheco Decl.," Dkt. #
18–1 ¶ 3.) As an area manager, Pacheco's tasks included
preparing and serving food, scheduling employee shifts,
operating the cash register, catering events, and cleaning
retail stores. (*Id.* ¶ 4.) Pacheco was also responsible for
personnel decisions, including hiring and firing, at all five
of Defendants' franchise locations. (Ex. B, Dkt. # 31–2 ¶
6.) Pacheco worked out of several of Defendants' retail
locations, including Highway 151, the Shops at La
Cantera, Ingram Park Mall, and North Star Mall.
(Pacheco Decl. ¶ 3 .)

Plaintiff Maximiliano Lopez ("Lopez") worked for
Subway franchises owned by Defendants from 2012
through 2013. ("Lopez Decl.," Dkt. # 18–2 ¶ 2.) He was
employed as a crew member, and later as a store manager,
and worked out of the franchise locations at the Shops at
La Cantera and the Legacy shopping center. (*Id.* ¶ 3.)
Lopez's tasks included preparing and serving food,
scheduling employee shifts, operating the cash register,
and cleaning retail stores. (*Id.* ¶ 4.) Plaintiff Carol
Buchanan ("Buchanan") worked as a food service worker
for Defendants in 2013. (Am.Compl.¶ 28.)

Plaintiffs allege that Defendants failed to pay them and
other similarly situated employees overtime for hours
worked in excess of forty hours per week. (Pacheco Decl.
¶ 7; Lopez Decl. ¶ 7.) Plaintiffs further allege that
Defendants required them and other similarly situated
employees to perform unrecorded and unpaid work before
and after shifts, and to clock out during compensable
break time. (Pacheco Decl. ¶¶ 8–12; Lopez Decl. ¶¶
8–11.) Finally, Plaintiffs allege that Defendants regularly
made unlawful deductions from the paychecks of

Plaintiffs and similarly situated employees. (Pacheco Decl. ¶ 13; Lopez Decl. ¶ 12.)

**\*2** Plaintiffs filed a First Amended Complaint in this Court on February 11, 2014, asserting that Defendants failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on behalf of themselves and all similarly situated persons employed by Defendants in the three years prior to filing the complaint. (Am.Compl.¶¶ 41, 43–44.) Plaintiffs seek unpaid overtime wages, liquidated damages, and attorneys' fees and costs. (*Id.* at 10.)

The Court previously held a hearing on Plaintiffs' original motion for conditional class certification on October 23, 2014. While Defendants had not responded to Plaintiffs' motion for conditional certification, counsel for Defendants represented at the hearing that Plaintiffs were paid on a salary basis, and were thus not representative of the class. To resolve this factual dispute, the Court ordered the parties to engage in limited discovery to determine whether Plaintiffs were hourly employees. (Dkt.# 26.)

Following this limited discovery, Plaintiffs filed the instant Motion seeking conditional certification as a collective action on December 8, 2014. (Dkt. # 29.) Defendants filed a Response on December 15, 2014 (Dkt.# 31), and Plaintiffs filed a Reply on December 19, 2014 (Dkt.# 33).

### LEGAL STANDARD

An employee may bring an action for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Because the FLSA requires employee-class members to affirmatively opt-in, a plaintiff can seek "conditional class certification" from the court, which permits the plaintiff to "send[ ][a] court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court."*Genesis Healthcare Corp. v. Symczk,* ——U.S. ——, ——, 133 S.Ct. 1523, 1527, 185 L.Ed.2d 636 (2013) (citations omitted).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class or grant a notice in a § 216(b) action, the majority of courts within the Fifth Circuit have adopted the approach set forth in *Lusardi v. Xerox Corp.,* 118 F.R.D.

351 (D.N.J.1987).*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995) (noting acceptable approaches include either the *Lusardi* approach or the "spurious class action" approach set forth in *Shushan v. Univ. of Colo.,* 132 F.R.D. 263 (D.Colo.1990)), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Vanzini v. Action Meat Distribs., Inc.,* 995 F.Supp.2d 703, 719 (S.D.Tex.2014) (following *Lusardi); Mateos v. Select Energy Servs., LLC,* 997 F.Supp.2d 640, 643 (W.D.Tex.2013) (same); *Tice v. AOC Senior Home Health Corp.,* 826 F.Supp.2d 990, 994 (E.D.Tex.2011) (same); *Marshall v. Eyemasters of Tex., Ltd.,* 272 F.R.D. 447, 449 (N.D.Tex.2011) (same).

The *Lusardi* approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage. *Mooney,* 54 F.3d at 1213–14. At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class."*Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 519 (5th Cir.2010). If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit. *Id.* at 519. "The court's determination at this stage is made using a 'fairly lenient standard' because the court generally has minimal evidence" and because "[t]he remedial nature of the FLSA ... militate[s] strongly in favor of allowing cases to proceed collectively."*Lee v. Metrocare Servs.,* 980 F.Supp.2d 754, 759 (N.D.Tex.2013); *Tolentino v. C & J Spec–Rent Servs. Inc.,* 716 F.Supp.2d 642, 647 (S.D.Tex.2010); *see also Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 287 (N.D.Tex.2012); *Allen v. McWane, Inc.,* No. Civ.A.2:06–CV–158, 2006 WL 3246531, at \*2 (E.D.Tex.2006).

**\*3** Once plaintiffs have opted in and discovery is largely complete, the defendant can file a decertification motion, asking the court to reassesses whether the claimants are similarly situated. *Mooney,* 54 F.3d at 1214. At that point, the court can fully evaluate the merits of class certification and can choose to decertify the class. *Id.* This Court's analysis here need only address first stage of the inquiry.

### DISCUSSION

Plaintiffs seek to certify a class consisting of:

Pacheco v. Aldeeb, Slip Copy (2015)

2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

All current and former hourly-paid employees of Defendants who worked for Defendants in Defendants' Subway, Marble Slab Creamery, and Great American Cookies stores in Bexar County and Kendall County, Texas at any time during the three-year period preceding the filing of Plaintiffs' Original Complaint.

(Dkt. # 18 at 2.) Defendants make two arguments as to why conditional certification is unwarranted. First, Defendants argue that Plaintiffs are not similarly situated to the proposed class members because Plaintiffs worked in a managerial capacity. (Dkt. # 31 at 6–8.) Second, Defendants argue that Plaintiffs have failed to present sufficient evidence that Plaintiffs were victims of a common policy or practice in violation of the FLSA. (*Id.* at 9–11.)

Conditional certification is only proper when the class members were the victims of a single decision, policy, or plan infected by discrimination. *Mooney,* 54 F.3d at 1214. Accordingly, a plaintiff must generally make three showings to obtain conditional certification: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist, (2)[ ] those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted, and (3)[ ] those individuals want to opt-in to the lawsuit." *Casanova v. Gold's Tex. Holdings Grp., Inc.,* No. 5:13–CV–1161–DAE, 2014 WL 6606573, at *2 (W.D.Tex. Nov.19, 2014) (quoting *Walker v. Honghua Am., LLC,* 870 F.Supp.2d 462, 465–66 (S.D.Tex.2012)).

**I. *Whether Aggrieved Individuals Exist***
Defendants argue that Plaintiffs have presented no evidence that Defendants engaged in a policy or practice that violates the FLSA, and thus that there is no reasonable basis for the assertion that aggrieved individuals exist. (Dkt. # 31 at 9.) Defendants specifically argue that (1) Plaintiffs have made no showing of overtime worked, (2) Plaintiffs have no evidence that Defendants had a policy of not paying employees for all time worked, and (3) deductions from Plaintiffs' pay are not violations under the FLSA. (*Id.* at 9–11.)

At the notice stage, allegations in pleadings and affidavits are generally sufficient to support a claim for conditional certification. *Mooney,* 54 F.3d at 1213–14. However, "most courts require some factual support" for allegations presented in the complaint, either in the form of affidavits

or other supporting evidence. *Aguirre v. SBC Commc'ns, Inc.,* No. CIV.A. H–05–3198, 2006 WL 964554, at *6 (S.D.Tex. Apr.11, 2006)* (finding lack of a factual basis because the plaintiffs did not submit affidavits or any other evidence apart from the statements in the complaint and motion for notice); *see also Jones,* 281 F.R.D. at 289 (noting that declarations regarding compensation and job duties "are ideal for analysis of whether the putative class members were together the victims of a single decision, policy, or plan").

**\*4** Although the Fifth Circuit has not spoken definitively on the issue, most district courts agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial. *Lee,* 980 F.Supp.2d at 760 (citing *White v. MPW Industrial Servs., Inc.,* 236 F.R.D. 363, 368 (E.D.Tenn.2006)). A holding otherwise would "defeat the purpose of the two-stage analysis," since the first stage sets a purposefully low bar that typically results in conditional class certification. *White,* 236 F.R.D. at 368; *Walker,* 870 F.Supp.2d at 465.

Accordingly, most courts only require that a declarant can demonstrate that the allegations in his declaration are based on personal knowledge. *See, e.g., Lee,* 980 F.Supp.2d at 762 (listing cases); *Dooling v. Bank of the W.,* No. 4:11–CV–00576, 2012 WL 2417591, at *4 (E.D.Tex. June 26, 2012); *Lang v. DirecTV, Inc.,* No. 10–1085 "G"(1), 2011 WL 5934607, at *9 (E.D.La. Dec. 30, 2011)."Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience." *United States v. Cantu,* 167 F.3d 198, 204 (5th Cir.1999) (internal quotation marks omitted).

Plaintiffs have submitted declarations by Pacheco, Lopez, and Miguel Robles ("Robles"), who worked in one of Defendants' Subway franchises as a crew member from January 2013 to September 2013. ("Robles Decl.," Dkt. # 33–1 ¶ 3.) Pacheco attests that she is familiar with Defendants' compensation policies through her role as an area manager and because she spoke with "many employees on many occasions regarding [Defendants'] pay practices and policies." (Pacheco Decl. ¶ 6.) Lopez and Robles similarly attest that they are familiar with Defendants' compensation policies through their work as employees and their discussions with other employees. (Lopez Decl. ¶ 6; Robles Decl. ¶ 5.) These statements are sufficient to show personal knowledge of Defendants' compensation practices.

In support of the allegation that Defendants' food service employees were not paid overtime, Pacheco, Lopez, and Robles attest that they each worked overtime and were

paid the same hourly rate for their overtime work, and spoke with other unnamed employees who stated they also did not receive overtime pay for time worked over forty hours per week. (Pacheco Decl. ¶ 7; Lopez Decl. ¶ 7; Robles Decl. ¶ 6.) Each attests that Defendants failed to pay them for all time worked, and that Defendants deducted pay from their paychecks based on cash register shortages. (Pacheco Decl. ¶¶ 8–13; Lopez Decl. ¶¶ 8–12; Robles Decl. ¶ ¶ 7–9.) They further attest that Defendants' policies of denying overtime, failing to pay for all time worked, and deducting money from employees' pay based on cash register receipt totals applied to them and "many, if not all" of the employees working in Defendants' stores. (Pacheco Decl. ¶ 6; Lopez Decl. ¶ 6; Robles Decl. ¶ 5 .) The paystubs of Pacheco, Lopez, and Robles further indicate that each worked more than eighty hours in a two-week pay period and did not receive overtime pay. (*See, e.g.,* Dkt. # 29–7 at 15–16, 79–82; Ex. A–1, Dkt. # 33–1.) Given the lenient standard at the conditional certification phase, this evidence is sufficient to credit the allegations that Defendants failed to appropriately compensate Plaintiffs and similarly situated employees as required by the FLSA.

**\*5** Defendants argue that the evidence does not show that Buchanan worked more than forty hours in a week. (Dkt. # 31 at 9.) Buchanan's timecard report, however, shows that she worked 40.98 hours the week of July 28, 2013, and 41.34 hours the week of August 4, 2013, and was paid at a flat rate. (*See* Ex. C, Dkt. # 29–7 at 45.) This evidence, in combination with the declarations and corroborating paystubs of Pacheco, Lopez, and Robles, is sufficient at this stage of the *Lusardi* analysis to show that Plaintiffs and similarly situated employees were not paid overtime for time worked over forty hours per week, and thus that aggrieved individuals exist.

Defendants further argue that Plaintiffs have no evidence of a common policy on the part of Defendants of forcing employees to work off of the clock. (Dkt. # 31 at 10.) Pacheco, Lopez, and Robles all attest that Defendants consistently deducted a thirty minute lunch break from their paychecks even though they generally worked through lunch. (Pacheco Decl. ¶ 9; Lopez Decl. ¶ 9; Robles Decl. ¶ 8.) Pacheco and Lopez further attest that Defendants required them to perform work outside of their shifts, including scheduling employee shifts, traveling between stores, and catering events, and that Defendants refused to compensate them for this work. (Pacheco Decl. ¶ 10–11; Lopez Decl. ¶ 10–11.) Finally, Pacheco attests that Defendants required employees, including Pacheco, to clock out in order to use the restroom, and would not allow employees to record hours worked during such time. (Pacheco Decl. ¶ 12.) These

statements, based on personal knowledge, are sufficient to show a reasonable basis for crediting the existence of a policy of forcing employees to work off the clock for the purposes of conditional certification.

Finally, Defendants argue that their practice of taking deductions from employees' paychecks based on cash register shortages is not a violation of the FLSA, citing *Mayhue's Super Liquor Stores, Inc. v. Hodgson,* 464 F.2d 1196 (5th Cir.1972). In that case, however, the Fifth Circuit found that an agreement whereby employees repaid their employer for cash register shortages violated the FLSA to the extent that it reduced an employee's wage below the statutory minimum. *Id.* at 1199. Defendant Wessam Aldeeb attests that "[t]he overwhelming majority of our standard employees ... are paid at or close to minimum wage," suggesting that Defendants' admitted cash deductions could reduce employee wages below the statutory minimum. (Ex. B, Dkt. # 31–2 ¶ 3.) Defendants' argument is thus without merit, and Plaintiffs have made a sufficient showing that aggrieved individuals exist.

## II. *Whether the Aggrieved Individuals Were Similarly Situated*
Plaintiffs argue that they are similarly situated to potential class members because they performed the same food service-related duties as class members, including preparing and serving food, cleaning the restaurants, and operating the cash register. (Dkt. # 18 at 6.) Plaintiffs further argue that regardless of job title or duties, they are similarly situated to potential class members because Defendants' illegal compensation policies applied to all employees. (Dkt. # 33 at 3.) Defendants respond that Plaintiffs were managers and thus were not similarly situated to non-managerial employees, that Pacheco is not similarly situated to the other plaintiffs, and that Pacheco and Buchanan are not similarly situated because they brought their claims in bad faith. (Dkt. # 31 at 5–8.)

**\*6** "The potential class plaintiffs are considered similarly situated to the named plaintiffs if they are similarly situated with respect to their job requirements and ... their pay provisions."*Tolentino,* 716 F.Supp.2d at 649–50 (internal quotation marks omitted)."The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated,"*Maynor v. Dow Chem. Co.,* No. CIV. A. G–07–0504, 2008 WL 2220394, at \*7 (S.D.Tex. May 28, 2008), and "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement,"*Walker v. Honghua Am., LLC,* 870 F.Supp.2d 462, 468 (S.D.Tex.2012)."[T]he relevant

Pacheco v. Aldeeb, Slip Copy (2015)

2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices."*Tice v. AOC Senior Home Health Corp.,* 826 F.Supp.2d 990, 996 (E.D.Tex.2011). The purpose of the similarly situated requirement is to ensure that collective actions will promote the economies of scale envisioned by the FLSA. *Maynor,* 2008 WL 2220394, at *7.

The Court finds that Lopez and Buchanan are similarly situated to the proposed class. The fact that Plaintiffs served in a managerial capacity, standing alone, does not preclude them from representing employees who worked for Defendants in a non-managerial capacity. *See, e.g., Aguilar v. Complete Landsculpture, Inc.,* No. Civ.A.3:04 CV 0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct 7, 2004) (finding that foremen with hiring and firing authority were similarly situated to laborers where all employees were compensated under the same pay scheme). While Lopez and Buchanan had supervisory responsibilities, including scheduling employee shifts, they were paid on the same hourly basis as non-supervisory employees. (Ex. C, Dkt. # 29–7 at 45, 49.) Lopez attests that he performed duties also shared by non-supervisory employees, including preparing and serving food, operating the cash register, and cleaning. (Lopez Decl. ¶ 4.) He further attests that he was subject to the same policies of non-payment for overtime, requiring employees to work off of the clock, and deductions for cash register shortages as non-supervisory employees. (*Id.* ¶¶ 7–9, 12–14.) Lopez and Buchanan's pay provisions and duties are thus sufficiently similar to those of the proposed class to render than similarly situated to the proposed class.

Pacheco, however, is not similarly situated to Buchanan and Lopez. Pacheco served as an area manager for Defendants, and was thus responsible for overseeing the operation of all five of Defendants' restaurants. (Ex. B., Dkt. # 312 ¶ 6.) While her duties may have overlapped with those of store managers and non-managerial employees, her authority to make personnel decisions at all of Defendants' locations appears to have been unique. (*See id.* & at 7–10.) Pacheco's compensation scheme was also unique–in addition to receiving an hourly wage, she also received a salary of $150 to $250 per week, as well as sales bonuses tied to the performance of restaurant locations where she had worked during the relevant time period. (*Id.; see also, e.g.,* Ex. C, Dkt. # 29–7 at 20, 25.) By contrast, Lopez and Buchanan's responsibilities were limited to a single restaurant location, and both were paid purely at an hourly rate. (Ex. C, Dkt. # 297 at 45–46, 49–50.) Additionally, unlike Lopez or Buchanan, Pacheco was initially classified by Defendants as an independent contractor before being formally hired as an employee.

(Ex. C, Dkt. # 29–7 at 7–14; Ex. B, Dkt. # 31 ¶ 6.)

**\*7** Plaintiffs argue that they are nevertheless entitled to conditional certification because all Plaintiffs, regardless of job duties, were subject to the same illegal policies. (Dkt. # 33 at 2.) The cases Plaintiffs cite for this proposition, however, are distinguishable from the instant action. In *Aguilar v. Complete Landsculpture, Inc.,* the foremen and laborers found to be similarly situated were all subject to the same "block rate" payment scheme in which all employees were paid a fixed amount for each block of ten hours worked. 2004 WL 2293842, at *4. Here, while all Plaintiffs were paid an hourly wage, Pacheco also received a salary and performance-based bonus payments.

In *Realite v. Ark Restaurants Corp.,* the various jobs included in the conditionally certified class were all non-managerial, hourly employees subject to identical compensation practices. 7 F.Supp.2d 303, 307–08 (S.D.N.Y.1998). Here, Pacheco is an area manager whose compensation is not limited to the hourly wage received by Lopez, Buchanan, and the proposed class. Finally, the court in *Zaniewski v. PRRC Inc.* found the plaintiffs to be similarly situated to the conditionally certified class where all plaintiffs and class members were assistant store managers with the same basic duties and responsibilities. 848 F.Supp.2d 213, 227–28 (D.Conn.2012). As already stated, Pacheco's responsibilities, encompassing management and personnel decisions for five different restaurant locations, were substantially different from both the other named plaintiffs and the proposed class.[1]

[1]   *Donohue v. Francis Servs., Inc.,* also cited by Plaintiffs, includes no discussion of the job duties and pay schemes of the named plaintiffs and class members found by that court to be similarly situated. No. Civ.A. 04–170, 2004 WL 1161366, at *2–3 (E.D.La. May 24, 2004).

The "similarly situated" inquiry requires similarity in job duties and pay scheme in part because those factors determine whether an employee is exempt from the FLSA's requirements. *See, e.g.,*29 C.F.R. § 541.100(a) (defining the executive employee exemption with reference to salary rate, management role, and personnel responsibilities); *id.* § 541.200(a) (defining the administrative employee exemption with reference to salary rate and job duties). Requiring a prospective class to share similar job requirements and pay provisions ensures the economy of scale and judicial efficiency envisioned by the FLSA by avoiding the need for individualized inquiries into whether a defendant's policy

Pacheco v. Aldeeb, Slip Copy (2015)

2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

violates the FLSA as to some employees but not others. *See Tolentino*, 716 F.Supp.2d at 647 ("[T]here must be a showing of some ... nexus that binds the claims so that hearing the cases together promotes judicial efficiency.").

Because Pacheco's additional responsibilities and different compensation scheme will require a different analysis than that presented with respect to employees whose only compensation is an hourly wage, the Court finds that Pacheco may proceed as an individual plaintiff, but not on behalf of a similarly situated class of hourly wage employees.[2] *See Tolentino*, 716 F.Supp.2d at 651 (requiring named plaintiff whose management responsibilities would "involve a different analysis than that presented with respect to non-supervisory employees" to proceed individually); *Yaklin v. W–H Energy Servs., Inc.*, No. C–07–422, 2008 WL 1989795, at *3 (S.D.Tex. May 2, 2008) (requiring a named plaintiff supervisor to proceed alone where his job responsibilities were different from those of the other named plaintiffs).

[2]    While Plaintiffs are correct that the limited evidence currently before the Court indicates that Pacheco would not qualify for the executive employee exemption, that determination need not be made at this stage of the *Lusardi* analysis.

**8** Defendants additionally argue that Buchanan is not similarly situated because her claim was brought in bad faith. While Defendants have submitted evidence that Buchanan's employment with Defendants ended acrimoniously, Buchanan's timecard reports indicate that she was paid at an hourly rate and was not paid overtime for hours worked over forty hours per week. Having thus presented a valid claim under the FLSA, the Court cannot find that Buchanan has joined this action in bad faith.[3]

[3]    While none of the parties have raised the issue, the Court further finds that named plaintiff Rebecca Calvillo has made no showing that she is similarly situated to the proposed class, and must proceed individually if she still wishes to prosecute this action. While Plaintiffs' counsel withdrew from representation of Calvillo due to her failure to communicate with counsel (Dkt.# 17), she remains a named plaintiff in this case.

### III. *Whether There is Evidence That Similarly Situated Aggrieved Individuals Will Join the Suit*
In addition to requiring the existence of similarly situated individuals, most courts require that a plaintiff present

some evidence that those individuals are likely to opt-in to the lawsuit. *See Casanova, Inc. v. Gold's Tex. Holdings Grp.*, No. SA:13–CV–1161–DAE, 2014 WL 6606573, at *2 (quoting *Walker*, 870 F.Supp.2d at 465–66); *Carey v. 24 Hour Fitness USA, Inc.*, No. CIV. A. H–10–3009, 2012 WL 4857562, at *3 (S.D.Tex. Oct.11, 2012) ("[T]ypically a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit.").

Two opt-in plaintiffs, Miguel Robles and Amelly Rodriguez, have filed notices of consent to join. (Dkt.# # 13, 15.) Robles and Lopez attest that there are "many" current and former employees of Defendants who would join a lawsuit to recover unpaid overtime wages, and Lopez specifies that there were between 100 and 125 active employees at any given time during the term of his employment. (Lopez Decl. ¶ 14; Robles Decl. ¶ 13.) While the evidence presented is minimal, the Court finds that Plaintiffs have satisfied the lenient burden at the conditional notice stage to demonstrate the existence of similarly situated aggrieved individuals who wish to join the suit. *See Tolentino*, 716 F.Supp.2d at 653 (finding two declarations of similarly situated individuals and the complaint sufficient to demonstrate the existence of employees who would opt in); *Lee*, 980 F.Supp.2d at 768 ("[N]umerosity is not a requirement for conditional certification under the *Lusardi* approach."); *Jones*, 281 F.R.D. at 291 (holding that named plaintiffs' four declarations and their amended complaint satisfied their burden to demonstrate the existence of other employees who would opt in).

Because Plaintiffs have demonstrated a basis for conditional certification, the Court **GRANTS IN PART** their Motion for Conditional Class Certification and defines the class as:

> All persons employed by Wessam Aldeeb, Ersan Aldeeb, and Sadia Rachik and paid at an hourly wage in their Subway, Marble Slab Creamery, and Great American Cookies franchises in Bexar County and Kendall County, Texas from [insert date 3 years prior to date notice is sent], through [insert date notice is sent].

### IV. *Plaintiff's Proposed Notice to the Potential Class*
Plaintiffs seek approval of a proposed notice setting out the scope of the litigation and the opt-in procedure, as well as a proposed consent to join form that potential

plaintiffs can use to opt-in to the litigation. (Dkt. # 18 at 8.) Plaintiffs propose sending notice by first-class mail, email, Facebook message, and posting in Defendants' Subway, Marble Slab Creamery, and American Cookie franchises. (*Id.* at 8–9.) Defendants object to the notice request as overly burdensome and request that notice be limited to mail and email only. (Dkt. # 31 at 11.) Defendants argue that posting notices in Defendants' businesses "would only serve to further the damage to Defendants' reputation and businesses already caused by the publication of an article regarding this suit in the San Antonio Express–News."(*Id.*)

**\*9** The Court is not persuaded that posting the notice in Defendants' stores is unduly burdensome. Defendants' concerns can be easily addressed by posting the notice in such a way that it will be readily accessible to employees but not to customers. Courts have approved physical posting as an appropriate form of notice in FLSA actions, and have even approved notice through publication in newspaper and radio advertisements over objections that such publication could cause reputational harm. *See Rodriguez v. Mech. Tech. Servs., Inc.* 299 F.R.D. 154, 156–57 (W.D.Tex.2014) (approving publication of notice in radio and newspapers despite defendants' objection that such notice may lead to negative publicity and harm defendants' businesses); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 493 (E.D.Cal.2005) (approving notice by posting in defendant's workplace over defendant's objections that such posting would be "punitive" and unnecessary); *Johnson v. Am. Airlines, Inc.,* 531 F.Supp. 957, 961 (N.D.Tex.1982) (approving notice by direct mail, posting notice on company bulletin boards, and publishing the notice in a company magazine).

Defendants have raised no other objections to Plaintiffs' proposed notice, and the Court approves the notice and the proposed means of issuance as reasonable.[4] The Court also directs, however, that reference to Brenda Pacheco be removed from the notice, as the Court has determined that she must proceed with her claims individually.

---

[4]    While Defendants request that notice be limited to mail and email, they provide no argument that the use of Facebook messaging is improper or unduly burdensome. The Court will therefore allow for its use as a means of notice, as requested by Plaintiffs.

**V. *Equitable Tolling***
Finally, Plaintiffs request that the Court equitably toll the

statute of limitations to prevent harm to potential opt-in class members. (Dkt. # 29 at 6.) In a collective action under the FLSA, an action is considered commenced in the case of an unnamed plaintiff on the date on which written consent is filed with the court. 29 U.S.C. § 256. The Fifth Circuit has adopted a strict view of the FLSA's limitations provision. *McKnight v. D. Houston, Inc.,* 756 F.Supp.2d 794, 808 (S.D.Tex.2010) (citing *Atkins v. General Motors Corp.,* 701 F.2d 1124, 1130 n. 5 (5th Cir.1983))."Equitable tolling may be applied only if it is shown that a plaintiff acted diligently and the delay concerns extraordinary circumstances."*Lee,* 980 F.Supp.2d at 769 (internal quotation marks omitted)."The party who invokes equitable tolling bears the burden of proof."*Teemac v. Henderson,* 298 F.3d 452, 457 (5th Cir.2002).

Plaintiffs contend that equitable tolling is justified due to "Defendants' groundless opposition to Plaintiffs' Motion."(Dkt. # 29 at 6.) Defendants' opposition, however, was not groundless-the Court agrees with Defendants that Pacheco is not similarly situated to the other named plaintiffs, and their arguments concerning Lopez and Buchanan's managerial positions and the sufficiency of the evidence submitted are more than colorable. Additionally, defense counsel's representation at the October 23, 2014 hearing that Plaintiffs were paid on a salary basis, although incorrect as to Lopez and Buchanan, was at least partially correct as to Pacheco, who was paid a weekly salary as well as an hourly wage. The Court therefore finds that Plaintiffs have not shown the extraordinary circumstances necessary to justify equitable tolling, and **DENIES** their request to toll the limitations period.

### *CONCLUSION*

**\*10** For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members (Dkt.# 29).

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

**Pacheco v. Aldeeb, Slip Copy (2015)**

2015 WL 1509570, 2015 Wage & Hour Cas.2d (BNA) 180,298

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4146714
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Jasmine PRATER, et al., Plaintiffs,
v.
COMMERCE EQUITIES MANAGEMENT
COMPANY, INC., et al., Defendants.

Civil Action No. H-07-2349. | Nov. 19, 2007.

**Attorneys and Law Firms**

Howard L. Steele, Jr., Steele Sturm PLLC, Houston, TX, for Plaintiff.

Mark Joseph Oberti, Seyfarth Shaw LLP, Houston, TX, for Defendants.

**MEMORANDUM AND OPINION**

LEE H. ROSENTHAL, District Judge.

**\*1** Jasmine Prater, Christina Stroyick, and Angelica Murillo sued their former employers, Commerce Equities Management Company, Inc.; Commerce Equities Inc.; Commerce Equities-Settler's Ranch Ltd.; Bayou on the Bend Holdings, Ltd.; Mid Rise Builders, LLC; and Matthew G. Dilick. The plaintiffs allege that the defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay overtime for hours worked in excess of forty hours in a work week. The plaintiffs also allege retaliation in violation of the FLSA.

The plaintiffs seek to represent a class of similarly situated employees. They have moved this court for the issuance of notice to a conditionally certified class of employees who worked as apartment office employees-although their job titles included leasing agent, leasing manager, assistant property director, and marketing director-during the period from July 18, 2004 to the present. (Docket Entry No. 2). The defendants have responded, (Docket Entry No. 14); the plaintiffs have replied, (Docket Entry No. 19); and the defendants have surreplied, (Docket Entry No. 20). The defendants have also moved to strike portions of affidavits that the

plaintiffs attached to their reply. (Docket Entry No. 21).

Based on the motions, the responses and replies, the submissions of the parties, and the applicable law, this court denies the defendants' motion to strike and authorizes the issuance of notice to two conditionally certified classes of defendants' apartment office employees. The reasons are set out in detail below.

**I. Background**

Matthew Dilick is the principal in whole or in part of the entities the plaintiffs sued. These entities own and operate several rental properties in Houston, Texas. The named plaintiffs seek to proceed on behalf of between fifteen to twenty office employees who worked at the defendants' apartment complexes.

The named plaintiffs are Jasmine Prater, Christina Stroyick, and Angelica Murillo. In 2002, Stroyick worked as a leasing agent for several months at Westlake Residential. She worked at Settler's Ranch during the summer of 2004 and at Bayou on the Bend at some time during 2005. She returned to work at Bayou on the Bend in August 2006 as a leasing agent. Prater began working at Bayou on the Bend in May 2005. Murillo began working at Bayou on the Bend as a receptionist in November 2006 and eventually became a leasing agent.

The parties dispute the nature of the plaintiffs' duties. The plaintiffs allege that they and other apartment office employees all worked as leasing agents or performed leasing agent duties, despite their different titles. They "gave tours to potential renters, prepared leases to be signed, collected rents, walked the property looking for any items that needed to be repaired, [attended to] tenant complaints and performed general administrative tasks."(Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, ¶ 5). The plaintiffs contend that all apartment office employees, regardless of title, were directed by Dilick and required to follow his instructions and policies. The plaintiffs assert that Dilick made the decisions that required discretion and judgment and did not allow the employees to do so.

**\*2** The plaintiffs allege that they regularly worked more than forty hours per week but did not receive overtime pay. The plaintiffs assert that they were not given paid vacation days and were docked for sick days. They allege that the defendants failed to keep accurate records and that as a result, the defendants issued paychecks for incorrect pay periods, failed to calculate all hours worked

during a given pay period and did not pay overtime when it was due, and neglected to withhold social security and FICA taxes from the paychecks.

The defendants respond that the plaintiffs had different job titles and different job duties. The defendants assert that Stroyick was a marketing director "primarily responsible for developing and executing marketing plans to increase the number of leases at Bayou on the Bend apartments," and was paid on a salaried basis. (Docket Entry No. 14, Ex. 1 at ¶ 8). The defendants assert that Prater, who was also salaried, was an assistant property director "primarily responsible for handling the leasing financial aspects of the company and was routinely required to exercise her discretion and independent judgment with respect to matters of significant," such as the "purchasing of materials and supplies, apartment repairs, maintenance staffing issues, and oftentimes front-office staffing."(Docket Entry No. 14, Ex. 1 at ¶ 10). In addition, the defendants argue that the salaried leasing office positions-leasing manager, assistant property director, property director, and marketing director-did not involve the same duties as the hourly leasing agent position and were properly classified as salaried positions.

The plaintiffs seek to bring a collective-action suit on behalf of situated employees working as apartment office workers at Dilick's apartment properties. They argue that they and other apartment office employees performed similar duties and regularly worked over forty hours a week, but did not receive overtime pay. The defendants argue that a collective-action suit is improper because the claims of the putative class members are sufficiently dissimilar that they will require a fact-specific, highly individualized inquiry and because the plaintiffs have failed to show that other similarly situated employees exist.

## II. The Applicable Legal Standards

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a).Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b).Section 216(b) provides:

> An action ... may be maintained ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*3 Id. Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir.1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); Villatoro v. Kim Son Rest., L.P., 286 F.Supp.2d 807, 808 (S.D.Tex.2003).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step Lusardi approach and the spurious class action Shushan approach. See Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D.Colo.1990); Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.1987). In Mooney, the Fifth Circuit found it unnecessary to determine which method is most appropriate. 54 F.3d at 1216. Most courts use the "two-step ad hoc approach" as the preferred method for making the similarly-situated analysis, rather than the Rule 23 requirements. See Basco v. Wal-Mart Stores Inc., 2004 WL 1497709, at *4 (E.D.La. July 2, 2004); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir.1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions); Mielke v. Laidlaw Transit, Inc., 313 F.Supp.2d 759, 762 (N.D.Ill.2004) (stating that the majority of courts have employed or implicitly approved the two-step method); Villatoro, 286 F.Supp.2d at 810.

"Lusardi and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis."Mooney, 54 F.3d at 1213. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. See id. at 1213-14.The court's decision is often based only on the pleadings and affidavits that have been submitted. Id."Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that

provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214 n. 8. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan ...." *Id.*(citing *Sperling,* 118 F.R.D. at 407). A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk,* No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D.Tex. Mar.11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co., Inc.,* 696 F.2d 884, 887 (11th Cir.1983). Some courts place an emphasis on finding "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.,* 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003) (citing *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D.Or.2002)); *see Basco,* 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.,* 370 F.Supp.2d 504, 507 (M.D.La.2005); *see Barron,* 242 F.Supp.2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney,* 54 F.3d at 1214.

**\*4** The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.;Lusardi,* 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney,* 54 F.3d at 1214; *Basco,* 2004 WL 1497709, at *3. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *See id.;England,* 370 F.Supp.2d at 508.

Section 13(a) (1) of FLSA exempts employees occupying "bona fide executive, administrative, or professional" positions from the overtime requirements of section 7. 29 U.S.C. § 213(a)(1)."The exempt or nonexempt status of

any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."*Id.* The Code of Federal Regulations provide a "short test" to classify employees for the executive or administrative exemptions. An employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $455 per week; (2) the employee's primary duty is the management of the enterprise or a subdivision; (3) the employee customarily and regularly directs the work of two or more employees; and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. 29 C.F.R. § 541.1(a). An employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $455 per week; (2) the employee's primary duty is the performance of office or nonmanual work directly related to the management or general business of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.2.

Although the plaintiffs have moved for notice and not conditional certification, notice does not issue unless a putative collective action is approved by the court. *See, e.g., Jones v. Casey's General Stores,* ---F.Supp.2d ----, 2007 WL 2823682, at *4 (S.D.Iowa Sept.27, 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Domiguez ex rel. v. Minn. Beef Inds., Inc., No.* CIV.06-1002RHKAJB, 2007 WL 2422837, at *2 (D.Minn. August 21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' ") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir.2001)).

**III. Analysis**

This case is at the "notice stage" of the *Lusardi* analysis. Because the parties have presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members is "made using a fairly lenient standard."*Mooney,* 54 F.3d at 1213. At this stage, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit. *See, e.g., Haynes,* 696 F.2d at 887; *H & R Block,* 186 F.R.D. at 400; *Dybach,* 942 F.2d at 1567-68; *D'Anna,* 903 F.Supp. at 894; *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358 (M.D.Ala.1999). As noted, most courts require some

factual support for the complaint allegations of classwide discrimination to authorize notice. *See, e.g., Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D.Minn.1991) (allegations of plaintiff alone insufficient); *Felix de Asencio v. Tyson Foods Co.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001) (pleadings and four declarations from putative class members sufficient). The parties dispute all three elements of the first-stage analysis.

**\*5** Under the first factor, the defendants argue in their response that the plaintiffs have not shown that there is a reasonable basis for crediting the assertions that similarly situated, aggrieved individuals exist. They also argue that the plaintiffs have failed to allege a cause of action supported by the FLSA. These arguments are not persuasive. The plaintiffs allege that the defendants failed to pay overtime for hours worked in excess of forty in a given week. (Docket Entry No. 1 at 5-7). This is a cognizable claim under the FLSA. The named plaintiffs state in their affidavits that despite the differences in titles, the apartment office employees were all directed by one person-Dilick-and "were all treated the same" and "were pretty much on the same level."(Docket Entry No. 1, Ex. 4, Affidavit of Jasmine Prater, ¶ 10). Each named plaintiff also submitted an affidavit stating that she had personal knowledge of "other apartment office employees similarly situated that have either been retaliated against by Dilick and/or have not properly received overtime."[1](Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, ¶ 7; Affidavit of Christina Stroyick, ¶ 10; Affidavit of Angelica Murillo, ¶ 9). In addition, Christine Stroyick stated in her affidavit that she was present during and overheard a speakerphone conversation in which Dilick threatened another leasing office employee that he would raise her rent for on-site housing if she did not agree to work over 40 hours per week. (Docket Entry No. 1, Ex. 4, Affidavit of Christina Stroyick, ¶ 18). The plaintiffs have shown that it is reasonable to believe that there are other aggrieved apartment office employees.

[1]   The defendants move to strike these statements from the plaintiffs' affidavits on the grounds that they are speculative, lack foundational support, and are vague. (Docket Entry No. 21 at 2). The defendants argue that no plaintiff offers any "foundation to establish how she allegedly knows that other people did not receive overtime" and that the statements are therefore "pure speculation." (*Id.* at 2). The plaintiffs' affidavits lay the proper foundation for at least some of the named individuals, who are referenced elsewhere in the affidavits in discussions of the plaintiffs' duties. The plaintiffs have shown that they have sufficient personal knowledge of at least several similarly situated employees.

The defendants also argue that the plaintiffs'

affidavits are vague because they state that they know that other employees "have either been retaliated against by Dilick *and/or* did not properly received overtime."(Docket Entry No. 19, Ex. 1, Affidavit of Christina Stroyick, ¶ 10) (emphasis added). The defendants contend that "the phrase 'and/or' is vague and does not reasonably give any notice regarding which employees were allegedly retaliated against and which employee allegedly did not receive proper overtime ."(Docket Entry No. 21 at 2). The purpose of the plaintiffs' affidavits at this stage in the *Lusardi* analysis is not to give notice to the defendants as to the identities of putative class members. The purpose of the affidavits is to make a factual showing that there are similarly situated employees to warrant issuing notice of a collective action suit. The defendants' motion to strike is denied.

The parties further dispute whether these aggrieved individuals are similarly situated to warrant issuing notice of a collective action. The defendants contend that the plaintiffs improperly seek to include employees with different job duties, different job titles, different compensation (hourly or salaried), and different FLSA exemption status. They argue that misclassification cases involving employees with different job duties "are particularly unsuitable for collective action treatment."(Docket Entry No. 14 at 3).

The putative class members in a FLSA collective-action suit must be similarly situated in terms of job requirements and similarly situated in terms of payment. *Ryan v. Staff Care, Inc.,* 497 F.Supp.2d 820, 825 (N.D.Tex.2007) (citing *Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir.1991)). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exist. *Lima v. Int'l Catastrophe Solutions, Inc.,* 493 F.Supp.2d 793, 798 (E.D.La.2007).

In this case, the parties have submitted conflicting affidavits about the plaintiffs' duties, how they were paid, and the work generally performed in the leasing offices of the defendants' properties. The plaintiffs assert that all the apartment office employees basically performed the same duties, were entitled to receive overtime payment, but were not paid overtime. The defendants contend that the employees had varying job duties and that the salaried employees-leasing managers, assistant property directors, property directors, and the marketing director-are properly classified as exempt employees and that only the leasing agents are paid hourly.

**\*6** The plaintiffs have made the necessary minimal

showing that they and other leasing staff employees are similarly situated in terms of job requirements. Although Dilick's affidavit states that the plaintiffs had different positions and different duties, the plaintiffs assert in their affidavits that they all performed the duties of a leasing agent and "all did the same thing which included performing leasing, administrative, and marketing tasks."(Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, ¶ 5). The plaintiffs stated:

> Leasing staff [working for the defendants] consists of leasing agents, administrative personnel and management. Leasing staff and administrative personnel, as well as management, were all treated the same. No matter what your title is, you could be asked to do almost anything, and were pretty much on the same level. If you were in the room at the time and something needed to be done, you had to do it regardless of whose job it was. There were not really any lines of distinction between positions.

(Docket Entry No. 1, Ex. 4, Affidavit of Jasmine Prater, ¶ 10; Affidavit of Christina Stroyick, ¶ 11). The plaintiffs state in their affidavits that they all worked under Dilick's direction and policies.

The defendants argue that because the putative class members' duties varied from day to day, they are not similarly situated for purposes of a collective action. *See Aguirre v. SBC Commc'ns, Inc. ., No. H-05-3198, 2007 WL 772756, at \*12 (S.D. Tex.2007 March 12, 2007)* ("[E]mployees ... are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.") (citing *Morisky v. Pub. Serv. Electric & Gas Co.,* 111 F.Supp.2d 493, 498 (D.N.J.2000)); *see also Holt v. Rite Aid Corp.,* 333 F.Supp.2d 1265, 1270-72 (M.D.Ala.2004); *Morisky,* 111 F.Supp.2d at 498. The defendants have failed to show that these variations are material. Although some of the apartment office staff duties may have varied day-to-day, the evidence suggests that the focus of the leasing staff duties was to show the property to potential renters, manage renter requests and rents, and perform general administrative tasks. Some day-to-day variation in how and when the staff performed these tasks does not preclude conditional certification and the issuance of notice. *See Foraker v. Highpoint Southwest, Servs., L.P.,* No. H-06-1856, 2006 WL 2585047, at \*4 (S.D.Tex. Sept.7, 2006) ("While undoubtedly the [plaintiffs'] duties

vary to some degree from day-to-day and possibly from location to location ... [t]he fact that on different days customers may have questions for a [plaintiff employee] does not change the thrust of the job duties described ...."); *see also Holbrook v. Smith & Hawken, Ltd.,* ---F.R.D. ----, 2007 WL 2982239, at \*4 (D.Conn. Oct.11, 2007)* ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are *similarly situated.");* *Berger v. Cleveland Clinic Found.,* No. 1:05 CV 1508, 2007 WL 2902907, at *20 (N.D.Ohio Sept.29, 2007)* ("[S]imilarly situated does not mean identically situated.") (quoting *Wilks v. Pep Boys,* No. 3:02-0837, 2006 WL 2821700, at \*3 (M.D.Tenn. Sept.26, 2006)).

**\*7** Moreover, the plaintiffs allege and present affidavits stating that they and the other apartment office employees worked under the control and direction of a single person, Dilick. *See, e.g., Berger,* 2007 WL 2902907, at *21 ("[The court finds the fact that many of the [putative class members] are respiratory therapists while Plaintiff is a respiratory technician does not, by itself, preclude a finding that the class members are similarly situated, as all members of each position worked in the same department within the same building, had the same supervisor, and their job duties overlapped significantly."); *Asensio,* 130 F.Supp.2d at 663(finding collective-action treatment proper in case where the putative class members worked at the same facility).

The record shows that the defendants treated the leasing agents as hourly and the leasing managers, assistant property directors, property directors, and the marketing director as exempt salaried employees. The defendants assert that Prater, Stroyick, and other salaried employees were exempt from the FLSA, while Murillo and other leasing agents were not. The plaintiffs dispute these assertions and contend that despite the titles, all performed the same duties and that the salaried employees were misclassified as either exempt or as independent contractors. The plaintiffs allege that apartment office employees were entitled to overtime pay but were denied it and that the defendants failed to keep proper employee records and to withhold social security or FICA taxes. The record supports certification of a class of hourly employees and a class of allegedly misclassified salaried employees. Under the lenient *Lusardi* standard, the plaintiffs have made the necessary minimal showing that there are two classes of apartment office employees who are similarly situated to each other in terms of position and payment.

The defendants argue that the hourly employees' claims require individual treatment of each putative class

member's hours worked, *see Basco,* 2004 WL 1497709, at *4, and that the misclassification claims will require a fact-intensive analysis of each putative class member's duties. *See Mike v. Safeco Ins. Co. of Am.,* 274 F.Supp.2d 216, 220 (D.Conn.2003). In response, the plaintiffs contend that all the apartment office employees, regardless of title or exempt status, performed basically the same duties and were treated the same way. The current record does not show that the claims of those classified as hourly employees require such an individualized analysis of each employee's schedule and duties as to preclude collective-action treatment. Nor does the record show that collective-action treatment is improper for the claims of those classified as exempt. Collective-action treatment is proper for misclassification claims when the employees have essentially the same basic job responsibilities. *See Holbrook,* 2007 WL 2982239, at *4 ("[The plaintiff] contends that all [Assistant Store Managers] maintained the same basic job responsibilities and were all classified as exempt ... but that ASMs basic job responsibilities could not have qualified them as exempt executives under the statute. Such commonality in position, classification, and treatment ... constitutes a common scheme or plan that renders all ASMs similarly situated for FLSA purposes.").

**\*8** Lastly, the parties dispute whether the plaintiffs have shown that other aggrieved individuals want to opt in. The plaintiffs allege that the defendants have retaliated against them and against current apartment office employees or have otherwise attempted to discourage them from participating in the lawsuit. Prater states in her affidavit that after she retained counsel, she sent a letter to Dilick asking that she be paid for overtime under the FLSA. After receiving the letter, Dilick sued Prater in small claims court and eventually offered to settle the suit if she released her FLSA claims. (Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, ¶ 3-4). Stroyick states in her affidavit that Dilick threatened her uncle, who owns 11% of one of the defendant corporate entities, that if she proceeded with the case and other plaintiffs opted in, Dilick would hold her uncle "responsible for paying a judgment or settlement against the Defendants."(Docket Entry No. 19, Ex. 1, Affidavit of Christina Stroyick, ¶ 3). Stroyick also asserts that after Prater had retained counsel and sent a letter to Dilick demanding payment for her overtime, both Dilick and Gordon Olhausen, a CPA for the defendants, contacted Stroyick to find out if she was involved with Prater's demand and expressed concern that the suit would harm her reputation "as a future lawyer," (*id.,* Affidavit of Christina Stroyick, ¶ 5), as well as her uncle, (*id .,* Affidavit of Christina Stroyick, ¶ 6). Murillo similarly states in her affidavit that after Prater had demanded payment for her overtime, two employees of

the defendants approached her and told her that "joining in this suit would cost [her] permanent, public record, and [she] would not be able to get a job,"(*id.,* Affidavit of Angelica Murillo, ¶ 3), and that "people would not want to hire" her if she participated in the suit, (*id.,* Affidavit of Angelica Murillo, ¶ 3). All three plaintiffs assert in their affidavits that they know of other leasing office employees who have experienced retaliation. The defendants do not respond directly to these allegations but argue that the plaintiffs have failed to show "that even one putative class member is interested in joining their lawsuit."(Docket Entry No. 20 at 5).

Although the plaintiffs present no affidavits from other apartment office employees expressing an interest in opting in, this is not fatal to the issuance of notice. *See Lima,* 493 F.Supp.2d at 799-800 (E.D.La.2007) (noting that while the plaintiffs did not provide any affidavits of similarly situated employees wishing to opt in, "[i]t seems appropriate to certify the collective action at this time and revisit the question later after some discovery"). Their allegations of retaliation and intimidation are relevant to the analysis of this third factor. This suit potentially involves up to twenty plaintiffs. The affidavits of Stroyick and Murillo show that there is at least some interest on the part of other apartment office employees in participating in the suit. *See Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008 *9 (S.D.Tex.Jan.24, 2007)* (emphasis added). Although Prater, Stroyick, and Murillo are currently named plaintiffs, Prater alone initiated legal action against the defendants. Stroyick and Murillo subsequently decided to join her and they filed the complaint in this case together. Given the present record, the plaintiffs have made the necessary showing "that at least a few similarly situated individuals seek to join the lawsuit."*Simmons,* 2007 WL 210008, at *9.

**\*9** Under the lenient *Lusardi* standard, the plaintiffs have shown that notice of a collective-action suit is warranted. The plaintiffs' motion for notice is granted for two subclasses of employees: leasing agents who were paid on an hourly basis; and other apartment office employees paid on a salary basis, including leasing managers, assistant property directors, property directors, and marketing director. If sufficient evidence is not developed during discovery to show that the apartment office employees in either subclass are similarly situated, the defendants may ask this court to decertify.

### III. Conclusion

The plaintiffs' motion for notice is granted. Their motion for expedited discovery is granted. The defendants did not comment on the form of notice the plaintiffs proposed;

**Prater v. Commerce Equities Management Co., Inc., Not Reported in F.Supp.2d (2007)**

2007 WL 4146714

any comments must be filed by December 7, 2007.

The parties have consented to mediate and have agreed on a mediator. The parties must mediate by January 15, 2008.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4146714

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1514810
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jahira ROMERO, Individually and on Behalf of all
Others Similarly Situated, Plaintiff,
v.
H.B. AUTOMOTIVE GROUP, INC., and Harold
Bendell, Defendants.

No. 11 Civ. 386(CM). | May 1, 2012.

DECISION AND ORDER DENYING PLAINTIFF'S
MOTION FOR CONDITIONAL COLLECTIVE
ACTION CERTIFICATION; DENYING
PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION; AND GRANTING
DEFENDANT'S CROSS–MOTION FOR
SUMMARY JUDGMENT

McMAHON, District Judge.

**\*1** On January 19, 2011, Plaintiff Jahira Romero
("Plaintiff") brought this putative class action against
Defendants H.B. Automotive Group, Inc. ("H.B.") and
Harold Bendell ("Bendell") (collectively, "Defendants"),
alleging failure to pay overtime and minimum wage
pursuant to the Fair Labor Standards Act (the "FLSA"),
29 U.S.C. § 201 et seq., and the New York Labor Law
(the "NYLL"), NYLL §§ 650 et seq., and also for
retaliation under NYLL § 215.

On November 4, 2011, after class discovery, Plaintiff
filed this motion seeking conditional class certification,
court-authorized notice pursuant to section 216(b) of the
FLSA, and an order directing Defendants to produce
contact information for all current and former
"non-managerial employees."[1]Plaintiff also asks the Court
to certify a NYLL Rule 23 class consisting of all of
Defendants' current and former employees in New York
who: (1) worked in excess of forty hours per week and
were not compensated with overtime pay; and/or (2) did
not receive the minimum wage.

[1]    Plaintiff originally filed this motion on April 22, 2011
(ECF No. 10), but withdrew it and refiled it at a later
date after obtaining additional discovery from

Defendants. Defendants' cross-motion was originally
filed on May 6, 2011 (ECF No. 13), but was withdrawn
at the same time Plaintiff withdrew her motion for
certification.

Defendants oppose both the collective action and class
action certification. On December 2, 2011, with the
Court's consent, Defendants cross-moved for summary
judgment to dismiss Plaintiffs individual claims for
overtime wages for the period while she was employed as
a salesperson by Defendants.[2]

[2]    Defendants also moved for summary judgment
dismissing Plaintiff's state law "claim" for "liquidated
damages," but later withdrew that portion of their
cross-motion.

For the reasons stated below, Defendants' cross-motion
for summary judgment is granted in part and denied in
part, and Plaintiff's motion to certify the collective action
and class action is denied.

## BACKGROUND

Plaintiff failed to respond to Defendants' Local Civil Rule
56.1 Statement. This failure means that the material facts
in Defendants' 56.1 Statement are deemed admitted as a
matter of law. *See* Local Rule 56.1(c); *Hi Pockets, Inc. v.
Music Conservatory of Westchester, Inc.,* 192 F.Supp.2d
143, 147 (S.D.N.Y.2002) (McMahon, J.). Only sparing
reliance on Defendants' 56.1 Statement is required to
dispose of these motions, however.

### I. The Parties

In a twist on the typical FLSA case (in which named
plaintiffs seek conditional certification for a single job
position), Plaintiff—the only plaintiff, named or
otherwise—was employed in *two* substantially different
roles by Defendants between June 2009 and November
2010.

In June 2009, Plaintiff was hired as an automobile
salesperson at two of Defendants' locations. In this role,
Plaintiff was required to work approximately 55 hours per
week. She was paid $150 per week plus commission for
any automobiles she sold. She frequently did not sell any

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

automobiles, however, and was paid only $150 for those weeks. Plaintiff claims that she did not receive any compensation for overtime worked, and was often paid below the minimum wage.

In November 2009, Plaintiff became the "Inventory Manager" for both locations. Her job duties included keeping the inventory of the automotive goods stored in the sales department. She was paid $11 per hour, and did not receive any compensation for hours worked over 40. Plaintiff was the only employee Defendants ever hired as an Inventory Manager.

**\*2** Plaintiff submitted an unsigned affidavit from an Isaias Guzman Tavarez ("Tavarez"), one of Defendants' former employees, which was apparently dictated to one of Plaintiffs lawyer's paralegals over the phone. This unsigned affidavit is inadmissible, because it is unsworn and not submitted under penalty of perjury, and I will not consider it. *Sam Jin World Trading, Inc. v. M/VCap San Nicolas,* No. 09 Civ. 3997(LMM), 2010 U.S. Dist. LEXIS 65963, at\*10(S.D.N.Y. June 30, 2010); *United States v. All Right, Title & Interest in Real Prop. & Appurtenances,* 77 F.3d 648, 657–58 (2d Cir.1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the ... motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."). Tavarez has not opted-in to this case—even though almost a year has passed since the creation of the unsworn affidavit—and his "affidavit" is not necessary to the disposition of these motions.

H.B. is a New York corporation with a principal place of business in Bronx County, New York. H.B. is a chain of automotive retail and repair dealerships that operate at various locations throughout New York City. The parties do not specify how many locations H.B. has; Plaintiff seeks to represent a class of employees in six different locations: Bronx Automotive Group, City World Motors LLC, Bronx Kia, City World Hyundai, City World Toyota, and City World Ford. (Pl.'s Mot. for Certification at 10 (ECF No. 24).)

Bendell, according to the Complaint, has an ownership stake in H.B., and is H.B.'s chairman and CEO. (Compl.¶ 9.) Nothing is said about him in the moving papers.

## II. Plaintiff's Collective Action and Class Action Definitions
Plaintiff seeks to certify a FLSA collective action of

> Current and former employees of
> Defendants who perform any work

in any of Defendants' locations as non-managerial employees who give consent to file a cause of action to recover overtime compensation which is legally due them for the time worked in excess of forty (40) hours in a given work week, as well as to recover the difference between the amount of wages actually paid to them and the statutorily minimum amount due ("FLSA Plaintiffs").

(Compl. ¶ 10; *see also* Mot. for Certification at 1.) It is unclear what Plaintiff means by "non-managerial," especially as Plaintiff is seeking to recover overtime and minimum wages, in part, as an "Inventory *Manager.*"She obviously did not intend to exclude her own position from the collective action definition. I assume that Plaintiff contends that her "managerial" title is an honorific and is not indicative of her true status.

The NYLL class which Plaintiff seeks to certify is substantially larger, and consists of

> All persons employed by Defendants to perform any work in any of Defendants' locations in any capacity during the statutory period within the State of New York who (1) worked in excess of forty (40) hours per week and were not compensated with overtime pay; and/or (2) were not compensated at a rate in accordance with the minimum rate of hours laws ("Class Plaintiffs").

**\*3** (Compl. ¶ 17; Pl.'s Reply in Supp. of Certification at 2 (ECF No. 32).) There is no attempt to limit this to non-managerial employees.

## III. The Employees in the Putative Classes
The parties have not been clear about the job titles of the employees at issue in this litigation.

During class discovery, Defendants produced "wage and hour information"—including timecard reports and clock-in details—for "non-managerial" employees who worked for Defendants. Based on her review of that discovery, Plaintiff claims she has identified "at least [67] ... non-managerial employees, including salespersons,

porters, and office staff who were not paid their legally mandated overtime by Defendants," (Pl's Mot. for Certification at 5 (ECF No. 24)). Plaintiff makes no similar claim about minimum wage.

Forty-eight of the 67 employees are/were employed as salespersons, and 19 held other positions. Four of these 19 were "office staff," five were porters, and 10 are labeled "unidentified non-managerial." (Pl.'s Reply in Supp. of Certification at 2; Defs.' Opp'n to Certification at 3, 5 (ECF No. 27).) Defendants seem to claim that, of the 10 unidentified non-managerial employees, four were engaged in sales, one was a partsman, and one was the office manager. (Sanchez Aff. ¶ 24.) It is unclear to the Court where Plaintiff, as an Inventory Manager, fits in. Needless to say, the numbers do not add up, and the parties did not present a clear picture of the number or type of employees at issue.

Of these 19 employees for whom Defendants' records state were not paid overtime, Defendants aver that 13 were in fact compensated for at least some overtime hours worked. Plaintiff disputes this.

Defendant also alludes that this group of "unidentified non-managerial" employees includes mechanics, but does not provide any evidence to support this contention. (Defs.' Opp'n to Certification at 10.) Instead, Defendants state that they employ "service managers, *mechanics,* service writers, porters, service cashiers, parts counter persons, receptionists, salespersons, a generally sales manager, assistant sales managers, a finance manager, and an office/administration manager."(Sanchez Aff. ¶ 4 (emphasis added).) So while it is possible that a mechanic may be one of the unidentified non-managerial employees, it is by no means a certainty, because all mechanics may have been paid overtime and minimum wage.

In addition to these 67 employees, Plaintiff also identified another 82 "non-managerial" employees for whom overtime records were not found. (Pl.'s Mot. for Certification at 10.) Defendants aver that "most of the [82] employees [without overtime records] identified are salespersons."(*Id.* ¶ 25.)

These employees—149 in total—worked in six of Defendants' locations. (Pl.'s Mot. for Certification at 10.)

Defendants contend that most of these 149 employees are legally exempt from the FLSA's protections, in whole or in part, based on the duties the employees perform. Defendants maintain that salesmen, partsmen and mechanics are not paid overtime because they are

statutorily exempt from the FLSA's overtime requirements. (Sanchez Aff. ¶ 6.) Defendants also aver that the office manager Plaintiff identified as not having been paid overtime is exempt. (*Id.* ¶ 24.)Further, Defendants assert that "there is an issue whether Plaintiff was misclassified as exempt from overtime as an inventory manager," and state, without elaborating further, that "certain managers and administrative staff, depending on their positions and job duties, may also be exempt from overtime."(Defs.' Opp'n to Certification at 10).

**\*4** Plaintiff disputes that Defendants' automotive salespersons qualify for the FLSA's salespersons exemption. As to the rest of the non-managerial positions, Plaintiff ignores the issue, and does not contend that any other employees were misclassified.

Aside from Plaintiffs descriptions of her own jobs in her affidavit, neither party has provided job descriptions for any of the above-identified roles.

\* \* \*

On November 4, 2011, after class discovery, Plaintiff filed this motion seeking conditional class certification, court-authorized notice pursuant to section 216(b) of the FLSA, and an order directing Defendants to produce contact information for all current and former "non-managerial employees." Plaintiff also moves the Court to certify a NYLL Rule 23 class.

Defendants oppose both the collective action and class action certification. On December 2, 2011, with the Court's consent, Defendants cross-moved for summary judgment to dismiss Plaintiff's claims for overtime wages when she was employed as a salesperson by Defendants.

## DISCUSSION

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,248 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,587(1986).

Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.,* 870 F.2d 57, 60 (2d Cir.1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the motion for summary judgment is properly made, the burden shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial," *Anderson,* 477 U.S. at 250. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998), but must support the existence of an alleged dispute with specific citation to the record materials, Fed.R.Civ.P. 56(c).

While the Court must view the record "in the light most favorable to the non-moving party," *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir.1989) (citations omitted), and "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.,* 475 U.S. at 586 (citations omitted). Not every disputed factual issue is material in light of the substantive law that governs the case, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment" *Anderson,* 477 U.S, at 248.

**I. Plaintiff's Request for Certification of a FLSA Collective Action is Denied**

**\*5** Plaintiff moves for conditional certification of her FLSA claims, asserting that all "non-managerial employees" are similarly situated insofar as they were not paid overtime or the minimum rate of pay required by the FLSA. (*See, e.g.,* Vagnini Affirm. Ex. 7; Sinha Affirm. Ex. 2.)

Defendants respond that Plaintiff has failed to define a class of similarly situated employees because: (1) Defendants actually did pay non-salespersons overtime for most weeks in question; (2) Plaintiff has not demonstrated a common plan or policy to deny properly due wages existed; (3) Plaintiff cannot proceed as a collective action on behalf of all salespersons because Plaintiff has no FLSA claim as a salesperson herself; and (4) Defendants' non-managerial employees performed

different job functions and had different job titles.

For the reasons discussed below, Plaintiff's motion for conditional certification is denied.

**A. Legal Standard**

**1. Introduction**

"The FLSA was designed to protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.' " *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 243 (2d Cir.2011) (quoting 29 U.S.C. § 202(a)). To effectuate this goal, the FLSA requires employers to pay their employees a minimum wage, 29 U.S.C. § 206, and overtime wages—calculated at a rate of "one and one-half times the regular rate"—for each hour worked in excess of 40 hours per week, 29 U.S.C. § 207(a)(1). These requirements are subject to certain exemptions, discussed below.

To enable employees to enforce their rights under the FLSA, section 216(b) creates a private right of action to recover unpaid overtime compensation, and provides that employees may pursue their claims collectively:

> Any employer who violates [FLSA's substantive provisions relating to minimum wages or maximum hours] shall be liable to the employee or employees affected in the amount of their unpaid [wages], and in an additional equal amount as liquidated damages ... An action to recover the liability prescribed [in the preceding sentence] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

29 U.S.C § 216(b). The collective action procedure was designed to promote the "efficient adjudication of similar claims," so that "similarly situated" employees may pool resources to prosecute their claims. *Lynch v. U.S. Auto. Assoc.,* 491 F.Supp.2d 357, 367 (S.D.N.Y.2007) (citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). The collective action process is also intended to encourage judicial economy by "efficient resolution in one proceeding of common issues of law and fact." *Hoffman–La Roche,* 493 U.S. at 180.

**\*6** Unlike Federal Rule of Civil Procedure 23, however, the FLSA only authorizes opt-in collective actions. *Kress,* 263 F.R.D. at 626.

There are three essential features in a FLSA collective action under section 216(b):

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in in the case.

*Lynch,* 491 F.Supp.2d at 367 (citing *Hoffman–La Roche,* 493 U.S. at 173).

Though section 216(b) neither explicitly provides for court-authorized notice nor requires it, it is ' "well settled" that district courts have the power to authorize an FLSA plaintiff to send such notice." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 101, 103–04 (S.D.N.Y.2003) (quoting *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y.1997)); *Myers v. Hertz Corp.,* 624 F.3d 537, 555 n. 10 (2d Cir.2010) ("Thus certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be useful as a case management tool for district courts to employ in appropriate cases") (quoting *Hoffman–La Roche,* 493 U.S. at 169, 174)). Orders that authorize notice to be sent are commonly referred to as orders "certifying" that a case be litigated as a collective action. *Damassia v.*

*Duane Reade, Inc.,* No. 04 Civ. 8819(GEL), 2006 WL 2853971 (S.D.N.Y. Oct.5, 2006) (Lynch, J.).

Federal Rule of Civil Procedure 23's requirements for class certification do not apply to the certification of a collective action under the FLSA. *Espinoza v. 953 Assocs., LLC,* No. 10 Civ. 5517(SAS), 2011 WL 5574895 (S.D.N.Y. Nov.16, 2011); *Vogel v. Am. Kiosk Mgmt.,* 371 F.Supp.2d 122, 127 (D.Conn.2005) ("The prevailing view in the Second Circuit, and in other Circuits, is that actions ... pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles."); *La Belle Farm,* 239 F.R.D. at 368. As a result, the "similarly situated" standard is "considerably more liberal than class certification under Rule 23." *La Belle Farm,* 239 F.R.D. at 368.

**2. The Relevant FLSA Exemptions**

The FLSA's requirements are subject to certain exemptions, the merits of which are not appropriate to reach during the conditional certification stage. *See, e.g., Pippins v. KPMG LLP,* No. 11 CIV. 0377, 2012 WL 19379, at \*4 (S.D.N.Y. Jan. 3, 2012) ("The applicability of [the defendant's] affirmative defenses are not at issue on this motion ... The only issue presently before the Court is whether Plaintiffs have made the preliminary showing to have their entitlement to overtime, and the applicability of these exemptions, litigated as a 'collective action.' "). However, the possible *existence* of exemptions may be relevant to an analysis of whether employees are similarly situated to each other, whether plaintiffs have satisfied the commonality requirement of Federal Rule of Procedure 23, or whether a plaintiff is likely to be an adequate class representative.

**\*7** There are at least two exemptions to the FLSA which Defendants contend are relevant in this case: (1) for autosalespersons, partsmen, or mechanics; and (2) for administrative employees.

(1) As discussed above, the FLSA's overtime—but not minimum wage—protections do not apply to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. § 213(b) (10)(A).

(2) The FLSA's protections—both minimum wage and overtime—also do not apply to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). At a minimum, the

administrative exemption (and possibly the executive exemption) is relevant to this case:

> To be exempt as an administrative employee, the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "include[ ] the exercise of discretion and independent judgment with respect to matters of significance."29 C.F.R. § 541.200(a)(2)-(3).

*Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 630 (E.D.Cal.2009). Whether an employee falls into the administrative exemption is determined by the employee's job duties. *Id.* An exempt employee's "primary duty" must be exempt work. 29 C.F.R. § 541.700(a).

These exemptions are affirmative defenses to overtime pay claims, and the employer "bears the burden of proving that a plaintiff has been properly classified as an exempt employee."*Indergit v. Rite Aid Corp.,* No. 08 Civ. 9361(PGG), 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010)."Because the FLSA is a remedial act, its exemptions ... are to be narrowly construed."*Martin v. Malcom Pimie, Inc.,* 949 F.2d 611, 614 (2d Cir.1991)).

As discussed above, whether an employee is exempt from FLSA overtime coverage based on duties performed is a "mixed question of law and fact."*Dowries,* 2007 WL 1468218, at *10.

"The New York State Department of Labor takes the position that the overtime provisions contained in [the NYLL] expressly incorporate the FLSA's exemptions."*Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC,* No. 08–CV–1686 NGG RML, 2012 WL 1078230, at *8 (E.D.N.Y. Mar.30, 2012) (citing 12 N.Y.C.R.R. § 142–2.2)."Federal courts have followed the Department's guidance, applying FLSA exemptions to state Labor Law claims."*Id .* (citing *Torres v. Gristede's Operating Corp.,* 628 F.Supp.2d 447, 456 n. 4 (S.D.N.Y.2008)). Thus, if Plaintiff is subject to the FLSA's exemptions, she is also exempt from the NYLL's protections. *See Clarke v. JPMorgan Chase Bank, N.A.,* No. 08 CIV. 2400 CM/DCF, 2010 WL 1379778, at *15 n. 7 (S.D.N.Y. Mar.26, 2010). Plaintiff does not dispute this.

**3. Overview of the FLSA's Two–Stage Certification Process**
**\*8** Courts in the Second Circuit employ a two-stage process to determine whether FLSA certification is

proper. *See, e.g., Raniere v. Citigroup Inc.,* No. 11 Civ. 2448, 2011 WL 5881926, at *22 (S.D.N.Y. Nov.22, 2011); *Lynch,* 491 F.Supp.2d at 367–68;*Cohen v. Gerson Lehrman Grp., Inc.,* 686 F.Supp.2d 317, 327 (S.D.N.Y.2010) ("The dominant approach among district courts in this Circuit is to conduct a two-phase inquiry in determining whether potential opt-in plaintiffs are 'similarly situated.' "); *Myers,* 624 F.3d at 554 (approving of the two-step method in dicta). In the first stage, the Court makes a preliminary determination about whether the named plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to authorize the sending of notice and allow the case "to proceed as a collective action through discovery."*Lynch,* 491 F.Supp.2d at 368. If the court finds that the named plaintiffs and potential opt-ins are indeed "similarly situated" with respect to their job duties/requirements, compensation, and employer policies, the court "conditionally certifies" the collective action. *Id.* (citing *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y.2007)). The plaintiffs then send court-approved notice to potential members, who may elect to opt-in to the collective action by filing consent forms with the court, and the now-collective action proceeds to discovery.*Id.* Because the clock is running on the claims of potential opt-in plaintiffs all the while, conditional certification is to be decided early in the litigation process, so that class members' claims do not become time-barred.

At the second stage—after discovery and upon the defendant's request—district courts must undergo a more stringent factual analysis to determine whether the collective action members are in fact similarly situated. *Espinoza,* 2011 WL 5574895, at *6;*Indergit,* 2010 WL 2465488, at *4. The court may decertify the action if the record reveals that the employees are not similarly situated; the claims of those who have opted in are then dismissed without prejudice to the filing of individual suits. *Raniere,* 2011 WL 5881926, at *23.

Because this is a motion for conditional certification, the Court need only make a preliminary determination whether the Plaintiffs are "similarly situated."

**4. The Stage One Standard for Conditional Class Certification**
Neither the FLSA nor its implementing regulations defines "similarly situated." *Hoffman,* 982 F.Supp. at 261. However, courts in this Circuit require that plaintiffs only make a " 'modest factual showing' that [plaintiffs] and other putative collective action members 'were victims of a common policy or plan that violated the law.' " *Indergit,* 2010 WL 2465488, at *3 (quoting *Amendola v.*

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

*Bristol–Myers Squibb Co.,* 558 F.Supp.2d 459, 467 (S.D.N.Y.2008)); *Raniere,* 2011 WL 5881926, at *22 ("At this initial step, Plaintiffs need only provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' ") (quoting *Morales v. Planlworks, Inc.,* No. 05 Civ. 2349(DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb.2, 2006)); *Hoffman,* 982 F.Supp. at 261. This requirement does not mean that plaintiffs must show that each individual plaintiffs job duties are perfectly identical; rather, plaintiffs need only show that they are similar. *Luque v. AT & T Corp.,* No. C 09–05885 CRB, 2010 WL 4807088, at *4 (N.D.Cal. Nov.19, 2010); *Raniere,* 2011 WL 5881926, at *25 ("The issue here is not whether Plaintiffs and other Loan Consultants were identical in all respects, but 'rather whether they were subject to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.' ") (quoting *Vaughan v. Mortg. Source LLC,* No. CV 08–4737(LDW) (AKT), 2010 WL 1528521, at *7 (E.D.N.Y. Apr. 14, 2010)). Such variances are more appropriately analyzed during the second—decertification—stage. *La Belle Farm,* 239 F.R.D. at 369.

**\*9** To meet this standard, plaintiffs must proffer ' "substantial allegations' of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation."*Davis v. Abercrombie & Fitch Co.,* No. 08 Civ. 1859(PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct.22, 2008) (citing *Ayers v. SGS Control Servs., Inc.,* No. 03 Civ. 9078(RMB), 2004 WL 2978296, at *5 (S.D.N.Y. Dec.21, 2004)); *Indergit,* 2010 WL 2465488, at *3. Plaintiffs bear this burden, and can overcome it by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."*Raniere,* 2011 WL 5881926, at *22 (quoting *Hallissey v. Am. Online, Inc.,* No. 99 Civ. 3785(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb.19, 2008)).

"Because certification at this first early stage is preliminary and subject to reevaluation, the burden for demonstrating that potential plaintiffs are 'similarly situated' is very low."*Raniere,* 2011 WL 5881926, at *22 (citing *Lynch,* 491 F.Supp.2d at 368). Other courts describe it as "minimal." *See Damassia,* 2006 WL 2853971, at *3. This low burden is consistent with the "broad remedial purpose of the FLSA."*Raniere,* 2011 WL 5881926, at *22 (quoting *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 336 (S.D.N.Y.2010)); *Hoffman–La Roche,* 493 U.S. at 173 (1989); *Hoffman,* 982 F.Supp. at 262 (citing cases discussing the broad remedial purpose of the FLSA).

In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims. *Lynch,* 491 F.Supp.2d at 368;*Shajan v. Barolo, Ltd.,* No. 10 Civ. 1385(CM), 2010 WL 2218095, at * 1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate."). The court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations."*Lynch,* 491 F.Supp.2d at 368–69;*Hoffman,* 982 F.Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"). District courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action."*Hoffman–La Roche,* 493 U.S. at 174.

**B. Plaintiff's Motion for Conditional Certification of a FLSA Collective Action is Denied**

Defendants spend much of their moving papers arguing that they have actually paid most overtime due to Defendants' non-exempt employees. As discussed above, the merits of Plaintiffs claim are not at issue on a motion for conditional certification; at issue is only whether Plaintiff and putative opt-ins were subject to a common plan or policy to deprive them of overtime, and whether they are similarly situated with respect to these claims. I cannot consider Defendants' defense now. But even if payment of such overtime were at issue, Defendants do not contend that they paid *all* overtime that was due, but rather that *"Most* of the employees identified by Plaintiff were actually paid overtime for the weeks identified by Plaintiff."(Sanchez Aff. ¶ 8 (emphasis added).)

**\*10** For the reasons discussed below, I find that Plaintiff's proposed collective cannot be conditionally certified.

**1. Plaintiff has Failed to Allege a Common Plan for Violating the FLSA's Minimum Wage Provisions**

As discussed above, the standard for conditionally certifying a collective action is lenient. *See, e.g., Raniere,* 2011 WL 5881926, at *22;*Damassia,* 2006 WL 2853971, at *3;*Lynch,* 491 F.Supp.2d at 368;*Spicer,* 269 F.R.D. at 336;*La Belle Farm,* 239 F.R.D. at 367;*Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y.2006). Plaintiff need only make a modest factual showing that she and other putative collective action members were victims of a common policy or plan that violated the law, i.e., that they were illegally denied overtime and minimum wage. *See La Belle Farm,* 239 F.R.D. at 367;*Levinson v. Primedia Inc.,* 02 Civ. 2222(CBM), 2003 WL 22533428,

*1 (S.D.N.Y. Nov. 6, 2003). While Plaintiff's burden of proof is low, it is not non-existent—"certification is not automatic." *Raniere,* 2011 WL 5881926, at *23. Plaintiff's "modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."*Myers,* 624 F.3d at 555 (citations and quotation marks omitted). Conclusory allegations are not enough to satisfy this burden. *Raniere,* 2011 WL 5881926, at *23.

Plaintiff makes no showing that any other "non-managerial" employees were treated as she was in terms of minimum wage. In this case, Plaintiff's showing with respect to minimum wage is limited to her discussion of her own situation as a salesperson, (Romero Aff. ¶¶ 4–7 (describing her job duties and how she personally was paid)), and her statement that, on "knowledge and belief," there are other salespersons who are also being denied overtime and minimum wage protections, (*id.* ¶ 8). With respect to non-salespersons, Plaintiff asserts that they were denied overtime, but says nothing about whether they were paid at least the minimum wage. (*Id.* ¶ 16.)Plaintiff does not include any admissible affidavits from other employees who were not paid minimum wage. More importantly, Plaintiff does not make any showing about a widespread failure to pay minimum wage based on Defendants' pay records, although Plaintiff has had the benefit of class discovery and has had access to them. (Pl.'s Mot. for Certification at 1 n. 1 ("Defendants provided over 2,000 pages including wage and hour records of other non-managerial employees spanning from 2005 through 2011."); *see also* Defs.' June 7, 2011 Letter to the Court (ECF No. 18)). In light of this discovery, Plaintiffs allegations made on knowledge and belief are not sufficient to satisfy her minimum burden. *See Barfield v. N.Y. City Health & Hosps. Corp.,* No. 05 CIV. 6319(JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov, 18, 2005) (denying conditional certification where the plaintiff alleged that, based on "limited anecdotal hearsay," other nurses were not paid overtime); *Levinson v. Primedia Inc.,* No. 02 CIV 2222(CBM), 2003 WL 22533428, at *2 (S.D.N.Y. Nov.6, 2003) (denying conditional certification where the plaintiffs merely alleged that they were not paid minimum wage or overtime, but provided no factual evidence other than the conjecture contained in the plaintiffs' affidavits that other employees were subject to the same pay policies); *Armstrong v. Weichert Realtors,* No. 05 Civ. 3120(JAG), 2006 WL 1455781 at *1 (D.N.J. May 19, 2006) (insufficient showing where the plaintiff offered a "one-page declaration ... as the sole piece of evidence in support of the motion for [collective action]

certification"); *Stubbs v. McDonald's Corp.,* 227 F.R.D. 661, 666 (D.Kan.2004) ("While ... plaintiff [need not] come forward with evidence of actual proof of a decision, policy or plan, the initial ad hoc FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone.").

**11** This Court has certified classes when only two or three identifiable employees were similarly situated, but here, Plaintiff has only been able to identify a single other individual, Tavarez, who contends that he was not paid minimum wages as a salesperson. But Tavarez neither signed his affidavit (drafted approximately one year ago) nor opted-in to this action (which he could have done at any time). When Defendants pointed these flaws out in their responsive papers, Plaintiff abandoned the issue of minimum wage in her Reply; instead, she focused on the showing that she had made with respect to overtime claims. I view this omission—as well as Plaintiff's failure to produce any evidence of a minimum wage violation after being provided discovery—as sufficient to deny Plaintiff's motion to the extent that she seeks to represent a collective action of persons who were non-managerial employees, but who were not paid minimum wage.

### 2. Plaintiff has not met Her Minimal Burden of Showing Her Proposed Collective Action is Similarly Situated

Plaintiff *has* made a showing that Defendants had at least 67 employees who worked more than 40 hours a week, and whose records do not state that they were paid overtime. Plaintiff also identified another 82 "non-managerial employees" (by which I assume she means all non-exempt employees) for whom overtime records were not found. This proposed collective action would consist of employees in "a broad array of job titles and functions," (Pl.'s Reply in Supp. of Certification at 9), including, at least: salespersons, porters, office staff, partsmen, an office manager, and an Inventory Manager. Plaintiff claims that Defendants' "common scheme" to deny overtime wages to their employees binds this diverse class.

Plaintiff's proposed collective action definition has netted some employees whom Defendants have classified as exempt from the FLSA's requirements under the automotive salesperson and administrative employee exemptions, e.g., salespersons and certain office staff. But the propriety of that designation cannot be tested now—although, to the extent that group includes salesmen, partsmen, and mechanics, as Defendants insist, those employees are statutorily disentitled to overtime wages. As far as the Court can tell, the remainder of the

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

employees in the putative collective action are non-exempt (e.g., porters). Thus, with respect to the putative collective action members classified as exempt, Plaintiff is really challenging Defendants' determination that certain of its employees are exempt under the FLSA. These same concerns are not in play with respect to Defendants' non-exempt employees.

In sum, Plaintiff seeks to conditionally certify a collective action consisting of: (1) a set of employees who are classified as exempt and a set of employees who are classified as non-exempt; and (2) employees with different positions and job duties who were classified as exempt under substantially different FLSA exemptions. For these two reasons, as discussed more fully below, this collective action is overbroad and cannot be conditionally certified in its current form.

**\*12 (1)** Where a collective action contains a mix of employees, some of whom are classified exempt from the FLSA's requirements, and some of whom are classified as non-exempt, there is no factual nexus between the collective action members' situations, and conditional certification is not appropriate. *See Hunter v. Sprint Corp.,* 346 F.Supp.2d 113, 119–20 (D.D.C.2004); *Diaz v. Electronics Boutique of Am., Inc.,* No. 04–CV–0840E, 2005 WL 2654270, at \*3–4 (W.D.N.Y. Oct.17, 2005),

In *Diaz,* two plaintiffs—one classified as exempt and the other as non-exempt by the defendant employer—sought to bring a FLSA collective action, claiming that they were "victims of [the defendant employer's] common practice of failing to pay overtime and other wages." *Diaz,* 2005 WL 2654270, at \*3. The court found that the plaintiffs were not similarly situated to one another—because one was classified exempt and the other non-exempt—and denied conditional certification. The court reasoned that

> The gravamen of [the exempt employee's] claim, as distinct from that of the [non-exempt employee], is that [the defendant] avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of non-exempt tasks. [The exempt employee's] claim and the claims of other [employees in the same role classified as exempt] thus will involve an analysis of daily duties and responsibilities and the amount of time spent on

> each, whereas [the non-exempt employee's] claim and the claims of [employees classified as non-exempt] will involve an examination of hours worked, payroll records and [the defendant's] knowledge and/or permission of the alleged overtime hours worked. As such [the two employees] are not similarly situated to one another for no factual nexus exists between their situations.

*Id*

Similarly, in *Hunter,* a group of nine plaintiffs sought to conditionally certify a FLSA collective action on behalf of two groups of employees, one consisting of non-exempt employees (including the named plaintiffs), and the other consisting of employees designated as exempt from the FLSA's requirements by the defendant employer. The court first noted that the only legal issues raised by the non-exempt putative opt-ins "relate to the amount of relief to which they are entitled,"*Hunter,* 346 F.Supp.2d at 119, The court contrasted this with the claims of the putative opt-ins that the defendant had classified as exempt, which "would inject into the case an additional legal question bearing on Hability[, i.e.,] whether [the defendant] has correctly classified these particular employees as exempt under the FLSA."*Id.* In refusing to conditionally certify a collective action including both classes of employees, the court stated that plaintiffs were unable to "identify a single case where a court has included in the same class in a collective action both employees classified by an employer as non-exempt and employees classified by the employer as exempt," instead concluding that "the cases that have had occasion to address the issue have reached or indicated a contrary result."*Id.* at 120 (citing *Kinnett v. State of Kansas,* No. 90–4209–S, 1991 WL 241832, at \*1 (D.Kan. Oct.30, 1991) (holding that employee who is "classified as a non-exempt" is "not similarly situated to the other exempt plaintiffs because she is non-exempt")).

**\*13** The results and reasoning in *Hunter* and *Diaz* control here. Plaintiff seeks to conditionally certify a collection action consisting of

> Current and former employees of Defendants who perform any work in any of Defendants' locations as non-managerial employees who give consent to

file a cause of action to recover overtime compensation ... as well as to recover the differences between the amount of wages actually paid to them and the statutorily minimum amount due.

(Compl. ¶ 10; *see also* Mot. for Certification at 1.)

As in *Hunter* and *Diaz,* this proposed FLSA collective action would include non-managerial employees that Defendants admit are non-exempt, such as porters, (*see, e.g.,* Defs.' Opp'n to Certification at 3–4; Sanchez Aff. ¶¶ 10–23), along with employees that Defendants have classified as exempt from overtime, e .g., salespersons, partsmen, and an Office Manager, (*see* Sanchez Aff. ¶¶ 4–6). Including these potentially exempt employees into the collective action would, as in *Hunter,* "inject into the case an additional legal question bearing on liability."*Hunter,* 346 F.Supp.2d at 119. In other words, the parties would first need to litigate whether Plaintiff and the putative opt-ins were misclassified—i.e., Defendants' *liability* for overtime wages would need to be established—whereas the non-exempt employees need only determine the *amount* of relief—if any—to which they are entitled. Thus, because the putative opt-ins in the proposed collective action are not similarly situated, the collective action cannot be conditionally certified as it currently stands.

**(2)** The fact that the putative opt-ins may have been misclassified under at least two different exemptions, premised on their different job duties, also militates against conditionally certifying the collective action as proposed. Where plaintiffs assert that they were misclassified as exempt, the focus is on "the nature of the employees' job duties in the context of the relevant exemption criteria."*Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 498 (2000); *see also*29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."). A collective action is only appropriate where "the plaintiff[s] make[ ] some showing that the nature of the work performed by other claimants is at least similar to [their] own."*Id.* (internal quotation marks omitted); *see also Lynch,* 491 F.Supp.2d at 370 ("Given that Lynch shares these similar job duties with other USAA special investigators, his motion for conditional certification should be granted."). It follows that, where a proposed collective action contains employees with varied job duties, who were allegedly misclassified as exempt under

different FLSA exemptions (e.g., the administrative exemption and the automotive salesperson exemption), it fails to allege a discriminatory scheme common to all members of the putative class.

**\*14** Rather than being subjected to a plan common to all proposed members, however, certain groups of employees within the proposed collective action may have been subjected to *different* "plans" or "policies" to deprive employees of legally due wages. These multiple plans may take the guise of different exemptions, based on different job duties. Thus, an overbroad proposed collective action may be amenable to subclasses, whereby each group of employees with similar job duties, classified as exempt under exemptions common to the group, could proceed separately. *See La Belle Farm,* 239 F.R.D. at 369 ("If the fruits of full discovery reveal that plaintiffs are not, in fact, 'similarly situated' to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are "similarly situated," I may later decertify the class or divide it into subclasses, if appropriate.").

Here, as discussed above, the collective action includes employees in a variety of roles, with a range of job duties (for example, the Court presumes that "office staff" have different duties than "partsmen" and salespersons), subject to different exemptions. Plaintiff has made no showing that the work performed by *all* potential opt-ins is similar to her own. Indeed, Plaintiff's own job duties, first as a salesperson and later as an Inventory Manager, are very different. (*Compare* Romero Aff. ¶ 4 ("In the position of salesperson, my job duties included selling automobiles") *with id.* ¶ 10 ("My duties as Inventory Manager included keeping inventory of the automotive goods kept in the Sales Department.").) The proposed collective action members are also differently situated with respect to the two different exemptions at issue. For example, a putative opt-in salesperson claiming that her job duties demonstrate that she was misclassified as exempt under the automotive salesperson exemption is not similarly situated to an office manager claiming that her different job duties demonstrate that she was misclassified under the administrative exemption. Thus, because putative opt-ins are not similarly situated with respect to their job duties or exempt-status, I cannot conditionally certify the whole class as it stands.

\* \* \*

Barring an unusual impediment, subclasses would be appropriate in this case. The proposed collective action is

not subject to one "common plan," but a number of narrower "common plans." At a minimum, these alleged "plans" would include, based on the parties' moving papers: (1) misclassifying certain employees as exempt under the automotive salesperson/partsmen/mechanic exemption; (2) misclassifying other employees as exempt under the administrative exemption; and (3) denying non-exempt employees overtime. The first two classes would need to be further subdivided based on the positions and job duties at issue. For example, it may make sense to have a subclass of automotive salespersons and another subclass for partsmen, because their job duties may be different. However, since the Court has not been supplied with a full list of the job duties and positions at issue (i.e., it is impossible to determine what "unidentified non-managerial" employees do), it is in no position to do the work for Plaintiff, and construct the appropriate subclasses.

**\*15** Furthermore, there are wrinkles in this case that prevent the Court from conditionally certifying any subclasses.

From June 2009 to November 2009, Plaintiff was employed by Defendants as an automotive salesperson. Automotive salespersons are exempt from the FLSA's overtime requirement if they were primarily engaged in selling vehicles. 29 U.S.C. § 2I3(b)(10)(A); *Williams v. Skyline Auto. Inc.,* No. 11 CIV. 4123(SAS), 2011 WL 5529820, at \*3 (S.D.N.Y. Nov.14, 2011). Indeed, Plaintiff admits in her own pleading that she was *"primarily* responsible for selling automobiles to Defendants' customers."(Compl. ¶ 28 (emphasis added).) Thus, from June 2009 to November 2009 Plaintiff has no viable claim for overtime, and Defendants' motion for summary judgment dismissing Plaintiff's individual overtime claim for the period while she was a salesperson can and should be granted.

Having no FLSA claim of her own as a salesperson, Plaintiff is not similarly situated to non-exempt employees, if any, who potentially have such claims.*Vengurlekar v. Silverline Techs., Ltd.,* 220 F.R.D. 222, 230 (S.D.N.Y.2003) (*sua sponte* denying collective action certification where named plaintiffs were exempt from the FLSA's requirements, finding that "Having no FLSA claims of their own, plaintiffs [were] not similarly situated to those non-exempt employees, if any, who potentially have such claims.").

But Plaintiff also seeks conditional certification based on the job to which she moved *after* serving as an automotive salesperson. In November 2009, Plaintiff was given the title of Inventory Manager and moved off the sales floor.

Her duties included "keeping inventory of the automotive goods kept in the Sales Department."(Romero Aff. ¶ 10.)

Defendants argue that "there is an issue whether Plaintiff was misclassified as exempt from overtime as an inventory manager...." (Defs.' Opp'n to Certification at 10.) Frankly, her job duties as pleaded do not sound managerial at all—or even administrative. They sound clerical. No doubt that will be an important issue to be litigated.

But, at this stage, all Plaintiff was required to do was provide a modest factual showing that, as an Inventory Manager, she was similarly situated to other employees with respect to "a common policy or plan that violated the law."*Indergit,* 2010 WL 2465488, at \*3 (quotations and citation omitted). This she has failed to do. Plaintiff was the only Inventory Manager ever hired by Defendants, and Plaintiff neither provides job descriptions for members of the proposed collective action, nor alleges that she had similar job duties to any other employee. (*See* Romero Aff ¶ 16.) Although the Court is more than willing to use her common sense in the absence of job descriptions, *see Shajan,* 2010 WL 2218095, at \*1 ("The Court has not spent her life under a toadstool—I know what waiters, busboys and bartenders do when they go to work."), it is not apparent in this case whether any other employees had similar job duties to Plaintiff, and, if so, were also classified as exempt under the FLSA (or any other "common policy or plan" to deprive employees of legally due overtime). Plaintiff is clearly not similarly situated to Defendants' salespersons, partsmen, or mechanics. There is also nothing in the record which could lead the Court to believe that Plaintiff was similarly situated with respect to the office staff members whom Defendants classified as exempt—the Court simply does not know what those employees do. Nor is Plaintiff similarly situated to non-exempt employees, for the reasons discussed above. Accordingly, because Plaintiff has not met her modest burden of showing that she—as an inventory manager—was similarly situated to any of Defendants' other employees, conditional certification is not appropriate. *See Morisky,* 111 F.Supp.2d at 498.

**\*16** For these reasons, Plaintiff's motion for conditional certification of her proposed collective action is denied. Plaintiff must proceed alone on her FLSA claims.

### III. Plaintiff's Motion for Class Certification is Denied

Turning to Plaintiffs motion for class certification of their state law claims, Plaintiff asserts violations of NYLL §§ 190 *et seq.* and 650 *et seq.,* and seeks class certification pursuant to Federal Rule of Civil Procedure 23.

Plaintiff encounters the same obstacles here as with her FLSA claim, i.e., that a determination of exempt status requires an inquiry into the specifics of Plaintiffs job and a similarly individualized inquiry into the specifics of each allegedly misclassified employee whom Plaintiff is seeking to join. *See Diaz,* 2005 WL 2654270, at *6–7.

## A. Legal Standard

### 1. Rule 23(a)

In order to obtain class certification under Federal Rule of Civil Procedure 23, the class proponent bears the burden of showing that *each* of the requirements of subsection 23(a)—numerosity, commonality, typicality, and adequacy of representation—is, in fact, satisfied. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 201–02 (2d Cir.2008); *see also Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable."Fed.R.Civ.P. 23(a)(1)."Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."*Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quotations omitted); Fed.R.Civ.P. 23(a)(2). Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. Fed.R.Civ.P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."*Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (internal quotation marks omitted). The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class."Fed.R.Civ.P. 23(a)(4); *see generally Brown v. Kelly,* 609 F.3d 467, 475 (2d Cir.2010).

As the Supreme Court recently observed, the Rule 23(a) prerequisites "ensure[ ] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."*Dukes,* 131 S.Ct. at 2550 (internal citations and quotation marks omitted). If even one of those requirements is not met, certification must be denied.

### 2. Rule 23(b)

In addition to satisfying the Rule 23(a) prerequisites, the class proponent must qualify the proposed class under one of the three subsection 23(b) categories. *Brown,* 609 F.3d at 476. Here, Plaintiff relies on subsection (b)(3).

**\*17** Under subsection (b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."*Id.* (quoting Fed.R.Civ.P. 23(b)(3))."As a general matter, the Rule 23(b) (3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."*In re Nassau Cnty. Strip Search Cases,* 461 F.3d 219, 225 (2d Cir.2006) (internal quotation marks omitted).

Courts determine whether Rule 23(b)(3) certification is appropriate by considering:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

*Oakley v. Verizon Commc'ns Inc.,* No. 09 CIV. 9175 CM, 2012 WL 335657, at *12 (S.D.N.Y. Feb.1,2012).

### 3. Burden of Proof

A district court must conduct a "rigorous analysis" to determine whether all the requirements of Rule 23 have been met. *Gen. Tel.,* 457 U.S. at 160–61. In the Second Circuit, factual findings necessary to this determination are made under the preponderance of the evidence standard. "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir.2010); *Teamsters,* 546 F.3d at 202–03 ("The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). The same standard applies whether the issue is independent of or overlaps with a merits issue in the case. *Id .; see also In re Initial*

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

*Pub. Offerings Sec. litig.,* 471 F.3d 24, 41–42 (2d Cir.2006). The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court, *Id* at 41.

In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide "whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*" *Myers,* 624 F.3d at 549.

**B. Plaintiff has Failed To Establish Commonality**
Because I find that Plaintiff has failed to carry her burden of establishing commonality, I need not address Rule 23's other requirements.

*Dukes* instructs district courts that "What really matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." 131 S.Ct. at 2551 (internal quotation and citation omitted) (emphasis in original). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed class's] claims can productively be litigated at once," not only must those claims depend on a common contention, but that "common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

**\*18** In *Gardner v. Western Beef Properties, Inc.,* the plaintiffs—managers and assistant managers—sued defendants—grocery store owners—alleging that the defendants failed to pay them minimum and overtime wages under the FLSA and NYLL. No. 07–CV–2345 RJD JMA, 2011 WL 6140518, at *3 (E.D.N.Y. Sept.26, 2011), *report and recommendation adopted sub nom.* *White v. W. Beef Props., Inc.,* No. 07 CV 2345 RJD JMA, 2011 WL 6140512 (E.D.N.Y. Dec.9, 2011). After the court conditionally certified a FLSA collective action, the plaintiffs moved to certify a Rule 23 NYLL class. In finding that the plaintiffs failed to establish commonality, the court concluded that the "determination of whether [a FLSA] exemption applied required 'individualized proof for each plaintiff, and thus ... the quantum of commonality required to satisfy Rule 23(a)(2) was not present." *Id.* at *4 (citing *Myers v. Hertz Corp.,* No. 02 CV 4325, 2007 WL 2126264, at *4 (E.D.N.Y. July 24, 2007),

*aff'd,* 624 F.3d 537, 547 (2d Cir.2010)).

Here, Plaintiff proposes the following as potential common questions: (1) whether Defendants kept accurate records worked by the class; (2) whether the class was scheduled to work and/or required to work in shifts of approximately 11 hours per day, 5 days per week; (3) whether the class was compensated for overtime pay pursuant to Defendants' policies; (4) whether the class was compensated at a rate less than the statutorily required minimum hourly rate of pay; and (5) whether Defendants have any affirmative defenses for any of these claims. (Pl.'s Mot. for Certification at 15.) After *Dukes,* though, the fact that Plaintiff came up with a list of common questions is no longer sufficient. *Dukes,* 131 S.Ct. at 2551 (the language of 23(a)(2) "is easy to misread, since any competently crafted class complaint literally raises common 'questions.' ").

I find that Plaintiff has failed to state a "common contention" that is "central to the validity" of Plaintiff's claims. *Dukes,* 131 S.Ct. at 2551;*see also Gardner,* 2011 WL 6140518, at *3. Whether Defendants failed to keep records "is not a central consideration because it only affects the manner in which the Court will calculate the number of hours worked."*Gardner,* 2011 WL 6140518, at *3. The remainder of Plaintiff's proposed common contentions—whether putative class members worked overtime, and whether Defendants failed to pay overtime and minimum wage in violation of the NYLL—are important considerations in this case. But "they are not common one[s]."*Id.*

Indeed, the central question in this case is whether Defendants correctly or incorrectly classified the putative class members as exempt under the NYLL exemptions described above. *See id.*The resolution of this question is not capable of classwide resolution "because it will require individualized examinations of each plaintiffs daily responsibilities and duties while on the job."*Id.; see also Myers,* 2007 WL 2126264, at *4–5 (finding lack of commonality because the key issue, whether employees were misclassified as exempt, required individualized proof); *Edwards v. Publishers Circulation Fulfillment, Inc.,* 268 F.R.D. 181, 188–89 (finding that individual, rather than common, issues would predominate because an "individual assessment" of each employee's situation was necessary to determine if that particular employee was misclassified). Here, for example, the parties will need to litigate whether each of Defendants' salespersons were primarily engaged in selling vehicles.

**\*19** Moreover, that Plaintiff seeks to certify a class consisting of employees in a variety of jobs—e.g.,

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

salespersons, porters, office staff, an office manager, an Inventory Manager, partsmen—that may be subject to *different* exemptions—for which different facts need be proved—or none at all, only reinforces my conclusion that a unified class is not appropriate.

The Court is careful to note that "Rule 23 does not impose upon plaintiffs the impossible task of showing that all class members have identical job responsibilities."*White, 2011 WL 6140512, at *3* (E.D.N.Y. Dec.9, 2011) (decided after, and considering, *Dukes* );*see also Myers, 624 F.3d at 549.* Certification is appropriate when the evidence shows that "the job duties of putative class members were *largely consistent* or when the individual employees' deposition testimony relating to their specific job duties is *generalizable.*"*White,* 2011 WL 6140512, at *3* (quoting *Myers,* 624 F.3d at 549) (quotations omitted) (emphases in original). Another way individual plaintiffs can bridge the "conceptual gap" between their claims and those of the class that they claim suffered a similar injury is by "significant proof" that the employer acted under a "general policy" to engage in the allegedly unlawful conduct. *Dukes,* 131 S.Ct. at 2553 (quoting *Gen. Tel.,* 457 U.S. at 159 n. 15);*White,* 2011 WL 6140512, at *5.*

Here, Plaintiff has neither produced evidence that the job duties of putative class members are "largely consistent" nor offered "significant proof that Defendants acted under a "general policy" to engage in allegedly unlawful conduct. What evidence Plaintiff has provided commands the opposite result.

In *Myers* and *Gardner,* courts refused to certify a class action where plaintiffs sought to certify classes consisting of employees with only one or two job titles. In marked contrast, Plaintiff is attempting to certify a class of consisting of—what Plaintiff *herself* calls—employees in "a broad array of job titles and functions."(Pl.'s Reply in Supp. of Certification at 9 .) At a minimum, the proposed class would contain salespersons, porters, office staff, an Inventory Manager, and "unidentified non-managerial title."

Furthermore, Plaintiff's proposed class is even larger than her proposed collective action, and seeks to include *"All persons employed by Defendants to perform any work in any of Defendants' locations" who did not receive overtime or minimum wage.* (Compl. ¶ 17 (emphases added); Pl.'s Mot. for Certification at 2). Her proposed class is thus not limited to non-managerial employees. But managerial employees are subject to yet another exemption, 29 U .S.C. 213(a)(1) (describing the exemption for "executive" employees, i.e., employees whose primary duty is management), which would need

to be litigated. *See, e.g., Gardner,* 2011 WL 6140518, at *2. Further, under this broad description, there are likely other employees with different job titles and duties whom Plaintiff has failed to describe to the Court.

**\*20** For the wide variety of employees whom Plaintiff seeks to represent, Plaintiff failed to produce any descriptions of job duties (other than her own in, in brief fashion) in any form—e.g., through written employer policies or deposition testimony—from which the Court could determine that the various job duties of putative class members were "largely consistent." As discussed above, Plaintiff did not even provide the Court with a complete list of the different job titles in the proposed class, even though she had the opportunity in class discovery to request them from Defendants. Plaintiff also concedes that these employees have a "broad array of ... functions." (Pl.'s Reply in Supp. of Certification at 9.)

From what little evidence Plaintiff has offered the Court, the job duties of the proposed class are *not* consistent. For example, Plaintiffs job duties as an automotive salesperson were considerably different than her job duties as an Inventory Manager. (Compare Romero Aff. ¶ 4 ("In the position of salesperson, my job duties included selling automobiles") *with id.* ¶ 10 ("My duties as Inventory Manager included keeping inventory of the automotive goods kept in the Sales Department.").)

In addition, because Defendants did not uniformly classify *all* its employees as exempt under a single exemption, Plaintiff is unable to generalize from that fact that the job duties of her putative class are "largely consistent." Even if Plaintiff did establish that Defendants made a uniform decision to classify all employees as exempt—which they did not, based on the record before the Court—such a decision only suggests that "some degree of homogeneity exists among the employees and is thus in a general way relevant [ ], [but] ... is not itself determinative" of the certification inquiry. *Myers,* 624 F,3d at 959.

For all these reasons, it is clear that the job duties of all the putative class members are not "largely consistent."

Last, Plaintiff has also not produced any evidence—much less significant proof—from which the Court can even infer that Defendants had a "general policy" to illegally deny class members their rightfully due overtime wages. In order to make such an argument, Plaintiffs would have to contend that Defendants misclassified their exempt employees. But Plaintiff does not such thing. Plaintiff does not even argue that any of Defendants' employees—aside from salespersons, as discussed

Romero v. H.B. Automotive Group, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 1514810

above—were misclassified as exempt. And Plaintiff offered no relevant evidence in support of her contention that salespersons were misclassified. (*See* Reply in Supp. of Certification at 4–5.) Thus, Plaintiff has failed to bridge the "conceptual gap" between her claims that those of the class. *Dukes,* 131 S.Ct. at 2553.

Therefore, because the proposed class is overbroad, and because Plaintiff failed to demonstrate that there are sufficient questions of law or fact in common between the putative class members, I find that Plaintiff has not satisfied her burden under Rule 23(a)(2). Accordingly, I must deny Plaintiff's motion for Rule 23 certification.

**CONCLUSION**

**\*21** For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion to certify the collective action and class action is denied.

The Clerk is instructed to remove the motions at ECF Nos. 23 and 26 from the Court's list of open motions.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1514810

---

**End of Document**    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

2013 WL 2180014
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

In re WELLS FARGO WAGE AND HOUR
EMPLOYMENT PRACTICES LITIGATION (NO.
III).

Multi–District Litigation Case No. H–11–2266. |
May 17, 2013.

**Attorneys and Law Firms**

Diana Elizabeth Marshall, Ronald C. Lewis, Marshall & Lewis, LLP, John M. Padilla, Padilla, Rodriguez, & De La Garza, L.L.P., R. Paul Yetter, Yetter Coleman LLP, Rhonda Hunter Wills, Wills Law Firm, Houston, TX, Reagan W. Simpson, Yetter Coleman LLP, Austin, TX, Diana Jane Nobile, Gregory K. McGillivary, Molly A. Elkin, Woodley & McGillivary, Washington, DC, Vincent Michael Giblin, Pitta Giblin LLP, Dana Lauren Gottlieb, Jeffrey M. Gottlieb, Gottlieb & Associates, New York, NY, Mark Adam Griffin, Tana Lin, Keller Rohrback LLP, Timothy James Pauley, Pauley Law Group PLLC, Seattle, WA, Nicholas Swigert Lane, The Law Offices of Nicholas S. Lane, Touhy, Touhy & Buehler, LLP, Chicago, IL, Andrew Ross Frisch, Morgan Morgan PA, Plantation, FL, for Plaintiffs.

David Bryce Jordan, April Nicole Love, Littler Mendelson, P.C., Houston, TX, David Scott Warner, Littler Mendelson PC, New York, NY, Keith J. Rosenblatt, Michael T. Grosso, Littler Mendelson PC, Newark, NJ, Lindbergh Porter, Mary D. Walsh, Philip L. Ross, Littler Mendelson, San Francisco, CA, Darren Mason Mungerson, Littler Mendelson, P.C., Chicago, IL, Breanne M. Sheetz, Daniel L. Thieme, Littler Mendelson, Seattle, WA, for Defendants.

**ORDER**

GRAY H. MILLER, District Judge.

**\*1** Pending before the court is Plaintiffs' motion for approval of Fair Labor Standards Act ("FLSA") notice forms and methods and for a longer notice period. Dkt.

95. After considering the motion, related filings, arguments during a hearing on May 1, 2013, and applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

This is a multi-district litigation case involving claims for overtime compensation by plaintiffs who work or have worked for Defendants as home mortgage consultants ("HMCs") or mortgage consultants ("MCs").*See* Dkt. 81. The court has conditionally certified two collective action classes of plaintiffs—one consisting of MCs who worked for Wachovia, and one consisting of HMCs who worked or work for Wells Fargo.[1]Dkt. 81. In the order conditionally certifying these collective action classes, the court instructed the parties to meet and confer about the notice form and either file an agreed notice form or a proposed form and opposed motion for approval. *Id.* The court also approved a 90–day notice period, which was to commence upon the court's approval of the notice form. *Id.* Before the notice form issues could be resolved, however, Defendants petitioned the Fifth Circuit Court of Appeals for a writ of mandamus challenging the process by which courts in the Southern District of Texas certify collective actions under section 216 of the FLSA. *See* Dkt. 82. The Fifth Circuit stayed the proceedings while this petition was pending. Dkt. 88. It denied the petition approximately six months later. Dkt. 93. The parties then met and conferred about the notice form, but were unable to agree. Dkt. 95. Plaintiffs have now moved the court to approved their proposed notice as well as approve various different methods of notice, which they urge the court to accept to ensure all potential plaintiffs receive notice. *Id.* Plaintiffs additionally request an extension in the length of the notice period. *Id.* Defendants object to the longer notice period, and instead argue that 60 days is sufficient. Dkt. 98. Defendants also argue that notice by first-class mail is sufficient and that all of the alternative methods proposed by Plaintiffs are unnecessary. *Id.* Finally, Defendants object to several sections of the proposed notice form. *Id.*

[1] See Docket Entry 81 for an exact definition of the two collective action classes.

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

## II. LONGER NOTICE PERIOD

Plaintiffs request that the court expand the notice period from 90 days to 180 days due to the seven-month delay while defendant Wells Fargo sought a writ of mandamus. Dkt. 95. Plaintiffs argue that there is a high turnover rate among the potential class members and that additional time is therefore warranted to allow for returned mail, follow up on returned notice forms, and research on addresses that are no longer valid. *Id.;* Dkt. 102 (noting that the nationwide turnover rate among HMCs is 40–45% per year). Defendants argue that the notice period should be limited to, at most, 60 days. Dkt. 98. They point out that Plaintiffs have a professional claims administrator and that they have presented no evidence that this professional claims administrator will need more than the standard notice period to complete the notice process. *Id.*

**\*2** Plaintiffs have adequately justified a slightly longer than normal notice period, given the heavy turnover rate of the potential class members. The court believes a 120–day notice period will be sufficient. Plaintiffs' motion for an extended notice period is therefore GRANTED IN PART. The notice period shall continue until 120 days after the date of this order.

## III. ALTERNATIVE METHODS OF NOTICE

Plaintiffs request to send notice by mail and email, and to provide notice on the Internet, Defendants' Intranet, and by posting in Defendants' offices. Dkt. 95. Plaintiffs also would like to disseminate a reminder notice to alert potential plaintiffs that the deadline for the notice period is approaching and to provide a recorded message to class members both at the time notice is disseminated and no later than 30 days prior to the expiration of the notice period. *Id.* Finally, they request that the court order Defendants to provide social security numbers for each putative class member whose notice is returned undeliverable so that they can locate those class members to provide notice.*Id.*

Defendants argue that first-class mail is the preferred method for notification and that alternative methods are permissible only when first-class mail is shown to be insufficient. Dkt. 98. They point out that the Supreme Court has cautioned that " 'trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action,' " and that the multiple forms of notice requested cross that line. *Id.* (quoting *Hoffman–LaRoche, Inc. v. Sperling,* 493 U.S. 165, 174,

110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

### A. Email

Defendants state that the only email addresses they have are corporate email addresses for current employees. *Id.* Since Defendants should also have the current home addresses for current employees, the provision of email addresses would not facilitate notice. *Id.* Moreover, Defendants argue that allowing notice via email increases the risk of distorting the court-approved notice, since it is easily altered and forwarded to unintended recipients. *Id.* The court agrees that the provision of email addresses will likely not facilitate notice in this case. Plaintiffs' request to provide notice via email is therefore DENIED.

### B. Posting on Wells Fargo Intranet and at Wells Fargo Offices

Defendants point out that posting on Wells Fargo's Intranet and at its offices would only provide notice to current employees, for whom the home addresses should be valid. *Id.* Defendants assert that the postings would thus merely be supplemental to the mailed notice and are therefore overly intrusive. *Id.* The court agrees that these postings would not facilitate notice in this case. Plaintiffs' request that the court require such postings is therefore DENIED.

### C. Internet Site

Plaintiffs request, in addition to their other proposed forms of notice, leave to establish a website with the court-approved notice and related information, including opt-in forms. Dkt. 95. The proposed website would allow potential plaintiffs to view the notice and learn about the status of the litigation, and they would be able to execute consent forms online by electronically providing their name, current contact information, date of birth, and last four digits of their social security number, all in a secure manner. *Id.* Defendants argue that Plaintiffs have not shown that first-class mail will not be an effective form of notice, as notice administration companies generally employ effective address location tools. Dkt. 98. Defendants warn that allowing additional methods of notice will result in judicially-endorsed solicitation and perceived endorsement of Plaintiffs' claims. *Id.*

**\*3** This case involves a large number of potential plaintiffs, and due process requires that these potential plaintiffs receive adequate notice. There is also an extremely high turnover rate for people in the jobs at issue

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

(*see* Dkt. 102), which could result in a large number of letters being returned because people have moved. Defendants argued that the percentage of notices returned due to bad addresses in a previous case was only 1.72%. Dkt. 98 & May 1, 2013 Hearing. Even if the rate were similar here, the list of potential plaintiffs currently contains 14,800 individuals, which would mean 254 to 255 people would not receive notice at a 1.72% miss rate. A website could potentially help find these missing individuals. Plaintiffs' request to publish notice on the Internet in addition to mailing notice is GRANTED.

**D. Reminder Notice and Recorded Message**
Defendants assert that Plaintiffs' proposed reminder notices will merely stir up litigation and inappropriately encourage putative plaintiffs to join the suit. Dkt. 98. They additionally argue that reminders would not be necessary if the notice period were not so long. *Id.* While the court is approving a somewhat longer notice period, it does not believe reminder notices are necessary or appropriate. The proposed phone messages likewise are not necessary to effectuate notice. Accordingly, Plaintiffs' requests to disseminate reminder notices and recorded messages are DENIED.

**E. Social Security Numbers**
Defendants argue that the court should reject Plaintiffs' request for the social security numbers of putative class members whose notice is returned undeliverable due to the private, personal nature of this information. Dkt. 98. Defendants propose that the court require Defendants to provide less private information, such as email addresses or telephone numbers, for potential plaintiffs whose notices are returned undeliverable. *Id.*

Defendants have already conceded that they do not have email addresses for former employees, and if the former employees have moved, the phone numbers Defendants have on file likely will not work, either. While the court agrees that social security numbers are very personal and private, it finds that in the event that Plaintiffs' professional claims administrator is unable to locate the potential plaintiffs whose notice forms are returned as undeliverable by other means, the use of social security numbers for the limited purpose of locating the current addresses of these potential plaintiffs is permissible. Accordingly, Plaintiffs' request for the social security numbers of potential plaintiffs whose notice is returned undeliverable is GRANTED IN PART. Plaintiffs' professional claims administrator must provide an affidavit certifying that he or she was unable to locate the

addresses of these individuals by less intrusive means. Defendants shall provide the social security numbers of these potential plaintiffs only. The documents containing these social security numbers shall be considered highly confidential and shall be provided only to the attorney in charge of communicating with the professional claims administrator, who shall then provide them only to the professional claims administrator. These documents shall be destroyed as soon as the professional claims administrator has successfully located the potential plaintiffs.

## IV. PROPOSED NOTICE FORMS

**\*4** Plaintiffs seek approval of the notice form they attached to their motion. Dkt. 95 & Ex. 1. They note that courts generally use the plaintiffs' notice as a starting point and argue that courts should not alter the plaintiffs' proposed notice unless alteration is necessary. Dkt. 95. Defendants argue that the proposed notice does not provide objective and neutral information and does not fully inform potential plaintiffs of their rights *and* responsibilities should they chose to join the case. Dkt. 98. Specifically, Defendants object to (1) references to the amount of the settlement in the Northern District of California case, which they claim only ferments litigation and creates an expectancy; (2) the bolded, all caps language about the court's authorization of the notice, which they argue perpetuates the suggestion of judicial endorsement; and (3) the bold, underlined, all caps language that the potential plaintiffs must join the case to preclude the statute of limitations running, which they claim is misleading and impermissibly goads recipients into joining the lawsuit. *Id.* Defendants also argue that the notice fails to inform putative class members that they are bound by any potential unfavorable rulings, does not indicate that other plaintiffs in the case may not retaliate against them if they elect not to join the lawsuit, and fails to inform putative class members that they are potentially liable for Wells Fargo's fees and costs. *Id.*

**A. Reference to N.D. Cal. Settlement**
The proposed notice states,

> In 2011, Wells Fargo paid $20 million to settle overtime claims brought by HMCs in a separate lawsuit filed in the Northern District of California. As discussed in Section 9, even if you received a

> settlement in a prior lawsuit, you
> are still eligible to participate in
> this action if you continued to work
> at Wells Fargo after July 20, 2010.

Dkt. 95, Ex. 1 § 4. Section 9 reiterates that Wells Fargo paid $20 million to settle previous overtime claims. *Id.* § 9. Defendants argue that the amount is wholly irrelevant to the notice and highly prejudicial. Dkt. 98. The court agrees. While it is appropriate to inform the putative plaintiffs that they may still join this action even if they participated in the prior litigation so long as they worked for Wells Fargo after the relevant date, the amount of the settlement is not relevant and could create expectations of a big recovery to recipients of the notice. Therefore, Defendants' objection to this portion of the proposed notice is SUSTAINED. Plaintiffs shall change the language, "Wells Fargo paid $20 million to settle overtime claims" in sections 4 and 9 to "Wells Fargo settled overtime claims."

**B. References to Court's Authorization of Notice**
The title of the notice is "IMPORTANT COURT AUTHORIZED NOTICE OF OVERTIME LAWSUIT AGAINST WELLS FARGO & WACHOVIA."Dkt. 95, Ex. 1. It is in very large, bold font. Section 1 of the proposed notice also states,

> **\*5** This Notice has been approved
> by the United States District Court
> for the Southern District of Texas,
> the Honorable Gray H. Miller
> presiding. The Court has not yet
> rendered any determination of the
> merits of this case. This Notice is
> provided    to    give    you    an
> opportunity to preserve your right
> to participate in any potential
> recovery or settlement that may be
> obtained.

*Id.* § 1. Section 12 notes that the court "has conditionally certified this case as a nationwide collective action and authorized sending this Notice to you."*Id.* § 12. Defendants argue that the notice should exclude any indication that it was approved by or authorized by the court. Dkt. 98. Defendants cite a Third Circuit case, *Sperling v. Hoffman–La Riche, Inc.,* 862 F.2d 439 (3d Cir.1988), and a Northern District of Illinois case, *Flores v. Lifeway Foods, Inc.,* 289 F.Supp.2d 1042 (N.D.Ill.2003), in support of this contention.*Id.* In Sperling, the Third Circuit stated that "the better practice

would be to exclude any reference in the notice indicating it had been approved or authorized by the court," but it specifically declined to reach the question of "whether the statement that the notice had been 'authorized' by the court should have been included."*Sperling,* 862 F.2d at 447. In *Flores,* the federal district court in the Northern District of Illinois stated that the notice should not create an appearance of judicial sponsorship, noting that it should not be on the court's letterhead or contain the signature of the clerk or other judicial officer. *Flores,* 289 F.Supp.2d at 1046. In that case, the caption of the proposed notice was the caption for court filings, containing the name of the court at the very top. *Id.* The court found that this was likely to misunderstood as a representation that the suit had merit. *Id.*

Plaintiffs point out that their proposed notice merely states a fact, that the notice is "court authorized." Dkt. 100. Plaintiffs argue that, regardless, the sentence stating that the court has not yet determined the case on the merits should alleviate any concerns that the court has endorsed Plaintiffs' claims simply because the court approved the notice. *Id.* During a hearing on May 1, 2013, Plaintiffs' counsel agreed to remove the words "court authorized" in the title of the notice since the body of the document already informs potential plaintiffs that the court authorized the notice.

The court agrees that the indications in the proposed notice that it is court authorized merely state a fact, and, since the first section of the notice clearly states that the court "has not yet rendered any determination on the merits of this case," the proposed notice does not suggest that the court endorses Plaintiffs' claims. The proposed notice in this case is very different from the proposed notice in *Flores,* which contained the caption of the case rather than a plain title. And *Sterling* does not require a different outcome, as it merely stated in *dicta* that it may be a better practice not to indicate that the notice is authorized. The court believes it is important to inform the recipients of the notice that it is court authorized so that they understand the current stage of the lawsuit. Accordingly, Defendants' objection to the use of the term "court authorized" is SUSTAINED IN PART AND OVERRULED IN PART. It is sustained to the extent that the term is used in the bold title of the notice. Plaintiffs shall remove the term "court authorized" from the title, as they agreed to do during the hearing. The objection is otherwise OVERRULED.

**C. References to the Statute of Limitations**
**\*6** Section 3, entitled "How Are My Rights Affected by This Lawsuit?," states,

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

As explained in Section 8 on page 3, many HMCs may have their federal law claims barred completely if they do not join this action because the deadline for bringing federal claims to recover overtime wages is continuing to expire. For example, *HMCs who stopped working at Wells Fargo or Wachovia more than three years ago (i.e. March 2010 or earlier) must join this action or their federal claims for overtime may be time barred.*

Dkt. 95, Ex. 1 § 3. Section 8, entitled "What Happens if I Choose *Not* to Join—Does This Mean That My Claims May Be Barred?," states,

Yes, for many HMCs. There is at most a three year statute of limitations (or deadline) for filing overtime claims under federal law. Many HMCs may have their federal overtime claims barred completely if they do not join this case because of the running of the statute of limitations. *IF YOU ARE AN HMC WHO STOPPED WORKING AT WELLS FARGO OR WACHOVIA MORE THAN THREE YEARS AGO (i.e. MARCH 2010 OR EARLIER), YOU MUST JOIN THIS CASE OR YOUR OVERTIME CLAIMS MAY BE COMPLETELY BARRED UNDER FEDERAL LAW.* In other words, if you choose not to join this action, the deadline to file your case under federal law may have completely passed under the statute of limitations, and you may not have an opportunity to ever seek those unpaid wages.

The Plaintiffs in this case have obtained an agreement with Wells Fargo and Wachovia to stop the statute of limitations from running, but only for those HMCs who file a Notice of Consent in this action. Any HMC who joins this action may seek overtime wages and damages under federal law extending back to February 2008. If you do not file a Notice of Consent form to join in this case, you will lose your opportunity to participate in this case and share in any settlement or recovery obtained, as well as your right to toll or extend your statute of limitations under this agreement.

*Id.* § 8.

Defendants argue that this proposed language strongly suggests that the putative class members are duty bound to join the lawsuit and is misleading. Dkt. 98. Plaintiffs argue that Defendants wish to conceal from the putative class that they will be barred by limitation unless they opt

in to this lawsuit. Dkt. 100.

The court agrees with Defendants that the proposed form improperly makes it appear that all potential plaintiffs must opt in to this lawsuit if they desire to bring claims. Of course, due to the tolling agreement, which extends the statute for this case only, many potential plaintiffs *will* be barred from bringing claims if they do not opt in to this lawsuit. The language in the proposed notice should inform the potential plaintiffs about what rights they do and do not have, but as currently worded it could be considered too coercive and needs to be revised. Defendants objections are therefore SUSTAINED IN PART AND OVERRULED IN PART. The court does not believe that Section 3 is necessary, and it should be deleted. Section 8 (which will now be Section 7) should be modified to read as follows:

**\*7** Yes, for some HMCs. There is at most a three year statute of limitations (or deadline) for filing overtime claims under federal law. The Plaintiffs in this case have obtained an agreement with Wells Fargo and Wachovia to stop the statue of limitations from running, but only for those HMCs who file a Notice of Consent in this action. Any HMC who joins this action may seek overtime wages and damages under federal law extending back to February 2008. HMCs who stopped working at Wells Fargo or Wachovia more than three years ago (i.e. March 2010 or earlier) may be completely barred from filing a lawsuit under federal law if they do not join this case because of the running of the statute of limitations.

### D. Failure to Adequately Inform

Defendants argue that the proposed notice does not adequately inform potential plaintiffs that they are bound by any potential unfavorable rulings, does not indicate that other plaintiffs in the case may not retaliate against the potential plaintiffs if they elect not to join the lawsuit, and fails to inform putative class members that they are potentially liable for Wells Fargo's fees and costs. Dkt. 98. Plaintiffs argue that Defendants' proposed warnings are meant to chill participation. Dkt. 100. They note that the potential plaintiffs cannot be liable for attorneys' fees

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

and that the warning about the costs, which would be minimal, would have an *"in terrorem"* effect. Dkt. 100 & May 1, 2013 Hearing. And as far as warning that other plaintiffs may not retaliate against the potential plaintiffs who elect not to opt in, Plaintiffs assert that this warning is "absurd on its face" and that there is no law banning such "retaliation," to the extent it could be deemed retaliation. Dkt. 100 & May 1, 2013 Hearing.

**1. Binding Nature of Unfavorable Rulings.**
The language regarding the effect of rulings in this case on the potential plaintiffs is found in section 7 of the proposed notice. Section 7 states,

> If You choose to join this action, you may share in any settlement or recovery, and will be bound by the judgment or any settlement of this action. While the case is pending, you may be required to provide information and documents. By completing and sending in the enclosed Notice of Consent form, you will be designating representative plaintiffs to act on your behalf and to represent your interests. You will also be retaining Plaintiffs' Lead Counsel (*see* Section 10) as your attorneys to represent you in this matter.

Dkt. 95, Ex. 1 § 7. Defendants argue that this language "fails to inform putative class members that they will be bound by *any* judgment of the Court in this case, whether it is favorable or unfavorable."Dkt. 98. The section *does,* however, state that the potential plaintiffs, if they opt in, "will be bound by the judgment."This language covers *any* judgement, and adding "favorable or unfavorable" is not necessary. Defendants' objection relating to appropriate notice that potential plaintiffs who opt in will be bound by any judgment is OVERRULED.

**2. Retaliation by Plaintiffs.**
**\*8** The section of the proposed notice discussing retaliation is section 15. It is entitled, "Am I Protected Against Retaliation?," and it states:

> Yes. It is illegal for Wells Fargo to retaliate against you in any manner because you have joined and/or

participated in this case. If you believe you have been penalized, punished, threatened or intimidated in any way as a result of your consideration of this Notice or your participation in this case, please contact Plaintiffs' Lead Counsel immediately.

Dkt. 95, Ex. 1 § 15. Defendants argue that this section should also warn that putative class members have the right to be free from retaliation from other Plaintiffs based on their decision not to 12 participate in the lawsuit. Dkt. 98 & May 1, 2013 Hearing. Defendants cite one case in which they claim the court required Plaintiffs' counsel to revise a notice in a similar lawsuit to prohibit retaliation in general, not just from Defendants. Dkt. 98 at 18 n. 15 (citing *Edwards v. KB Homes,* No. 3:11–cv–240 (S.D.Tex.)). In that case, the court approved the following language regarding retaliation:

> If you are a current [employee of defendant], do not worry about being retaliated against. Like those [employees of defendant] currently in this lawsuit, you are protected by federal law from any negative action against you in retaliation for joining this matter.

Dkt. 100, Ex. A. Defendants, however, cite no federal law that prohibits other plaintiffs from taking "negative action against" potential plaintiffs who elect not to join the lawsuit, and the court is unaware of any such law. There *is,* however, a federal law that prohibits *employers* from retaliating against their employees who choose to opt in, and the court finds that the language in the current version of section 15 adequately and appropriately states that law. Accordingly, Defendants' objection to the retaliation section of the proposed notice is OVERRULED.

**3. Liability for Defendants' Costs.**
The proposed charge does not contain any warning that potential plaintiffs who opt in could be liable for Defendants' costs. Instead, it contains a section entitled "Who Will Pay the Lawyers?," which solely addresses the fee arrangement with regard to the Plaintiffs' lawyers. It affirmatively states that if a potential plaintiff elects "to join this matter, [the plaintiff] will *not* be responsible for payment of any attorneys' fees or case expenses out of [his or her] pocket."Dkt. 95, Ex. 1 § 11. In *Barajas v. Acosta,* this court held, in a case in which defendants had

In re Wells Fargo Wage and Hour Employment Practices..., Not Reported in...

2013 WL 2180014

no counterclaims and provided no reason why Plaintiffs would be liable for any substantial costs, that requiring an instruction that potential plaintiffs could be liable for costs associated with the lawsuit " 'may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.'" *Barajas v. Acosta,* No. 11–3862, 2012 WL 1952261, at *5 (S.D.Tex. May 30, 2012) (Ellison, J.) (citations and quotation omitted). This case is quite similar. There are no counterclaims asserted, and there is no reason to believe any costs assessed should Defendants prevail would be more than *de minimus* with respect to each plaintiff. Thus, the court does not believe requiring a warning about potential liability for Defendants' costs is appropriate.

**\*9** *However,* the language in section 11 stating that opt-in plaintiffs will not be responsible for any attorneys' fees and costs out of their pockets, while aimed at the responsibility for Plaintiffs' counsel's fees and costs, could be misconstrued. Defendants' objection with regard to the discussion (or lack of discussion) of fees and expenses is therefore SUSTAINED IN PART AND OVERRULED IN PART. First, the title of Section 11 should be "Who Will Pay the Plaintiffs' Lawyers?" rather than "Who Will Pay the Lawyers?." Second, the body of the section shall be amended to state:

> The attorneys for the Plaintiffs in this case are being paid on a

contingency fee basis, which means that if there is no recovery, they will receive no attorneys' fees. If there is a recovery, the attorneys for the Plaintiffs will either receive part of that recovery or will seek to have their attorneys' fees and case expenses paid by Wells Fargo and Wachovia.

The last sentence of section 11 in the proposed notice, which refers to no out-of-pocket expenses, shall be deleted.

## V. CONCLUSION

Plaintiffs' motion for approval of FLSA notice forms and methods and for a longer notice period (Dkt.95) is GRANTED IN PART AND DENIED IN PART as described above.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2180014

---

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1989795
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Corpus Christi Division.

Bert YAKLIN, et al, Plaintiffs,
v.
W-H ENERGY SERVICES, INC., et al, Defendants.

Civil Action No. C-07-422. | May 2, 2008.

**Attorneys and Law Firms**

Jon D. Brooks, Brooks LLP, Corpus Christi, TX, for Plaintiffs.

Christopher E. Moore, Walter W. Christy, Coats Rose, New Orleans, LA, for Defendants.

**ORDER**

JANIS GRAHAM JACK, District Judge.

*1 On this day came on to be considered Plaintiffs' Motion for Notice to Potential Class Plaintiffs. (D.E.25.) For the reasons discussed below, Plaintiffs' motion is hereby GRANTED IN PART.

**I. Jurisdiction.**
The Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs bring suit pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.

**II. Factual and Procedural Background.**
Plaintiffs are existing and former employees of Defendants, W-H Energy Services, Inc. ("W-H") and Coil Tubing Service, LLC ("CTS").[1] (D.E.21, ¶ 7.) While employed by Defendants, they held positions titled "Service Tech I," "Service Tech II," and "Service Supervisor" at Defendants' Alice, Texas facility.[2] (D.E.25, Exs.B-I.) They allege, in their complaint, that Defendants required them to work in excess of forty hours per week and did not compensate them with overtime pay, in

violation of 29 U.S.C. § 207. (D.E.21, ¶¶ 8-22, 28.) They suggest that Defendants improperly characterized their positions as exempt from section 207's overtime requirement. (Id., ¶ 7.)

[1]  Defendant W-H contends that none of the named Plaintiffs were ever employed by W-H, and instead were employed by CTS only. (D.E. 26 at 6-7.) For purposes of deciding this motion, the Court need not resolve this dispute.

[2]  In support of their motion, Plaintiffs provide the Court with affidavits from named Plaintiffs employed by Defendants in positions titled "Service Tech I," "Service Tech II," and "Service Supervisor." (D.E.25, Ex. B-I.) Defendants' opposition, however, suggests that some of the named Plaintiffs held positions other than these three. (D.E. 26 at 8.) Because Plaintiffs have not submitted affidavits, or evidence of any kind, regarding persons employed in positions other than "Service Tech I," "Service Tech II," and "Service Supervisor," the Court has no way of assessing whether the claims brought by these Plaintiffs should proceed as collective actions. Accordingly, the Court will address in this order only the claims brought by Plaintiffs employed as "Service Tech I," "Service Tech II," and "Service Supervisor." (Note that the Court is unable to determine the position or job responsibilities of Plaintiff Yaklin, as a crucial page is missing from his affidavit. (D.E.25, Ex. A.))

Plaintiffs seek to proceed as a collective action pursuant to 29 U.S.C. § 216(b). On April 1, 2008, they filed a Motion for Notice to Potential Class Members, seeking to conditionally certify a class consisting of "all current and former service technicians, coil tube operators, nitrogen pump operators, and parts room employees employed by [Defendants] between December 1, 2004, and the present."(D.E. 25 at 14.) They requested an order requiring Defendants to produce to them the names and addresses of all potential class Plaintiffs, and sought permission to issue notice to the potential Plaintiffs of the existence of the lawsuit. (Id.) Defendants opposed Plaintiffs' motion in a response filed April 22, 2008. (D.E.26.)

**III. Discussion.**
Section 216(b) provides that "[a]n action to recover [for violations of section 207] may be maintained against any employer ... by any one or more employees for and [o]n

behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike Federal Rule of Civil Procedure 23(b)(3), a collective action maintained under the FLSA is pursued as an "opt-in" class. *See* Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286, 289 (5th Cir.1975) ("Rule 23(c) provides for 'opt out' class actions. FLSA [§] 16(b) allows as class members only those who 'opt in.' "). Collective actions under the FLSA are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding "common issues of law and fact arising from the same alleged ... activity." *See* Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The Fifth Circuit has declined to adopt a specific test for determining whether to certify a collective action pursuant to 29 U.S.C. § 216(b). Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir.1995). The prevailing analysis used by federal courts, however, and the analysis adopted by the Court in this case, is the two-stage test set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.1987).Mooney, 54 F.3d at 1212;see also Detho v. Bilal, C.A. No. H-07-2160, 2008 U.S. Dist. LEXIS 29502, 2008 WL 1730542 (S.D.Tex. Apr.10, 2008); Bernal v. Vankar Enterprises, Inc., C.A. No. SA-07-CA-695-XR, 2008 U.S. Dist. LEXIS 22814, 2008 WL 791963 (W.D.Tex. Mar. 24, 2008). Explaining the *Lusardi* test, the Fifth Circuit stated:

**\*2** The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are

dismissed without prejudice. The class representatives-*i.e.* the original plaintiffs-proceed to trial on their individual claims.

Mooney, 54 F.3d at 1213-14. This case is at the "notice stage" of the *Lusardi* test. Accordingly, the Court's decision to certify is "made using a fairly lenient standard."*Id.; see also* Bernal, 2008 U.S. Dist. LEXIS 22814 at \*10-11, 2008 WL 791963.

To determine whether conditional certification is appropriate, the Court must determine whether the potential class Plaintiffs are "similarly situated" to the named Plaintiffs. 29 U.S.C. § 216(b). The potential class Plaintiffs are considered "similarly situated" to the named Plaintiffs if they are " 'similarly situated' with respect to their job requirements and with regard to their pay provisions."*See* Dybach v. State of Florida Department of Corrections, 942 F.2d 1562, 1567-68 (11th Cir.1991); Ryan v. Staff Care, Inc., 497 F.Supp.2d 820, 824-825 (N.D.Tex.2007)." 'The positions need not be identical, but similar.' " Ryan, 497 F.Supp.2d at 825 (quoting *Barnett,* C.A. No. 3:01-CV-1182-M2002, U.S. Dist. LEXIS 9099, \*1 (N.D.Tex. May 21, 2002) (citations omitted)). " 'A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.' " Ryan, 497 F.Supp.2d at 825 (quoting Donohue v. Francis Services, Inc., Civ. A. No. 041-170, 2004 U.S. Dist. LEXIS 9355, \*1, 2004 WL 1161366 (E.D.La. May 24, 2004) (citations omitted)).

Plaintiffs submit, as their sole evidence in support of their motion, affidavits from eight of the named Plaintiffs. (D.E.25, Exs.A-I.) The majority of the affiants are persons employed in "Service Tech I" and "Service Tech II" positions at Defendants' Alice, Texas facility, whose job responsibilities include "operating a coil tubing unit and/or nitrogen and fluid pump in the field."(*Id.,* Exs. B-D, F-I.) A single affiant is a "Service Supervisor" at Defendants' Alice, Texas facility, whose job responsibilities include "[ensuring] that the crew of three or four personnel were performing their jobs safely and properly and ... prepar[ing] tickets and ... mak[ing] hotel reservations."(*Id.,* Ex. E.) All affiants contend that they "usually worked 7 days per week and ... an average of 105 hours per week."(*Id.,* Exs.B-D, F-I.) They state that "[d]espite working an average of 65 overtime hours per week ... [they] never received any overtime pay ..."(*Id.*)Additionally, they contend that they are "not aware of any exemption that would permit [Defendants] to not pay any overtime pay to [them] and [were] never told by [Defendants] that any exemption applied to [them]."(*Id.*)

**\*3** The Court finds that the evidence provided by Plaintiffs is sufficient to meet the lenient standard for conditional certification of the following class:

> All persons employed by either Defendant in "Service Tech I" or "Service Tech II" positions at Defendants' Alice, Texas facility between December 1, 2004, and the present.

Through the provision of the aforementioned affidavits from multiple persons employed as service technicians at Defendants' Alice, Texas facility, Plaintiffs have demonstrated that employees in these positions, and at this location, are similarly situated in terms of both job responsibilities and payment provisions. Plaintiffs, however, have not provided evidence sufficient to demonstrate that persons employed by Defendants in other positions, and at other locations, should be permitted to opt-in to the collective action.

The single, boilerplate paragraph attached, in identical form, to the end of each affidavit stating that the affiants "believe that there is [*sic* ] likely more than 500 current employees who [they] believe are paid a salary, receive no overtime pay, and perform only blue-collar job duties" is not sufficient to meet even the lenient standard for conditional certification of a class including persons employed outside of the Alice, Texas facility and in positions other than "Service Tech I" and "Service Tech II." (D.E. 25, Exs. A-I.) The affiants' testimony that these employees perform generic, "blue-collar job duties" does not demonstrate that these employees are similarly situated to the named Plaintiffs in terms of job responsibilities. Furthermore, conclusory allegations that aggrieved employees exist outside of the Alice, Texas facility, without the support of even minimal evidence, cannot provide a basis for inclusion of these employees in the class. *See Detho v. Bilal,* C.A. No. H-07-2160, 2008 U.S. Dist. LEXIS 29502, \*11, 2008 WL 1730542 (S.D.Tex. Apr.10, 2008) (declining to include in the class persons employed at locations other than the location at which the named Plaintiffs were employed because "[t]he evidence does not provide even a minimal showing that there were aggrieved employees at [other locations]."); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 363 (M.D.Ala.1999) (limiting the class to employees of a single restaurant because "Plaintiffs have not made a showing that any hourly wage employee at any of Defendant's restaurants, other than at the restaurant ... where the named, individual Plaintiffs ... worked, was subjected to employment practices which potentially violated the FLSA").

Additionally, the affidavit of Samuel Rojas, the lone Service Supervisor, expressly shows that Rojas is *not* similarly situated to the other named Plaintiffs in terms of his job responsibilities. (D.E. 25, Ex. E (listing job duties different from those performed by the service technicians).) Furthermore, the affidavit fails to show that there exist other Service Supervisors, similarly situated to Rojas, who should be permitted to opt-in and proceed as a separate "Service Supervisor" class. (*Id.*) Instead, the affidavit sets forth Rojas's jobs responsibilities and payment provisions alone, and fails to discuss the job responsibilities and payment provisions of his allegedly similarly situated peers. (*Id.*) Accordingly, Rojas may proceed as an individual, but not on behalf of a similarly situated class.

### IV. Proposed Notice.
**\*4** Defendants object to Plaintiffs' proposed notice on the following bases: (1) Plaintiffs' notice directs potential class members to contact Plaintiffs' counsel, (2) Plaintiffs' notice directs potential class members to return completed opt-in forms to Plaintiffs' counsel, and (3) Plaintiffs' notice does not adequately explain Defendants' bases for disputing liability. (D.E. 26 at 15-16.) The Court agrees that the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case. *Moran v. Ceiling Fans Direct, Inc.,* C.A. No. H-06-0813, 2006 U.S. Dist. LEXIS 72586, \*4-5, 2006 WL 2868939 (S.D.Tex. Oct. 5, 2006) ("The potential class needs to be aware that ... they may contact and discuss this matter with any attorney of their choosing."). The Court also holds that class members who wish to opt-in must return their opt-in forms directly to the Court, and that the notice to potential class members must contain a brief explanation of Defendants' bases for disputing liability. Accordingly, the Court ORDERS the parties to jointly submit, no later than Friday, May 16, 2008, a proposed notice to potential class members, revised in accordance with this order, for the Court's review.

### V. Conclusion.
For the reasons discussed above, Plaintiffs' Motion for Notice to Potential Class Members is hereby GRANTED IN PART:

> (1) Defendants are ORDERED to produce to Plaintiffs, no later than Friday, May 16, 2008, the names and addresses of all persons employed by

2008 WL 1989795

either Defendant in the position of "Service Tech I" or "Service Tech II" at Defendants' Alice, Texas facility between December 1, 2004, and the present;

(2) The parties are ORDERED to jointly submit, no later than Friday, May 16, 2008, a proposed notice to potential class members, revised in accordance with the Court's order; and

(3) Defendants may move to decertify the class no later than August 15, 2008, the dispositive motion

deadline (D.E.16).

SIGNED and ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1989795

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.