United States District Court
Southern District of Texas
**ENTERED**
December 09, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDREW JONES, Individually       §
and On Behalf of All Others      §
Similarly Situated,              §
                                 §
              Plaintiff,         §
                                 §        CIVIL ACTION NO. H-15-0051
v.                               §
                                 §
CRETIC ENERGY SERVICES, LLC,     §
                                 §
              Defendant.         §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andrew Jones, Individually and On Behalf of All Others Similarly Situated, filed this action against defendant, Cretic Energy Services, to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Pending before the court is Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Docket Entry No. 21). After considering Defendant's Response in Opposition to Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Docket Entry No. 22), Plaintiff's Reply in Support of Conditional Certification and Notice (Docket Entry No. 26), and the applicable law, the court concludes that the pending motion should be granted as to all of defendant's current and former employees who worked on coil tubing field crews within the three-year period immediately preceding entry of this Memorandum Opinion and Order.

## I.  Factual Allegations and Procedural Background

**A.  Factual Allegations[1]**

Defendant is an oilfield services company with operations throughout Texas and the United States.  Plaintiff alleges that during the relevant statutory period he worked for defendant as a member of a coil tubing crew, that he and other similarly situated workers typically worked in excess of forty (40) hours a week, but were not paid overtime wages.  Plaintiff alleges that instead of paying overtime wages, defendant paid him and other coil tubing crew members a salary and a day-rate.  Plaintiff alleges that while the job titles and job duties of the putative class members may have differed, they were all subjected to the same or similar illegal pay practices.

Plaintiff's job title during the relevant statutory period was Coil Tubing Pump Operator.  Plaintiff's job duties primarily involved operating and tending to power-driven, stationary or portable pumps and manifold systems used to transfer gases, oil, and other liquids or material to and from various vessels and processes.  Asserting that the putative class members worked similar hours and performed substantially similar job duties, plaintiff alleges that the job functions of defendant's coil tubing crew members primarily consisted of technical and manual blue collar labor in the oilfield.  Plaintiff alleges that regardless of

---

[1]Collective Action Complaint, Docket Entry No. 1, pp. 3-5.

specific job title, the putative class members had the duty to drive — and regularly did drive — pickup trucks and other vehicles weighing less than 10,001 pounds gross vehicle weight in the ordinary course of defendant's business.

**B.   Procedural Background**

Plaintiff filed this action on January 9, 2015, alleging willful violation of the FLSA.  On July 17, 2015, plaintiff filed the pending motion for conditional class certification seeking to certify the following class: "All current and former employees of Cretic Energy Services, LLC employed during the past three (3) years who received a salary and a day rate."[2]  Plaintiff's motion asks the court to

> (1) conditionally certify this action for purposes of notice and discovery; (2) order that a judicially approved notice be sent to all Putative Class Members by mail and email; (3) approve the form and content of Plaintiff's proposed judicial notice and reminder notice; (4) order Cretic to produce to Plaintiff's Counsel the last known name, address, phone number, email address and dates of employment for each of the Putative Class Members in a usable electronic format; and (5) authorize a sixty (60) day notice period for the Putative Class Members to join this case.[3]

On August 7, 2015, defendant filed its response opposing plaintiff's motion for class certification.  Asserting that the proposed class includes both equipment operators, such as plaintiff, as well as the service supervisors who directed them, defendant

---

[2]Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members ("Motion for Certification"), Docket Entry No. 21, p. 1.

[3]Id. at 14.

argues that the proposed class is overly broad because it includes potential members who are not similarly situated to plaintiff.[4] Defendant also argues that plaintiff's proposed notice is improper for multiple reasons including because it directs opt-ins to contact plaintiff's counsel, and requests e-mail addresses and phone numbers.[5]

On August 20, 2015, plaintiff filed a reply in which he argues that members of coil tubing crews are similarly situated because they

> (1) work together, side-by-side, from start-to-finish, on every single one of Cretic's jobs in the oilfield; (2) are all uniformly classified as exempt; and (3) are all paid a salary plus sometimes bonus basis, resulting in the identical manner in violation of the overtime requirements of the FLSA.[6]

Attached thereto is a proposed notice of collective action lawsuit with a class description amended to state: "ALL CURRENT AND FORMER EMPLOYEES OF CRETIC ENERGY SERVICES, LLC WHO WORKED ON COIL TUBING CREWS, WERE EMPLOYED FROM _____ TO PRESENT, AND RECEIVED A SALARY AND/OR ADDITIONAL COMPENSATION."[7]

---

[4]Defendant's Response in Opposition to Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members ("Defendant's Response"), Docket Entry No. 22, p. 1.

[5]Id. at 16-19.

[6]Plaintiff's Reply in Support of Conditional Certification and Notice ("Plaintiff's Reply"), Docket Entry No. 26, p. 1.

[7]Notice of Collective Action Lawsuit, Exhibit 2 to Plaintiff's Reply, Docket Entry No. 26-1. See also Plaintiff's Reply, Docket Entry No. 26, p. 7 (expressing agreement with defendant that "the proper time limitation for notice is three years from the date the Court approves notice in this case"), and n.8 (stating "[s]ince that date is unknown, Jones left blank the deadline to join the case in his proposed notice and consent forms").

## II.  <u>Applicable Law and Standard of Review</u>

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours, 29 U.S.C. § 207(a), and allows employees to sue their employers for violation of its hour and wage provisions.  <u>See</u> 29 U.S.C. §§ 215-16.  An employee may sue his employer under the FLSA on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Although § 216(b) neither provides for court-authorized notice nor requires certification for a representative action under FLSA, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases.  <u>Hoffmann-La Roche Inc. v. Sperling</u>, 110 S. Ct. 482, 486 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential plaintiffs, the court has discretion to approve the collective action and facilitate notice to potential plaintiffs.

*Sperling*, 110 S. Ct. at 487 (ADEA action);[8] *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003) (FLSA action). The court also has discretion to modify the proposed class definition if it is overly broad. *See Baldridge v. SBC Communications, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (recognizing the court's power to "limit the scope" of a proposed FLSA action). *See also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.'"). Because collective actions may reduce litigation costs for the individual plaintiffs and create judicial efficiency, courts favor collective actions when common issues of law and fact arise from the same alleged activity. *Sperling*, 110 S. Ct. at 486-87.

The term "similarly situated" is not defined in the FLSA. *See, e.g.*, 29 U.S.C. § 216. The Fifth Circuit has declined to set a specific standard for courts to apply when considering whether employees are sufficiently similar to support maintenance of a representative action. *See Mooney v. Aramco Services Co.*, 54 F.3d

_____

[8]*Sperling* was an action brought under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. 110 S. Ct. at 486 ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), in ADEA actions by facilitating notice to potential plaintiffs.").

1207, 1216 (5th Cir. 1995) (expressly declining to decide which of these two analyses is appropriate), <u>overruled on other grounds by Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148 (2003).[9]   Courts faced with this issue typically apply one of two standards, <u>i.e.</u>, the two-step analysis described in <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351 (D.N.J. 1987), or the "spurious class action" analysis described in <u>Shushan v. University of Colorado</u>, 132 F.R.D. 263 (D. Colo. 1990). <u>See</u> <u>Mooney</u>, 54 F.3d at 1216.   <u>See also</u> <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1259-60 & n.38 (11th Cir. 2008) (collecting cases from other circuits).

The <u>Lusardi</u> analysis proceeds in two stages:  (1) a notice stage, followed by (2) a decertification stage.   <u>See</u> <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 915-16 n.2 (5th Cir. 2008) (citations omitted).   At the notice stage the court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members.   <u>See</u> <u>Mooney</u>, 54 F.3d at 1213-14.   The decision is made using a "fairly lenient standard" because the court often has minimal evidence at this stage of the litigation.   <u>Id.</u> at 1214.   Courts, in fact, "appear to require nothing more than substantial allegations that

---

[9] <u>Mooney</u> was an action brought under the ADEA, but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. <u>See</u> <u>Mooney</u>, 54 F.3d at 1212.

the putative class members were together the victims of a single decision, policy or plan." Id. & n.8 (quoting Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, notice stage analysis typically results in conditional certification of a representative class. Id. After conditional certification the "putative class members are given notice and the opportunity to 'opt-in.'" Id. After notice issues the action proceeds as a representative action. Id.

The second stage of the Lusardi approach — the "decertification stage" — is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. Id. "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Id. If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. Id. If the class is still similarly situated, the court allows the collective action to proceed. Id.

The Shushan analysis follows a procedure that is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23").

Shushan espouses the view that § 16(b) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to

> create a completely separate class action structure for
> the FLSA and ADEA context, but merely desired to limit
> the availability of Rule 23 class action relief under
> either Act.   In application, the court determined that
> Congress intended the "similarly situated" inquiry to be
> coextensive with Rule 23 class certification.   In other
> words, the court looks at "numerosity," "commonality,"
> "typicality" and "adequacy of representation" to
> determine whether a class should be certified.   Under
> this methodology, the primary distinction between an
> . . . [FLSA] representative action and a [Rule 23] class
> action is that persons who do not elect to opt-in to the
> . . . [FLSA] representative action are not bound by its
> results.   In contrast, Rule 23 class members become party
> to the litigation through no action of their own, and are
> bound by its results.

Mooney, 54 F.3d at 1214.

While the Fifth Circuit has explicitly left open the question

of whether the Lusardi approach, the Shushan approach, or some

third approach should be used in determining whether employees are

sufficiently similar to support maintenance of a representative

action, because Shushan applies the analysis used for class actions

brought under Rule 23, and because the Fifth Circuit has described

Rule 23's "opt out" procedure as fundamentally and irreconcilably

different from § 216(b)'s "opt in" procedure, see LaChapelle v.

Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) (per

curiam), most courts in this district follow the Lusardi approach.

See Sandoz, 553 F.3d at 915 n.2.   See also Tolentino v. C & J Spec-

Rent Services Inc., 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010)

(collecting cases).   This court, therefore, will analyze plain-

tiff's motion using the Lusardi approach.

At this initial state of the Lusardi approach, a plaintiff

need only make a minimum showing to persuade the court to issue

notice to potential class members. <u>Mooney</u>, 54 F.3d at 1214 (recognizing that court's apply a "fairly lenient standard" at the initial stage of the analysis). In the absence of Fifth Circuit guidance on the appropriate test to use at this stage of the analysis, courts are split on the appropriate elements to consider. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. <u>See</u>, <u>e.g.</u>, <u>Heeg</u>, 907 F. Supp. 2d at 861; <u>Tolentino</u>, 716 F. Supp. 2d at 653. Other courts, however, have rejected the third element as non-statutory. <u>See</u>, <u>e.g.</u>, <u>Dreyer v. Baker Hughes Oilfield Operations, Inc.</u>, Civil Action No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting argument that FLSA collective action can be certified only if the plaintiff proves that others are interested in opting in to the lawsuit). Because the third element is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has even been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes, <u>see</u> <u>Tony and Susan Alamo Foundation v. Secretary of Labor</u>, 105 S. Ct. 1953, 1959 (1985), the court agrees that plaintiff need not present evidence of the third element at this stage of the litigation.

### III.  <u>Analysis</u>

#### A.  Class Certification

Defendant urges the court to deny the pending motion for conditional class certification because plaintiff "improperly asks the court to conditionally certify an overly broad class of current and former Cretic employees."[10]  Asserting that plaintiff worked as an equipment operator,[11] defendant argues that the proposed class is overly broad because it includes not only equipment operators but also service supervisors who are not similarly situated to plaintiff.[12]  Asserting that the legal theories underpinning the claims and defenses of operators and supervisors are at odds with one another, defendant argues that

> [a]s part of their job duties, [plaintiff] and other equipment operators regularly drove commercial vehicles across state lines, and thus, were classified as exempt employees under the Motor Carrier Act.  The supervisors, meanwhile, were classified as exempt under the FLSA's exemption for executive employees because they directly oversaw the work of the operators and were responsible for interviewing job applicants, making recommendations as to hiring decisions, and generally ensuring the smooth operation of the coil tubing operations.  The equipment operators and service supervisors thus had such different job duties that, even at this preliminary stage, it is clear that they are not similarly situated.  Moreover, the supervisors were responsible for monitoring the hours that the crew members worked and reported.  Therefore,

---

[10]Defendant's Response, Docket Entry No. 22, p. 1.

[11]<u>Id.</u> at 3 (citing Affidavit of Brian Williams ("Williams Affidavit"), Exhibit A to Defendant's Response, Docket Entry No. 22-1, ¶ 4).

[12]<u>Id.</u> at 8-13.

the supervisors have an inherent conflict of interest with [plaintiff] and the other operators, in that the supervisors were responsible for tracking the hours of their subordinates.  As a result, [plaintiff] is an improper representative of the class he seeks to certify.[13]

1.   <u>Whether There Is a Reasonable Basis for Crediting Assertion that Other Aggrieved Individuals Exist</u>

To satisfy the first element of the test that courts apply at the initial notice stage of the <u>Lusardi</u> analysis plaintiff need only show that there is a reasonable basis for believing that other aggrieved individuals exist.   <u>Heeg</u>, 907 F. Supp. 2d at 862. Attached to plaintiff's motion are the declarations of two other coil tubing crew members, Stephen Cutlip and Payton Hutto, both of whom state that despite regularly working more than forty hours per week they did not receive overtime and were, instead, paid a salary and a day rate.  Cutlip and Hutto also state that they know other similarly situated current and former employees who would be interested to learn about their rights and the opportunity to join this lawsuit.[14]  Acknowledging that "nine opt-in plaintiffs have joined this case, and [that plaintiff] has submitted declarations from two of those opt-in plaintiffs who worked as equipment operators and indicated that they performed the same job duties as

_____

[13]<u>Id.</u> at 1-2.

[14]<u>See</u> Declaration of Stephen Cutlip ("Cutlip Declaration"), Exhibit 2 to Motion for Certification, Docket Entry No. 21-2; and Declaration of Payton Hutto ("Hutto Declaration"), Exhibit 3 to Motion for Certification, Docket Entry No. 21-3.

[plaintiff],"[15] defendant "concedes that [plaintiff] has sufficiently indicated that other <u>equipment operators</u> may be interested in joining this case."[16]

Since defendant filed its response in opposition to the pending motion for certification, plaintiff has submitted a reply attached to which is the Declaration of Ronald Woodall who states that he worked for defendant on coil tubing crews in multiple positions, including both operator and supervisor, that he regularly worked more than forty (40) hours per week but was not paid overtime, and that coil tubing crew members worked the same hours for each job regardless of job title.[17]  Woodall also states that he knows other similarly situated current and former Cretic employees who would be interested to learn about their rights and the opportunity to join this lawsuit.[18]  By presenting the declarations of Cutlip, Hutton, and Woodall representing, respectively, two operators and one supervisor, all of whom state that despite regularly working more than forty hours per week they did not receive overtime, and that they were identically paid a salary and a day rate, plaintiff has satisfied the first element of the applicable test by showing that there is a reasonable basis for

_____

[15]Defendant's Response, Docket Entry No. 22, p. 7 & n.9.

[16]<u>Id.</u>

[17]Declaration of Ronald Woodall ("Woodall Declaration"), Exhibit 1 to Plaintiff's Reply, Docket Entry No. 26-1, ¶¶ 2-4.

[18]<u>Id.</u> ¶ 9.

believing that other aggrieved individuals exist who worked as both operators and supervisors on defendant's coil tubing field crews.

    2.   <u>Whether Other Aggrieved Individuals Are Similarly Situated to Plaintiff</u>

To satisfy the second element of the test that courts apply at the initial notice stage of the <u>Lusardi</u> analysis plaintiff must demonstrate a reasonable basis for believing that a class of similarly situated persons exists. <u>See Heeg</u>, 907 F. Supp. 2d at 862 (citing <u>Lima v. International Catastrophe Solutions, Inc.</u>, 493 F. Supp. 2d 793, 798 (E.D. La. 2007)). "Potential class members are considered similarly situated to the named plaintiff if they are 'similarly situated in terms of job requirements and similarly situated in terms of payment provisions.'" <u>Id.</u> (quoting <u>Ryan v. Staff Care, Inc.</u>, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (citing <u>Dyback v. State of Florida Department of Corrections</u>, 492 F.2d 1562, 1567-68 (11th Cir. 1991)). "'A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" <u>Id.</u> (quoting <u>Aguirre v. SBC Communications, Inc.</u>, Civil Action No. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. April 11, 2006)).

    (a)  Potential Class Members are Similarly Situated in Terms of Job Requirements

Defendant does not dispute that plaintiff is similarly situated to other equipment operators in terms of both job

-14-

requirements and payment provisions. Instead, defendant argues that service supervisors are not similarly situated to equipment operators,[19] and that plaintiff is not a proper representative for a class that includes service supervisors because as an equipment operator he has an inherent conflict of interest in representing his supervisors and his supervisors have an inherent conflict of interest in joining his proposed class.[20]

As evidence that service supervisors are not similarly situated to plaintiff and other equipment operators, defendant submits the affidavits of its Chief Financial Officer, Brian Williams, and its Operations Manager, Chad Trimble, as well as job descriptions for the positions of Equipment Operators II and III and Senior Service Supervisor. Williams states that plaintiff was employed as a coil tubing equipment operator.[21] Trimble states

> 3. Coil tubing is an oil and gas field service in which high-strength "coil tubing" is used to either drill a new oil or gas well, or perform maintenance work on an existing well . . .

> 4. A coil tubing "crew" for Cretic typically consists of the Service Supervisor and three or four coil tubing equipment operators. The coil tubing jobs can take anywhere from under a day to several days to complete . . .

> 5. Because my role as Operations Manager includes overseeing the performances of Cretic's Service Supervisors, I am familiar with and knowledgeable

---

[19]Defendant's Response, Docket Entry No. 22, pp. 8-13.

[20]Id. at 13-14.

[21]Williams Affidavit, Exhibit A to Defendant's Response, Docket Entry No. 22-1, ¶ 5.

of the job responsibilities and duties of the Service Supervisors. A Service Supervisor's primary responsibility is overseeing the day-to-day operations of the assigned location through the coordination of equipment, overseeing safety, process and controls, and managing personnel. The Service Supervisor is generally responsible for all aspects of managing the coil tubing crews on jobs throughout Texas, including interviewing, promoting, disciplining, making recommendations about hiring and firing, and directing the work of the employees and apportioning their work. The Service Supervisor regularly supervises two or more full time employees and his or her primary duty is management of the coil tubing crew. . . . In addition, Service Supervisors are responsible for tracking the hours of the coil tubing equipment operators.[22]

Defendant's job descriptions for Equipment Operators II and III and for Senior Service Supervisor show that the two positions correspond closely in many if not most aspects of their respective "Primary Accountabilities and Deliverables," but that they do differ. For example, while the equipment operator positions have no staff management duties, the Senior Service Supervisor position has the following staff management duties:

- Supervise Equipment Operators

- Assist in recruitment, hiring, training of staff

- Responsible for performance evaluations, recommendations of promotions, transfers and disciplinary actions with support from Human Resources and Site Manager.[23]

_____

[22]Affidavit of Chad Trimble ("Trimble Affidavit"), Exhibit B to Defendant's Response, Docket Entry No. 22-2, ¶¶ 3-5.

[23]Job Description, Equipment Operators II and III, and Job Description, Senior Service Supervisor, Exhibits C and D, respectively, to Defendant's Response, Docket Entry Nos. 22-3 and 22-4, respectively.

The licensing requirements for both job descriptions include a commercial driver's license, but only the equipment operator positions require "operators to drive commercial vehicles across state lines to assigned job locations."[24]

> Defendant argues that
>
> > [b]ecause of this vast difference in performance duties, the supervisors and equipment operators were classified as exempt under different FLSA exemptions: the supervisors were classified as exempt under the executive exemption due to their managerial functions, *see* 29 C.F.R. § 541.100, whereas the operators were exempt under the Motor Carrier Act because they drove commercial vehicles weighing over 10,000 pounds across state lines, *see* 29 U.S.C. § 213(b)(1).[25]

Acknowledging that "[t]he merits of those exemption decisions are not before the Court at this time,"[26] defendant argues that "the Court can consider whether the different job requirements and legal arguments associated with the equipment operator and supervisor positions will require particularized assessments of the merits of potential plaintiffs' claims that are not conducive to collective action."[27]  Citing <u>Romero v. H.B. Automotive Group, Inc.</u>, Civil Action No. 11-386 (CM), 2012 WL 1514810, at *11 (S.D.N.Y. May 1, 2012), and <u>Hunter v. Sprint Corp.</u>, 346 F. Supp. 2d 113, 119 (D.D.C.

---

[24]Job Description, Equipment Operators II and III, Exhibit C to Defendant's Response, Docket Entry Nos. 22-3.

[25]Defendant's Response, Docket Entry No. 22, p. 9.

[26]<u>Id.</u>

[27]<u>Id.</u>

2004), defendant argues that courts have rejected conditional certification of classes similar to plaintiff's.

Plaintiff argues that Cretic's coil tubing crew supervisors are similarly situated to the operators they oversee because "both work the exact same hours from start-to-finish, perform the same type of manual labor in the oilfield, are paid a salary plus a bonus, and are uniformly misclassified as exempt."[28]  In support of his argument that all members of defendant's coil tubing crews are similarly situated, plaintiff has submitted his own declaration and the declarations of three other Cretic employees who worked on coil tubing crews, two employees who worked as equipment operators (Cutlip and Hutto), and one employee who worked as both an operator and a supervisor (Woodall).  All four declarants state that they worked as members of four- or five-person crews that provided coil tubing services for multiple clients in the oil and gas industry. They all state that crew members worked the same hours for each job because they traveled to job sites together, worked as a team, spent most of their time physically rigging up, rigging down, and operating the coil tubing equipment, and left the job sites together when the jobs were finished.[29]  They all state that their

_____

[28]Plaintiff's Reply, Docket Entry No. 26, p. 2.

[29]Declaration of Andrew Taylor Jones ("Jones Declaration"), Exhibit 1 to Motion for Certification, Docket Entry No. 21-1, ¶¶ 4-5; Cutlip Declaration, Exhibit 2 to Motion for Certification, Docket Entry No. 21-2, ¶¶ 4-5; Hutto Declaration, Exhibit 3 to Motion for Certification, Docket Entry No. 21-3, ¶¶ 4-5; Woodall Declaration, Exhibit 1 to Plaintiff's Reply, Docket Entry No. 26-1, ¶¶ 4-5.

duties and the duties of their fellow crew members were technical, physical, and largely manual in nature, that they were expected to adhere to standardized coil tubing practices and procedures from which they lacked authority, ability, or discretion to deviate.[30] In addition, Woodall, who worked as both an operator and a supervisor, states that crew members worked the same hours for each job regardless of job titles; that he did not hire, fire, discipline, or interview current or potential employees; and that he lacked the independent judgment and discretion to create or deviate from the defendant's established policies and procedures.[31]

The evidence before the court shows that members of Cretic's coil tubing field crews worked the same hours side-by-side as a team, traveling from job site to job site, and spending most of their time physically operating and maintaining coil tubing equipment in oilfields. The fact that each crew had a supervisor responsible for overseeing its operations, and that defendant considered supervisors subject to a different FLSA exemption than that to which they considered operators exempt, does not require the court to conclude that coil tubing crew supervisors are not similarly situated to the operators they oversee. Employees with

---

[30]Jones Declaration, Exhibit 1 to Motion for Certification, Docket Entry No. 21-1, ¶¶ 6-7; Cutlip Declaration, Exhibit 2 to Motion for Certification, Docket Entry No. 21-2, ¶¶ 6-7; Hutto Declaration, Exhibit 3 to Motion for Certification, Docket Entry No. 21-3, ¶¶ 6-7; Woodall Declaration, Exhibit 1 to Plaintiff's Reply, Docket Entry No. 26-1, ¶¶ 6-7.

[31]Woodall Declaration, Exhibit 1 to Plaintiff's Reply, Docket Entry No. 26-1, ¶¶ 4 and 7.

different job titles are similarly situated for the purpose of an
opt-in FLSA class when their day-to-day job duties do not vary
substantially.  See Aguirre, 2007 WL 772756, at *12 (citing Morisky
v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493, 498
(D.N.J. 2000) (for the purposes of a  misclassification claim,
"similarly situated" must be "analyzed in terms of the nature of
the job duties performed by each class member, as the ultimate
issue to be determined is whether each employee was properly
classified as exempt")).  While service supervisors are responsible
for tracking equipment operators' hours and are able to make
recommendations pertaining to hiring, firing, promotion, and other
change-of-status decisions,[32] the evidence now before the court does
not bear out defendant's contention that the day-to-day job duties
performed by coil tubing crew operators and their supervisors
exhibit "vast" differences but, instead, shows that the day-to-day
job duties of the operators and their supervisors did not vary
substantially.  Nor does the evidence now before the court suggest
that there are conflicts of interest between equipment operators
and service supervisors.

In support of its argument that plaintiff, an operator, cannot
represent the entire coil tubing crew because operators have an
inherent conflict of interest in representing their supervisors
defendant cites White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1311

---

[32]Trimble Affidavit, Exhibit B to Defendant's Response, Docket
Entry No. 22-2, ¶¶ 2-5.

(M.D. Ala. 2002).  In <u>White</u> a maintenance foreman brought an FLSA action against his former employer individually and on behalf of others similarly situated.  The proposed class included foremen and crewmen.  In addition to supervising and directing the work of their crews, the foremen had a number of administrative duties associated with planning and executing field work, handling the payroll for themselves and their crews, as well as cleaning and maintaining the company's tools and vehicles.  <u>Id.</u> at 1314.  Based on the foremen's additional administrative duties, the court concluded that foremen and crewmen were not similarly situated with respect to their job duties.  <u>Id.</u>  Since, moreover, the plaintiff alleged that foremen had an economic incentive to under-report the hours worked by their crew members in order to receive bonuses for being efficient, and the defendant argued that any foremen who under-reported their crew members' hours could be held individually responsible for their crew members' FLSA claims, the court concluded that there was an inherent conflict of interest between the two groups.  <u>Id.</u>  Consequently, the court denied a motion for conditional certification because the proposed class included both supervisors and their supervisees.

White is distinguishable from this case.  Unlike the foremen in <u>White</u> who the court concluded were not similarly situated to their crew members with respect to their job duties because the foremen performed a number of administrative duties in addition to supervising and directing their crew members, defendant's coil

-21-

tubing supervisors perform few administrative duties, and for the reasons explained above, the evidence now before the court shows that the day-to-day job duties of the operators and their supervisors did not vary substantially. Moreover, there are no allegations here that coil tubing supervisors had an economic incentive to under-report their operators' hours, or that coil tubing supervisors risk being held personally responsible for their operators' FLSA claims. Instead, plaintiff alleges that defendant's coil tubing operators and supervisors are equal victims of a single policy not to pay coil tubing crew members overtime.

Because the facts and allegations at issue in <u>White</u> are readily distinguishable from the facts and allegations at issue in this case, the court is not persuaded that an inherent conflict of interest precludes a finding that defendant's coil tubing operators and supervisors are similarly situated. Other courts faced with similar facts have approved motions for conditional certification of proposed classes that include both supervisors and their supervisees. See <u>Garcia v. Moorehead Communications, Inc.</u>, Civil Action No. 1:12-cv-208-JD, 2013 WL 4479234, at *4 (N.D. Ind. August 19, 2013) (distinguishing <u>White</u> and finding technicians and their field service managers similarly situated); <u>Aguilar v. Complete Landsculpture, Inc.</u>, Civil Action No. A.3:04-CV-0776 D, 2004 WL 2293842, at *4 (N.D. Tex. October 7, 2004) (foremen with hiring and firing authority similarly situated to laborers where all employees were compensated under the same pay scheme); <u>Pacheco</u>

-22-

v. Aldeeb, Civil Action No. 5:14-cv-121-DAE, 2015 WL 1509570, at *6
(W.D. Tex. March 31, 2015) (fact that some plaintiffs served in
managerial capacity is not, alone, sufficient to preclude them from
representing non-managerial employees).

Defendant's argument that conditional certification should be
denied because plaintiff has presented no allegation or evidence of
a centralized policy or custom violating the FLSA is not persuasive
because plaintiff contends that defendant's misclassification of
all coil tubing crew members as exempt is a centralized policy that
is being challenged in this case.  Defendant's argument that all of
the potential class members cannot be substantially similar to the
plaintiff because the motor carrier exemption applies to plaintiff
and other equipment operators, while the executive exemption
applies to service supervisors, fails because exemptions are
merits-based defenses to FLSA claims that courts in this district
typically hold to be irrelevant at this initial, notice stage of
the case.  See, e.g., Dreyer, 2008 WL 5204149, at *2 (rejecting
defendant's argument that the possible application of multiple FLSA
exemptions counseled against conditional certification "because
exemptions are merits-based defenses to an FLSA claim" that "cannot
defeat conditional certification"); Foraker v. Highpoint Southwest,
Services, L.P., Civil Action No. H-06-1856, 2006 WL 2585047, at *4
n.16 (S.D. Tex. Sept. 7, 2006) (rejecting the defendant's argument
that conditional certification should be denied because the
plaintiffs were supervisors and exempt under the executive

-23-

exemption as an argument that goes "to the merits of whether the employees are exempt . . . and is not a persuasive basis to deny notice").

Defendant's reliance on <u>Romero</u>, 2012 WL 1514810, at *11, and <u>Hunter</u>, 346 F. Supp. 2d at 119, is misplaced because in these cases the court denied conditional certification of a proposed class consisting of both exempt and nonexempt employees. Here, the proposed class consists solely of employees who defendant argues are exempt. Missing from defendant's briefing is a cite to any case in which a court has denied conditional certification merely because the employer argued that the proposed class consisted of employees arguably subject to two different FLSA exemptions. Because defendant admits to treating all of its coil tubing crew members as exempt, salaried employees, and because the evidence now before the court shows that the day-to-day job duties of the coil tubing supervisors does not differ substantially from those of the coil tubing operators, the court concludes that the potential class members are similarly situated in terms of job requirements.

### (b)   Potential Class Members are Similarly Situated in Terms of Payment Provisions

Defendant does not dispute that plaintiff and other coil tubing crew members were all paid a salary and sometimes a bonus, that they regularly worked more than forty hours a week, and that they were not paid overtime. The declarations show that three operators (Plaintiff, Cutlip, and Hutto) and at least one

supervisor (Woodall) who worked on defendant's coil tubing crews were subject to the same pay policy; this is sufficient to meet the low threshold required for showing that potential class members are similarly situated in terms of payment provisions at this initial stage of the case.

### 3.   Conclusion as to Class Certification

Because the evidence now before the court shows that there is a reasonable basis for crediting plaintiff's assertion that other aggrieved individuals exist and that the other aggrieved individuals are similarly situated to plaintiff in terms of both job requirements and payment provisions, the court concludes that plaintiff has provided sufficient evidence to satisfy the first stage of the Lusardi analysis, and this matter should be conditionally certified as a collective action under 29 U.S.C. § 216(b) with respect to the following class:  All current and former employees of Cretic Energy Services, LLC who worked on coil tubing crews, were employed from December 9, 2012, to the present, and received a salary and/or additional compensation.

**B.   Notice to Potential Class Members**

Defendant argues that plaintiff's proposed notice is improper because it:   (1) directs opt-ins to contact his counsel; (2) directs opt-ins to send their forms to his counsel; (3) requests e-mail addresses and phone numbers; (4) requests permission to post the notice at the work site; (5) seeks to send

follow-up reminder notices; and (6) seeks to prohibit defendant from communicating about the lawsuit directly or indirectly with current and former employees.  Defendant also argues that it should be allowed to inform potential opt-in plaintiffs that they may be required to pay costs, that it should be able to include in the notice an explanation of its reasons for denying liability so that potential opt-in plaintiffs can be fully informed prior to deciding whether to join, and that the proper time limitation is not as plaintiff contends -- three years before this action was filed -- but, instead, three years before the date the notice is approved by this court.  In reply, plaintiff agrees that his proposed notice should specify that the opt-ins may contact counsel of their choice, agrees to remove language from the notice that defendant is prohibited from communicating about the case, agrees to include in the notice defendant's proposed explanation of its reasons for denying liability, and agrees that the proper time limitation for notice is three years from the date the court approves notice in this case.[33]

1.   <u>Requests for E-mail Addresses, Phone Numbers, and Permission to Post Notice at Defendant's Work Sites</u>

Defendant objects to plaintiff's requests for potential class members' e-mail addresses and phone numbers and for permission to post notice of the lawsuit at defendant's work sites as

---

[33]Plaintiff's Reply, Docket Entry No. 26, pp. 7-11 & n.8.

unnecessary.[34]  Plaintiff replies that its requests for e-mail addresses, phone numbers, and permission to post notice of the lawsuit at defendant's work sites are necessary to further the remedial purposes of the FLSA by insuring effective notice because potential class members work in remote locations far away from their homes for extended periods of time.[35]  The court finds that plaintiff's requests for e-mail addresses and phone numbers and for permission to post notice of plaintiff's lawsuit at defendant's work sites are not unduly burdensome or invasive, and are appropriate and necessary in this case because they are intended to further the broad remedial purposes of the FLSA by providing notice to employees whose work undisputedly requires them to travel to oilfields and stay away from home for days at a time.  Other courts routinely approve such requests when, as here, they are likely to further the broad remedial purposes of the FLSA by facilitating notice, and disapprove such requests only when defendant makes a showing that such measures are not likely to facilitate notice. Here, defendant has made no such showing.  Accordingly, defendant shall provide to plaintiff's counsel contact information for potential class members that includes e-mail addresses and telephone numbers; and defendant shall post notice of this lawsuit at its work sites. See, e.g., Dyson v. Stuart Petroleum Testers,

---

[34]Defendant's Response, Docket Entry No. 22, pp. 16-17.

[35]Plaintiff's Reply, Docket Entry No. 26, pp. 8-9.

Inc., 308 F.R.D. 510, 516 (W.D. Tex. 2015) (authorizing production of contact information that included potential class members' e-mail addresses and phone numbers); In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III) ("Wells Fargo III"), 2013 WL 2180014, at *2 (S.D. Tex. May 17, 2013) (denying plaintiff's request for e-mail addresses upon finding that "provision of email addresses will likely not facilitate notice in this case"); Garcia v. Pancho Villa's of Huntington Village, Inc., 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) (allowing notice of FLSA action to be posted at all of defendant's business locations).

   2.   Follow-Up Reminder Notices

Defendant objects to plaintiff's request to send follow-up reminder notice via mail, e-mail, and telephone calls to potential class members who have not returned their consents 30 days from the date notice is mailed as unnecessary.[36]   Plaintiff replies that reminder notice is necessary because potential class members work in remote locations far away from their homes for long periods of time.   Plaintiff argues that reminder notice affects the broad remedial purposes of the FLSA and ensures that potential class members receive notice of their rights and potential claims.[37] District courts are split as to whether reminder notices to potential class members are proper in FLSA actions.  See Santinac

---

[36]Defendant's Response, Docket Entry No. 22, pp. 17-18.

[37]Plaintiff's Reply, Docket Entry No. 26, pp. 9-10.

v. Worldwide Labor Support of Illinois, Inc., ___ F. Supp. 3d ___,
2015 WL 3486971, *6 (S.D. Miss. June 2, 2015) (citing Garcia v. TWC
Administration, LLC, Civil Action No. SA:14-cv-985-DAE, 2015
WL 1737932 (W.D. Tex. April 16, 2015) (recognizing split among
district courts)). Courts that have denied requests for reminder
notices have done so upon finding them unnecessary. See, e.g.,
Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340,
357-58 (E.D.N.Y. 2012) (denying request for reminder notice because
plaintiff failed to identify any reason why such notice was
necessary under the particular circumstances of the case). Because
plaintiff has identified a reason for sending reminder notices,
i.e., potential class members work at remote locations for extended
periods of time, and because defendant has failed to show that the
proposed reminder notices will prejudice or burden defendant
unduly, the court concludes that plaintiff's proposal to send
reminder notices is appropriate under the circumstances of this
case.

   3.   Responsibility for Costs and Expenses

      Citing Behnken v. Luminant Mining Co., LLC, 997 F. Supp. 2d
511, 524 (N.D. Tex. 2014), defendant argues that it should be
allowed to inform opt-ins that they may be required to pay costs if
plaintiffs receive an unfavorable decision.[38]   Citing Wells
Fargo III, 2013 WL 2180014, at *2, plaintiff argues that courts in

---

[38]Defendant's Response, Docket Entry No. 22, p. 18.

this district routinely approve notice forms in FLSA actions that do not include language regarding the class members' potential liability for costs.  Because defendant has failed to identify any reason for warning potential plaintiffs that they may be required to pay costs and expenses, and because courts in this district routinely approve notices without such a warning, the court is not persuaded that such a warning is appropriate in this case.

  4.  <u>Submission of Consent Forms to Plaintiff's Counsel</u>

Defendant argues that plaintiff's proposed notice should direct potential plaintiffs to submit their consent forms directly to the court instead of to plaintiff's counsel.  Defendant argues that allowing consent forms to be sent to plaintiff's counsel incorrectly indicates that plaintiff's counsel are the only attorneys opt-in plaintiffs can choose in this case.[39]  Since plaintiff has agreed that his proposed notice should specify that the opt-ins may contact counsel of their choice, the court is not persuaded that there is any need to direct opt-in plaintiffs to send their consent forms directly to the court instead of to plaintiff's counsel.  Requiring each opt-in plaintiff who joins this case to return his or her form to this court would impose an undue burden on the court's clerk and staff.  Plaintiff's counsel is prepared for and practiced in handling notice forms of this nature, and shifting this burden to the court is inefficient.

---

[39]<u>Id.</u> at 16.

### IV.  Conclusions and Order

For the reasons explained in § III, above, Plaintiff's Opposed Motion for Conditional Certification and Notice to Potential Class Members (Docket Entry No. 21) is **GRANTED**, and the court provisionally deems this action a collective action and defines the conditionally approved collective class as follows:

> All current and former employees of Cretic Energy Services, LLC who worked on coil tubing crews, were employed from December 9, 2012, to the present, and received a salary and/or additional compensation.

Within fourteen days of the entry of this Memorandum Opinion and Order defendant shall provide plaintiff with a list of all employees fitting the description of the conditionally certified class in a usable electronic format.  This list shall include each individual's full name, last known mailing address, e-mail address (if known), telephone number, and date(s) of employment.  Plaintiff shall have fourteen days from the receipt of this information to mail the proposed notice to the potential class members.  The opt-in period shall be sixty days from the date the notice is mailed.

**SIGNED** at Houston, Texas, on this 9th day of December, 2015.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE